**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| JAMES C. KANG, <br><br> Plaintiff, <br><br> v. <br><br> WELLS FARGO BANK, N.A., <br><br> Defendant. | Case No. 17-cv-06220-BLF <br><br> **ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** <br><br> [Re: ECF 40] |

Plaintiff James C. Kang claims that Defendant Wells Fargo Bank, N.A., is liable for numerous violations of California state wage and hour laws with respect to its California-based mortgage sales force. Notably, he asserts that individuals employed in the positions of Home Mortgage Consultant, Home Mortgage Consultant, Jr., Private Mortgage Banker, and Private Mortgage Banker, Jr. (collectively, "HMCs") are subject to a common compensation plan under which all hourly wages are "clawed back" from earned sales commissions. Because all wages come out of sales commissions, Kang alleges, HMCs are not paid for tasks unrelated to sales which Wells Fargo requires them to do. Kang also asserts that Wells Fargo's compensation plan promises a certain amount of vacation, also referred to as paid time off ("PTO"), but that Wells Fargo "claws back" vacation pay from earned sales commissions. As a result, Kang alleges, HMCs do not actually receive their promised vacation pay.

Kang moves for class certification, which motion is opposed by Wells Fargo. Having considered the parties' briefing as well as the oral arguments presented at the hearing on November 29, 2018, the Court GRANTS the motion for class certification with minor modifications to Kang's proposed class and subclass definitions.

## I. BACKGROUND

Kang filed this action on October 27, 2017, alleging the following facts: Kang worked as an HMC in Wells Fargo's Palo Alto, California, branch from October 2000 through May 2015, with a short break in employment in 2011. Compl. ¶ 3, ECF 1. Wells Fargo compensates its HMCs by means of sales commissions, which are based on a percentage of mortgage loans each HMC originates. Compl. ¶¶ 8, 12. HMCs are paid advances on commissions at a rate of approximately $12 per hour, but those advances are "clawed back" from commissions earned. Compl. ¶ 8. Wells Fargo does not compensate HMCs for non-sales work, such as attending meetings, training, customer service, and loan processing. Compl. ¶ 9. Moreover, although it purports to provide vacation pay, Wells Fargo claws back vacation pay from commissions with the result that HMCs do not actually receive their accrued vacation. Compl. ¶ 10. Finally, Wells Fargo does not pay HMCs overtime wages as required by law. Compl. ¶ 11.

Based on these allegations, Kang asserts claims on behalf of himself and other California-based HMCs for: (1) failure to pay minimum wages; (2) failure to pay overtime wages; (3) failure to pay vacation time; (4) failure to pay all wages owed every pay period; (5) failure to pay all wages due at separation; and (6) violation of California's Unfair Competition Act.

Kang now seeks an order certifying the following class and subclass:

**Class:** All non-exempt employees for Wells Fargo who at any time during the period beginning October 27, 2013 through the date notice is mailed to the Class worked for Wells Fargo in California in the job titles of Home Mortgage Consultant, Home Mortgage Consultant, Jr., Private Mortgage Banker, or Private Mortgage Banker, Jr. ("the Class").

**Vacation/Separation Pay SubClass:** All non-exempt employees for Wells Fargo who at any time during the period beginning October 27, 2013 through the date notice is mailed to the Class worked for Wells Fargo in California in the job titles of Home Mortgage Consultant, Home Mortgage Consultant, Jr., Private Mortgage Banker, or Private Mortgage Banker, Jr, and whose employment with Wells Fargo terminated.

2

## II. LEGAL STANDARD

A class action is maintainable only if it meets the four threshold requirements of Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 613 (1997).

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem*, 521 U.S. at 614. Kang seeks certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

## III. DISCUSSION

### A. Rule 23(a)

#### 1. Numerosity

Rule 23(a)(1) requires that the size of the proposed class be "so numerous that joinder of all the class members is impracticable." Fed. R. Civ. P. 23(a)(1). "No exact numerical cut-off is required; rather, the specific facts of each case must be considered." *Litty v. Merrill Lynch & Co.*, No. CV 14-0425 PA (PJWx), 2015 WL 4698475, at *3 (C.D. Cal. Apr. 27, 2015). "However, numerosity is presumed where the plaintiff class contains forty or more members." *Id.*

Kang asserts that the proposed class contains approximately 4,500 HMCs. As evidence of this number, Kang submits Findings of Fact and Conclusions of Law issued in another class action involving Wells Fargo's HMCs, *Ibarra v. Wells Fargo Bank, N.A.*, which was litigated in the Central District of California. *See* Stevens Decl. Exh. 8, ¶ 12, ECF 41-2. In *Ibarra*, which was

limited to a single claim for rest-period violations under California Labor Code § 226.7, the district court certified a class of HMCs who worked for Wells Fargo at any time during the period March 17, 2013 to August 1, 2017. *Id.* ¶¶ 2-3. The district court found that class to contain 4,481 members. *Id.* ¶ 12. If certified, the class in the present case will not include all members of the *Ibarra* class, because for reasons discussed below the class in the present case must exclude all HBCs who were hired or re-hired by Wells Fargo after December 11, 2015. However, even with that exclusion, the class in the present case clearly will include thousands of members. Wells Fargo does not dispute the numerosity requirement, referring in its opposition brief to "a class of more than 4,000 Home Mortgage Consultants." Def.'s Opp. at 1, ECF 45.

The Court therefore concludes that the numerosity requirement is satisfied.

### 2. Commonality

"The requirement of 'commonality' means that the class members' claims 'must depend upon a common contention' and that the 'common contention, moreover, must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1153 (9th Cir. 2016) (quoting *Dukes*, 564 U.S. at 350).

Kang contends that his claims, which are based on a common compensation plan applicable to all class members, present several common questions that satisfy the commonality requirement.

#### a. Claim 1 – Minimum Wages

Claim 1, for failure to pay minimum wages, asserts that Wells Fargo does not compensate its HMCs for non-sales, or "non-productive," hours worked. Kang identifies four categories of non-productive duties which he contends were regularly performed by all class members: attending meetings, training, customer service, and administrative processing.

The Ninth Circuit has held that this type of contention is sufficient to satisfy the Rule 23(a) commonality requirement. *See Ashley Furniture Indus., Inc.*, 824 F.3d at 1154. In *Ashley Furniture*, the plaintiff brought a class action alleging that the defendant paid its sales associates

4

only on commission but required sales associates to perform tasks unrelated to sales. *Id.* at 1152. The plaintiff asserted that the defendant's policy violated California minimum wage and hour laws. *Id.* The district court granted class certification, and the Ninth Circuit affirmed. *Id.* at 1153. Noting that "California law proscribes compensation through commission for work that is not directly involved in selling," the Ninth Circuit concluded that "[i]f the company required sales associates to do work not 'directly involved in selling' and failed to compensate the sales associates for such work, then it violated California's minimum wage laws for all such employees." *Id.* at 1154 (internal quotation marks and citation omitted). The Ninth Circuit then concluded that, "Thus, the complaint contains a 'common contention' that easily 'is capable of classwide resolution.'" *Id.*

Wells Fargo argues that while it was clear in *Ashley Furniture* that certain duties were not sales related (e.g., cleaning the store), the same cannot be said for the four categories of duties identified by Kang in the present case. According to Wells Fargo, virtually all tasks performed by HMCs are "directly or indirectly" related to sales and thus – as the Court understands the argument – do not qualify as "non-productive" tasks. Wells Fargo asserts that even if some HMCs spend time on non-productive tasks, others may spend little or no time on the same tasks, rendering classwide resolution of the minimum wage claim unmanageable.

The Court does not find Wells Fargo's argument on this point to be persuasive. Whether Wells Fargo requires employees to perform the four categories of duties identified by Kang, and whether those duties are "non-productive," can be resolved on a classwide basis. With respect to asserted variations in HMCs' work habits, Kang presents testimony from Wells Fargo's person most knowledgeable ("PMK") that HMCs regularly perform a litany of tasks which appear to fall within the four allegedly "non-productive" categories. *See* Stevens Decl. Exh. 11 (Garcia Dep.) 15:25-16:2; 33:4-9; 35:11-19; 38:11-22; 39:11-40:23; 41:20-42:13; 41:20-42:13; 43:19-25; 47:3-10; 49:22-50:9; 72:12-14, ECF 41-2. For example, the PMK testified that an HMC typically spends: six hours per month attending sales meetings, *id.* 40:4-8; two to three hours per month attending training, *id.* 40:11-16; at least some time on customer service, such as picking a customer up after closing, *id.* 35:11-19; and one to three hours on processing after final approval

5

of a loan, *id.* 33:4-23. That individual HMCs may spend different amounts of time doing these alleged non-productive tasks is not fatal to Kang's showing on the commonality requirement, as "commonality only requires a single significant question of law or fact." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012).

Kang has established that the commonality requirement is met with respect to Claim 1.

### b. Claim 3 – Failure to Pay Vacation Time

Claim 3, for failure to pay vacation time, asserts that Wells Fargo does not pay HMCs all vacation time to which they are entitled, and that instead Wells Fargo deducts each HMC's vacation pay from the HMC's commissions. The Court initially had difficulty understanding Kang's theory, because the claim comprises only four short paragraphs and it is brought under California Labor Code § 227.3, which at first blush does not appear to fit Kang's theory of liability.

Section 227.3 provides in relevant part that:

> Unless otherwise provided by a collective-bargaining agreement, whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served; provided, however, that an employment contract or employer policy shall not provide for forfeiture of vested vacation time upon termination.

Cal. Lab. Code § 227.3.

Wells Fargo presents evidence that upon termination, Kang was paid $12 per hour for the 70.67 hours of unused vacation time that he accrued during his employment. *See* Kaufman Decl. Exh. B (Kang Dep.) 130:1-17, ECF 42-2. At the hearing, the Court questioned Kang's counsel how Kang could assert a claim for unpaid vacation time under § 227.3 when it appeared that Kang was paid for all outstanding vacation time upon termination. Counsel clarified that Kang's claim did not turn on an alleged failure to pay the accrued vacation time reflected on his paystub – it is undisputed that Kang was paid for those hours. Instead, Kang's theory is that although he took

6

vacation days during the course of his employment, they were not truly *paid* vacation days because Wells Fargo clawed back his vacation pay from his commissions. Thus, according to Kang, at the time of termination he was owed vacation pay for all the vacation days he took but for which he was not paid. The Court concludes that under that theory, Kang's § 227.3 claim may proceed.

Wells Fargo argues that vacation pay is contractual, and that the manner in which vacation pay is calculated for HMCs is spelled out in the offer letters defining the terms of employment for Kang and class members. Wells Fargo asserts that because vacation pay is not required under the law, Wells Fargo is required to pay only what it promised, and it has done so. "The law does not require that an employer include a paid vacation as a portion of his employee's compensation; however, if he does, he is not free to reclaim it after it has been earned." *Owen v. Macy's, Inc.*, 175 Cal. App. 4th 462, 468 (2009). Whether Wells Fargo includes paid vacation as part of HMCs' consideration, and exactly how that vacation is administered, are common issues which can be resolved on a classwide basis. If, as Wells Fargo contends, Kang and the class members are not entitled to vacation pay without set-off against commissions, Wells Fargo may bring a motion for summary judgment and potentially obtain resolution of that issue on a classwide basis.

Wells Fargo argues that Kang's claim is indistinguishable from a § 227.3 claim rejected in *Nguyen v. Wells Fargo Bank, N.A.*, 15-cv-05239-JCS, 2016 WL 5390245 (N.D. Cal. Sept. 26, 2016). The Court agrees that *Nguyen* appears to be on all fours with the present case, and that in *Nguyen* the court rejected the theory advanced by Kang here. However, *Nguyen* was decided prior to *Vaquero v. Stoneledge Furniture, LLC*, 9 Cal. App. 5th 98 (2017), which addressed a compensation plan under which wages advanced to compensate employees for hours worked, including rest periods, were clawed back from future commissions. The plaintiffs asserted a claim for failure to provide paid rest periods under California Labor Code § 226.7 and the applicable wage order, failure to pay all wages owed upon termination under California Labor Code § 203, and related claims. *Vaquero*, 9 Cal. App. 5th at 103-04. The trial court granted summary judgment for the employer, and the California Court of Appeal reversed. The appellate court held that "[t]he advances or draws against future commissions were not compensation for rest periods

7

because they were not compensation at all. At best they were interest-free loans." *Id.* at 115. Kang argues that, similarly, in the present case the draws against future commissions were not compensation for vacation time, because they were not compensation at all. The Court agrees that under the rationale of *Vaquero*, Kang may proceed on his vacation pay theory under § 227.3. However, the Court is not prepared at this time to conclude that *Vaquero*'s analysis regarding rest period pay applies to the vacation pay issue in this case. That issue is common to the class and best considered on a motion for summary judgment.

Kang has established that the commonality requirement is met with respect to Claim 3.

### c. Claims 2, 4, 5, and 6

Kang's remaining claims are derivative of Claim 1 (minimum wage claim) and Claim 3 (vacation time claim). Claim 2 is for failure to pay overtime wages, Claim 4 is for failure to pay all wages owed every pay period, Claim 5 is for failure to pay all wages due at separation, and Claim 6 is for violation of California's UCL. Accordingly, those claims turn on the same common questions discussed above with respect to Claims 1 and 3, and also satisfy the commonality requirement of Rule 23. *See DeLuca v. Farmers Ins. Exch.*, No. 17-CV-00034-EDL, 2018 WL 1981393, at *11 (N.D. Cal. Feb. 27, 2018) ("Because the Court has concluded that the overtime claims meet the commonality and predominance requirements of Rule 23, the derivative state law claims meet these requirements as well.").

The Court notes that Kang seeks certification of a claim for failure to issue accurate wage statements under California Labor Code § 226. *See* Pl.'s Mot. at 22, ECF 40. The complaint does not allege such a claim. *See* Compl., ECF 1. Accordingly, it cannot be certified.

The Court concludes that Kang has identified common questions that may be resolved on a classwide basis with respect all claims alleged in the complaint, and thus concludes that the commonality requirement is satisfied.

### 3. Typicality

Rule 23(a)(3) requires that "the [legal] claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal

8

United States District Court
Northern District of California

arguments to prove the defendants' liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (internal quotation marks and citation omitted). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012) (internal quotation marks and citation omitted). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation. *See Hanon v. Dataprods. Corp.*, 976 F.2d 497, 509 (9th Cir. 1992).

With one significant *caveat*, discussed below, the Court concludes that Kang's claims are typical of those of the class. Based on this record, it appears that Kang's claims are grounded in a common compensation plan applicable to all class member HMCs. Wells Fargo asserts that the compensation plan underwent material revisions in 2016, 2017, and 2018, and that because Kang left in 2015, he cannot represent HMCs challenging the lawfulness of the later compensation plans. Kang refutes that argument with a citation to the deposition testimony of Wells Fargo's PMK, who was asked whether the pay plan for HMCs has been the same since 2013 to the present, despite some of modifications in the language of the plan. Stevens Decl. Exh. 9 (Faktor Dep.) 17:1-14, ECF 41-2. Based on the admission of Wells Fargo's PMK, the Court concludes that modifications in the compensation plan over the years do not defeat typicality.

The one *caveat* is with respect to HMCs who were hired or rehired on or after December 11, 2015, when Wells Fargo implemented a mandatory arbitration provision. Because HMCs governed by the arbitration provision are subject to a unique defense which does not apply to Kang, his claims are not typical of theirs. At the hearing, Kang's counsel conceded that HMCs governed by the arbitration provision are not properly included in this class action. The Court indicated that it would modify the class definition to exclude those employees. Kang's counsel did not object to such modification.

9

The Court thus concludes that Kang satisfies the typicality requirement.

#### 4. Adequacy

To determine Kang's adequacy as a class representative, the Court "must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (internal quotation marks and citation omitted). The record discloses no conflict of interest which would preclude Kang from acting as class representative, and Class Counsel are able attorneys who have litigated this action vigorously on behalf of the class.

Kang satisfies the adequacy requirement.

### B.   Rule 23(b)(3)

Kang seeks certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. As discussed above under the Rule 23(a) commonality requirement, the claims in this case turn on common questions that are capable of classwide resolution.

Wells Fargo argues that because each HMC has different work habits, individual issues will predominate as to whether each HMC performed unproductive tasks and how much time was spent on unproductive tasks. The Ninth Circuit rejected a nearly identical argument in *Ashley Furniture*, holding as follows:

> Defendants either paid or did not pay their sales associates for work performed. No other factor could have contributed to the alleged injury. Therefore, even if the measure of damages proposed here is imperfect, it cannot be disputed that the damages (if any are proved) stemmed from Defendants' actions. The district court did not abuse its discretion in holding that different damages calculations do not defeat predominance in this circumstance.

*Ashley Furniture*, 824 F.3d at 1155.

Wells Fargo argues that this case presents more difficulties than *Ashley Furniture*, because the tasks performed by HMCs are more numerous and more widely varied than the tasks performed by the sales associates in *Ashley Furniture*. Kang has narrowed the tasks at issue to four categories: attending meetings, training, customer service, and administrative processing. The Court will certify Claim 1, and claims derivative thereof, only with respect to claims based on Wells Fargo's failure to compensate for those four categories of tasks. As so limited, this case is indistinguishable from *Ashley Furniture* in any meaningful way.

The Court concludes that Kang has demonstrated that class certification is appropriate under Rule 23(b)(3).

## IV. ORDER

The motion for class certification is GRANTED as to all claims of the complaint, as set forth above, with respect to the following class and subclass:

Class: All non-exempt employees of Wells Fargo who at any time during the period beginning October 27, 2013 through the date notice is mailed to the Class worked for Wells Fargo in California in the job titles of Home Mortgage Consultant, Home Mortgage Consultant, Jr., Private Mortgage Banker, or Private Mortgage Banker, Jr. ("the Class"). Employees who were hired or rehired on or after December 11, 2015 are excluded from the Class.

Vacation/Separation Pay SubClass: All non-exempt employees of Wells Fargo who at any time during the period beginning October 27, 2013 through the date notice is mailed to the Class worked for Wells Fargo in California in the job titles of Home Mortgage Consultant, Home Mortgage Consultant, Jr., Private Mortgage Banker, or Private Mortgage Banker, Jr, and whose employment with Wells Fargo terminated. Employees who were hired or rehired on or after December 11, 2015 are excluded from the Class.

Dated: February 6, 2019

BETH LABSON FREEMAN
United States District Judge

11