1   Joshua H. Haffner, SBN 188652
    (jhh@haffnerlawyers.com)
2   Graham G. Lambert, SBN 303056
    (gl@haffnerlawyers.com)
3   **HAFFNER LAW PC**
    445 South Figueroa St., Suite 2625
4   Los Angeles, California 90071
    Telephone: (213) 514-5681
5   Facsimile: (213) 514-5682

6   Paul D. Stevens, SBN: 207107
    (pstevens@stevenslc.com)
7   **STEVENS, LC**
8   1855 Industrial Street, Suite 518
    Los Angeles, California 90021
9   Telephone: (213) 270-1211
    Facsimile: (213) 270-1223
10

11  *Attorneys for Plaintiffs James C. Kang,*
    *Michael Moses, Jacqueline Ibarra, and the Certified Class*

12  *Additional Counsel on following page*

13                **UNITED STATES DISTRICT COURT**

14        **NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION**

15

16  JAMES C. KANG, an individual, MICHAEL          Case No. 5:17-cv-06220-BLF
    MOSES, an individual, on behalf of themselves  Case No. 5:21-cv-00071-BLF
17  and all others similarly situated,
                                Plaintiffs,        Complaint filed: October 27, 2017
18                     v.
                                                   **PLAINTIFFS' NOTICE OF MOTION AND**
19  WELLS FARGO BANK, N.A.; and DOES 1             **MOTION FOR PRELIMINARY**
    through 10, inclusive,                         **APPROVAL OF PROPOSED CLASS**
20                              Defendant.         **ACTION SETTLEMENT;**
    _____           **MEMORANDUM OF POINTS &**
21  PATRICIA BARRERAS, an individual,             **AUTHORITIES**
    JACQUELINE F. IBARRA, an individual, on
22  behalf of themselves and all others similarly  Date:  August 5, 2021
    situated,                                      Time: 9:00 a.m.
23                               Plaintiffs,       Location: Courtroom 3

24                     v.

25  WELLS FARGO BANK, N.A.; and DOES 1
    through 10, inclusive,
26
27  Defendant.

28

(continued from previous page)

Michael Rubin, SBN 80618
mrubin@altshulerberzon.com
Eileen B. Goldsmith, SBN 218029
egoldsmith@altshulerberzon.com
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064

*Attorneys for Plaintiffs James C. Kang,
Michael Moses, Jacqueline Ibarra, and the Certified Class*

## <u>TABLE OF CONTENTS</u>

NOTICE OF MOTION AND MOTION ................................................................ 1

MEMORANDUM OF POINTS & AUTHORITIES ........................................... 3

INTRODUCTION ............................................................................................. 3

BACKGROUND ............................................................................................... 3

I.    *Ibarra v. Wells Fargo* ........................................................................ 3

II.   *Kang v. Wells Fargo* ....................................................................... 6

III.  Global Settlement of *Ibarra* and *Kang* ...................................... 7

PRINCIPAL SETTLEMENT TERMS .............................................................. 8

ANALYSIS ...................................................................................................... 11

I.    A Single Global Settlement Approval Process Benefits the Parties, the Class Members, and the Judicial System .................................................. 11

II.   Scope of the Settlement Class ........................................................ 12

III.  The Proposed Settlement Merits Preliminary Approval .................... 13

    A.  Legal Standards for Preliminary Approval ........................... 13

    B.  The Settlement is Non-Collusive .......................................... 14

    C.  The Settlement Appropriately Balances the Strength of Plaintiffs' Claims Against the Risks, Expense, and Delay of Further Litigation ............... 14

    D.  The Settlement Does Not Grant Improper Preferential Treatment to Any Segment of the Class ........................................................................ 19

    E.  The Settlement Provides for a Reasonable Award of Attorneys' Fees and Expenses ................................................................................... 20

    F.  The Settlement Raises None of the Concerns Identified in *Bluetooth* ............ 24

IV.  Class Notice and Settlement Administration ................................... 24

CONCLUSION ................................................................................................ 25

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Armenta v. Osmose, Inc.*,

5
    135 Cal.App.4th 314 (2005) ................................................................................. 16

6

*Beaver v. Tarsadia Hotels*,
    2017 WL 4310707 (S.D. Cal. Sep. 28, 2017) ........................................................ 21

7

*Bellinghausen v. Tractor Supply Co.*,

8
    306 F.R.D. 245 (N.D. Cal. 2015) ......................................................................... 19

9

*Boeken v. Philip Morris USA*,

10
    48 Cal.4th 788 (2010) ............................................................................................ 17

11

*Chavez v. Netflix, Inc.*,
    162 Cal.App.4th 43 (2008) .................................................................................... 21

12

*Churchill Village, LLC v. Gen. Elec.*,

13
    361 F.3d 566 (9th Cir. 2004) ........................................................................... 13, 24

14

*Dyer v. Wells Fargo Bank, N.A.*,

15
    303 F.R.D. 326 (N.D. Cal. 2014) ................................................................... 18, 19

16

*Dynabursky v. Alliedbarton Sec. Servs., LP*,
    2016 WL 8921915 (C.D. Cal. Aug. 15, 2016) ...................................................... 18

17

*Eisen v. Carlisle & Jacquelin*,

18
    417 U.S. 156 (1974) .............................................................................................. 24

19

*Ferra v. Loews Hollywood Hotel*,
    40 Cal.App.5th 1239 (2019), *review granted*, Cal. S.Ct. Case No. S259172 ................. *passim*

20

*Gates v. Gomez*,

21
    60 F.3d 525 (9th Cir. 1995) ................................................................................... 23

22

*Gutierrez v. Stericycle*,

23
    No. CV15-08187-JAK, Order Granting Final Approval of Settlement (Dkt. 76;
    C.D. Cal. Mar. 22, 2019) ...................................................................................... 15

24

*In re Bluetooth Headsets Prods. Liability Litig.*,

25
    654 F.3d 935 (9th Cir. 2011) ................................................................................. 24

26

*In re NCAA Grant-in-Aid Cap Antitrust Litig.*,

27
    2017 WL 6040065 (N.D. Cal. Dec. 6, 2017) ........................................................ 22

28

*In re On-Line DVD Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015)...................................................................................... 20

*In re Tableware Antitrust Litig.*,
    484 F.Supp.2d 1078 (N.D. Cal. 2007) .......................................................... 2, 13

*Laffitte v. Robert Half, Int'l*,
    1 Cal.5th 480 (2016)..................................................................................................... 21

*Lewis v. Green Dot Corp.*,
    No. CV16-3557-FMO, 2017 WL 4785978 (C.D. Cal. June 12, 2017)................................... 15

*Naranjo v. Spectrum Sec. Servs.*,
    Cal. S.Ct. Case No. S258966 ....................................................................................... 17

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ................................................................................. 13

*Nguyen v. Wells Fargo Bank, N.A.*,
    2016 WL 5390245 (N.D. Cal. Sept. 26, 2016)............................................................. 16

*Oman v. Delta Air Lines, Inc.*,
    9 Cal.5th 762 (2020)....................................................................................................... 16

*Quiruz v. Specialty Commodities, Inc.*,
    No. 17-cv-03300-BLF, 2020 WL 6562334 (N.D. Cal. Nov. 9, 2020)............................. 18, 19

*Richards v. Chime Financial*,
    No. 19-cv-06864-HSG, 2020 WL 6318713 (N.D. Cal. Oct. 28, 2020) ............................... 15

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009)........................................................................................ 19

*Satchell v. Fed. Exp. Corp.*,
    No. C03-2659 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ........................................ 14

*Semtek Int'l v. Lockheed Martin Corp.*,
    531 U.S. 497 (2001) ....................................................................................................... 17

*Spann v. J.C. Penney Corp.*,
    211 F.Supp.3d 1244 (C.D. Cal. 2016).......................................................................... 19

*Vaquero v. Ashley Furniture Indus., Inc.*,
    824 F.3d 1150 (9th Cir. 2016)...................................................................................... 16

*Vaquero v. Stoneledge Furniture, LLC*,
    9 Cal.App.5th 98 (2017).......................................................................................... 4, 16

*Vasquez v. Coast Valley Roofing, Inc.*,
    670 F.Supp.2d 1114 (E.D. Cal. 2009) .......................................................................... 13

*Vasquez v. Packaging Corp. of Am.*,
  2020 WL 2559490 (C.D. Cal. Mar. 27, 2020) ........................................................ 18

*Viceral v. Mistras Grp., Inc.*,
  2016 WL 5907869 (N.D. Cal. Oct. 11, 2016) ......................................................... 18

*Villalobos v. Calandri Sunrise Farm LP*,
  2015 WL 12732709 (C.D. Cal., July 22, 2015) ...................................................... 18

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ........................................................................ 21, 23

*Wren v. RGIS Inventory Specialists*,
  2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) .......................................................... 20

*Z.B., N.A. v. Superior Court*,
  8 Cal.5th 175 (2019)........................................................................................ 19

**Statutes**

Cal. Civil Code §1542 ....................................................................................... 10, 11

Cal. Labor Code §203 ..................................................................................... 3, 6, 17

Cal. Labor Code §226.7 ........................................................................................ *passim*

Cal. Labor Code §558 ............................................................................................. 19

Cal. Labor Code §2699(i) .................................................................................... 8, 19

Cal. Labor Code §2699(l) ....................................................................................... 18

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 23 ............................................................................................. 12, 18

Fed. R. Civ. P. 23(a) .............................................................................................. 12

Fed. R. Civ. P. 23(b)(3) ..................................................................................... 12, 24

Fed. R. Civ. P. 23(c)(2)(B) .................................................................................. 2, 24

Fed. R. Civ. P. 23(e) ............................................................................................... 1

Fed. R. Civ. P. 23(e)(1) .......................................................................................... 24

Fed. R. Civ.P. 23(e)(2) ........................................................................................... 13

# NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on August 5, 2021 at 9:00 a.m., or as soon thereafter as the Parties may be heard, in Courtroom 3 of the U.S. District Court for the Northern District of California, 280 South 1st St., San Jose, CA, 95113, Plaintiffs James Kang and Michael Moses, and Plaintiff Jacqueline F. Ibarra, individually and on behalf of all similarly situated employees, will and hereby do move the Court pursuant to Fed. R. Civ. P. 23(e) for an order that:

1. Grants preliminarily approval of the proposed $95,696,122.35 non-reversionary global settlement of *Kang v. Wells Fargo Bank, N.A.*, N.D. Cal. Case No. 5:17-cv-06220-BLF, and *Ibarra v. Wells Fargo Bank, N.A.*, N.D. Cal. Case No. 5:21-cv-00071-BLF, as described in the Joint Stipulation of Class Settlement ("Settlement" or "Agreement"), attached as Exhibit 1 to the Declaration of Paul D. Stevens filed herewith, as fair, reasonable, and adequate;

2. Conditionally certifies the Settlement Class, Rest Period Subclass, and Non-Rest Period Subclass as defined in the Settlement, for purposes of settlement;

3. Directs notice to be disseminated to class members in the form and manner proposed by the Parties as set forth in the Settlement and Exhibits thereto;

4. Confirms the Court's previous appointment of Haffner Law PC and Stevens LC as Class Counsel;

5. Appoints Rust Consulting, Inc., to serve as the Settlement Administrator;

6. Sets deadlines for class notice to be sent, exclusion and objection deadlines, and a hearing date and schedule for final approval of the Settlement and consideration of Class Counsel's fee application, as set forth in the following agreed-upon schedule:

| Event | Date |
| --- | --- |
| Notice of Class Action Settlement mailed to settlement class members | 20 business days after preliminary approval |
| Motions for Final Approval and for Attorneys' Fees and Expenses and Class Representative Service Awards Filed | 14 days before Response Deadline |
| Response Deadline for Opt-Outs, Objections, and Disputes | 45 days after Notice mailing |
| Supplemental Briefs in Support of Motions Due | 7 days after Response Deadline |
| Defendants to File Declarations Confirming that CAFA Notice Was Sent | 14 days before Final Approval Hearing |

| Hearing on Motions for Final Approval and Attorneys' Fees and Expenses and Class Representative Service Awards | |
|---|---|

The settlement should be preliminarily approved, and notice of the proposed settlement should be distributed to class members, because the Settlement is "the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval," such that preliminary approval is appropriate. *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007).  Further, the proposed notice of settlement complies with due process requirements and is the "best notice that is practicable under the circumstances," as it provides Class Members an opportunity to fully assess the Settlement, including Plaintiffs' motion for attorneys' fees and costs, before deciding whether to opt out or submit objections. Fed. R. Civ. P. 23(c)(2)(B).

This Motion is based upon this Notice, the accompanying Memorandum of Points & Authorities, the Settlement Agreement, the Declarations of Paul D. Stevens, Joshua H. Haffner, and Michael Rubin filed herewith, all papers and pleadings on file in this action, and such oral argument as may be considered by the Court at the time of the hearing.


DATED:  February 26, 2021                              **STEVENS, LC**


                                        By:      /s/ Paul D. Stevens
                                                 Stevens, LC
                                                 Attorneys for Plaintiffs

## MEMORANDUM OF POINTS & AUTHORITIES

### INTRODUCTION

Plaintiffs James Kang and Michael Moses, and Plaintiff Jacqueline F. Ibarra, seek preliminary approval of a proposed global class action settlement of *Kang v. Wells Fargo Bank, N.A.*, N.D. Cal. Case No. 5:17-cv-06220-BLF, and the related case of *Patricia Barreras and Jacqueline F. Ibarra v. Wells Fargo Bank, N.A.* ("*Ibarra*"), N.D. Cal. Case No. 3:21-cv-00071-BLF. Together, these cases assert rest period and other California wage-and-hour claims against Defendant Wells Fargo on behalf of home mortgage consultants ("HMCs") employed by the bank in California between 2013 and 2019. As a result of this litigation, Wells Fargo has now discontinued the pay practices underlying Plaintiffs' claims in these cases.

The $95,696,122.35 aggregate settlement value, which is entirely non-reversionary, is an extraordinary result that will provide substantial individual recoveries for the approximately 5,377 class members covered by the proposed Settlement Agreement (Stevens Decl., Exh. 1; hereafter "Settlement" or "Agreement"). That Settlement is fair and reasonable; the class representatives and class counsel are adequate to represent the class; the proposed notice complies with due process; and all requirements for preliminary approval have been satisfied. Therefore, this Court should preliminarily approve the Settlement and order the proposed notice to be issued to class members.

### BACKGROUND

This global settlement encompasses all rest period claims asserted in *Ibarra* and *Kang*, as well as the additional claims asserted in the First Amended Class Action Complaint in *Kang* for minimum wage and vacation pay violations, Labor Code §203 waiting time penalties, and civil penalties under the Labor Code Private Attorneys General Act ("PAGA").

### I.  *Ibarra v. Wells Fargo*

*Ibarra* was filed on March 17, 2017 in the Los Angeles Superior Court and was thereafter removed to the U.S. District Court for the Central District of California (Case No. 2:17-cv-04344-PA-AS). Stevens Decl., ¶8 (*Ibarra* Dkt. 1-1). In *Ibarra*, Plaintiffs alleged a single claim of rest break violations under Labor Code §226.7 on behalf of a class of HMCs employed by Wells Fargo

in California.  *Ibarra* Dkt. 1-1.  Plaintiffs alleged that under *Vaquero v. Stoneledge Furniture, LLC*, 9 Cal.App.5th 98 (2017), Wells Fargo's HMC commission-based compensation structure unlawfully failed to separately compensate class members for their non-working rest period time. *Id.*  On July 25, 2017, pursuant to the Parties' stipulation, Judge Percy Anderson certified a class comprised of all HMCs employed by Wells Fargo in California at any time between March 13, 2013 and August 1, 2017.  Stevens Decl., ¶9 (*Ibarra* Dkt. 18).

Following discovery, the Parties brought cross-motions for summary judgment based on stipulated facts.  On January 19, 2018, the district court granted Plaintiffs' motion and denied Defendant's, concluding that Wells Fargo was liable for failing to provide legally compliant rest breaks, in violation of California law.  Stevens Decl., ¶10 (*Ibarra* Dkt. 35).  The Parties also conducted discovery regarding the damages calculations and retained damages experts with whom the Parties worked extensively in preparing damages calculations, ultimately resulting in a stipulation as to the amount of damages that would be awarded depending on which side's legal theories prevailed.  Stevens Decl., ¶11.

The district court then determined the amount of damages owed to the class, based on the Parties' stipulated facts and trial briefs.  The principal dispute between the Parties concerned the proper construction of the premium pay language in Labor Code §226.7.  At the time, that question of California statutory interpretation had not been decided by any California appellate court.  In *Ibarra*, Plaintiffs contended that calculation of Section 226.7 premium pay, defined as "one hour of additional pay at the employee's regular rate of compensation," must include all nondiscretionary remuneration to the employee (much as the term "regular rate of pay" is construed in wage-and-hour law, including under California overtime law), while Wells Fargo contended that the premium pay calculation must be based solely on the $12-per-hour advances against commissions provided by Wells Fargo.  Stevens Decl., ¶12 (*Ibarra* Dkt. 50).

The Parties stipulated that the classwide damages were $97,284,817.91 if Plaintiffs' interpretation of Section 226.7 were correct, and $24,472,114.36 if Defendant's interpretation were correct.  On May 8, 2018, Judge Anderson issued findings of fact and conclusions of law in which he ruled that Plaintiffs' interpretation was correct.  Judge Anderson then entered judgment

in favor of the class in the amount of $97,284,817.91.  Stevens Decl., ¶13 (*Ibarra* Dkt. 50).

Wells Fargo appealed the judgment, arguing that it was not liable to the class at all, and that even if liability could be established, Wells Fargo's construction of the premium pay language should have prevailed.  Stevens Decl., ¶14.  Plaintiff retained experienced appellate counsel from Altshuler Berzon LLP to defend the trial court's judgment.  *Id.*

A few weeks before oral argument on Wells Fargo's appeal in the Ninth Circuit, a panel of the California Court of Appeal issued a decision in *Ferra v. Loews Hollywood Hotel*, 40 Cal.App.5th 1239 (2019), addressing the same issue of statutory interpretation of Labor Code §226.7 as a matter of first impression in the California appellate courts.  Stevens Decl., ¶17.  The panel majority ruled that premium pay under Section 226.7 is to be calculated based solely on an employee's base hourly rate of pay, not on all forms of nondiscretionary remuneration to the employee.  *Ferra*, 40 Cal.App.5th at 1246-52.  In a powerful and comprehensive dissent, Justice Lee Smalley Edmon refuted the majority's arguments and explained that the Legislature and Industrial Welfare Commission intended premium pay under Section 226.7 and its Wage Order counterpart to be calculated based on all forms of nondiscretionary remuneration to the employee, just as overtime pay premium is calculated.  *Id.* at 1255-68.  The plaintiff in *Ferra* successfully sought review in the California Supreme Court.  *See* Cal. S.Ct. Case No. S259172.  *Ferra* is now fully briefed in the California Supreme Court and awaits the scheduling of oral argument.  Stevens Decl., ¶17.  Class Counsel and appellate counsel for Plaintiffs in *Ibarra* provided amicus support for the plaintiff in *Ferra* and additional assistance to counsel for *Ferra* with respect to her California Supreme Court briefing.  Stevens Decl., ¶¶16-17; Rubin Decl., ¶¶11, 15.

On April 15, 2020, the Ninth Circuit entered a memorandum decision remanding *Ibarra* to the district court.  The Ninth Circuit affirmed the district court's liability finding; instructed the district court to order a distribution to the class of the $24,472,114.36 that the Parties had stipulated would be owed if Wells Fargo's statutory interpretation were correct; and further instructed the district court to hold the case pending the outcome of *Ferra* in the California Supreme Court (which could either resolve the Parties' dispute over the intended meaning of Section 226.7 or require further litigation, given the factual differences between Wells Fargo's

compensation scheme and the *Ferra* defendant's).  Stevens Decl., ¶18 (*Ibarra* Dkt. 80 at 7-9).

In response to the Ninth Circuit's remand order, Judge Anderson ordered Wells Fargo to pay $24,472,114.36 plus post-judgment interest.  Stevens Decl., ¶19 (*Ibarra* Dkt. 90).  On July 30, 2020, Wells Fargo paid $25,696,122.35 ($24,472,114.36 plus post-judgment interest) toward satisfaction of the *Ibarra* judgment.  *Id.*  Of that payment, $10,000 was distributed to plaintiff Jacqueline Ibarra as a court-approved class representative service award, $30,000 was distributed for administration of payments to *Ibarra* class members, and $6,424,030.59 was held back in an account managed by the administrator pending class counsel's appeal of Judge Anderson's original attorneys' fees award.  *Id.*[1]  The remaining $19,232,091.76 was distributed to *Ibarra* class members on November 13, 2020.  *Id.*

All further proceedings in *Ibarra* were stayed pending the resolution of *Ferra* in the California Supreme Court.  Stevens Decl., ¶20 (*Ibarra* Dkt. 90).  Judge Anderson subsequently transferred *Ibarra* to this Court, pursuant to the Parties' post-settlement stipulation. *See infra* at 8.

## II.   *Kang v. Wells Fargo*

The consolidated cases of *Kang* and *Moses* are follow-on cases to *Ibarra* that encompass additional class members in the rest break class and additional claims on behalf of all HMCs, including the *Ibarra* class members.

*Kang* was filed in this Court on October 27, 2017.  The original *Kang* complaint alleged that Wells Fargo's HMC pay structure gave rise to minimum wage and vacation pay violations, and included a claim for waiting time penalties under Labor Code §203.  These claims were pleaded on behalf of a class of HMCs who had worked for Wells Fargo in California on or after

---

[1] After entry of judgment in *Ibarra*, Class Counsel applied for an award of attorneys' fees and expenses from the common fund.  Class counsel appealed Judge Anderson's resulting fee award and moved to stay proceedings in that appeal pending the Ninth Circuit's resolution of Wells Fargo's appeal of the *Ibarra* judgment.  The fee appeal was stayed, and later was closed administratively on June 3, 2020, pending the final resolution of *Ibarra* in the district court.  Class Counsel have not yet received any amount in fees and expenses in *Ibarra*.  Stevens Decl., ¶15.

October 23, 2013.  *Kang* Dkt. 1.  The additional claims asserted in *Kang* arose from the same commission-based HMC pay structure that gave rise to the rest period claims in *Ibarra* and *Kang*.

On February 27, 2019, *Kang* was consolidated in this Court with *Moses v. Wells Fargo*, N.D. Cal. Case No. 3:18-cv-00679.  *Moses* alleged a rest break claim on the same legal theory asserted in *Ibarra* on behalf of HMCs who had worked for Wells Fargo in California at any time between August 2, 2017 (the day after the *Ibarra* class period closed) and March 31, 2018 (the date that Wells Fargo discontinued its pay practice that was alleged to have violated California rest period law).  *Moses* also asserted a claim for PAGA penalties based on the underlying Labor Code violations alleged in *Moses* and *Kang*.

On February 27, 2019, Plaintiffs filed a consolidated First Amended Class Action Complaint in *Kang*, encompassing all claims pleaded in *Kang* and *Moses*.  *Kang* Dkt. 64.  On February 27, 2019, this Court granted Plaintiffs' motion to certify a class of HMCs who worked for Wells Fargo in California from October 23, 2013 through the date class notice was mailed.  *Kang* Dkt. 63 at 11.  The Court also certified a rest period subclass consisting of HMCs who worked at any time between August 2, 2017 and March 31, 2018. *Id.* at.  Notice of the *Kang* action was mailed to the class on April 15, 2019, and the opt-out period has closed.  *Kang* Dkt. 76.

The Court also stayed the case pending the Ninth Circuit's ruling in *Ibarra*.  *Kang* Dkt. 77.  On July 23, 2020, after the Parties notified this Court regarding the Ninth Circuit's decision in *Ibarra*, the Court stayed *Kang* again through October 31, 2020, pending a planned global mediation of *Ibarra* and *Kang*.  *Kang* Dkt. 85.

### III.  Global Settlement of *Ibarra* and *Kang*

On October 21, 2020, following a day-long mediation with the assistance of mediator David Rotman, the Parties reached a global settlement of all of the closely related claims in *Ibarra* and *Kang*.  Stevens Decl., ¶27.[2]  The global settlement amount encompasses the amounts already

---

[2] The parties had previously mediated the *Ibarra* case with Mr. Rotman on March 21, 2018, following Judge Anderson's orders on class certification and the cross motions for summary adjudication/judgment.  That mediation was unsuccessful. Stevens Decl., ¶26.

paid by Wells Fargo in *Ibarra* plus another $70 million in new money.  Settlement ¶35.  Following the mediation, the Parties engaged in continued arms-length negotiations over the next three months to complete a long-form settlement agreement.  For purposes of mediation, Class Counsel analyzed damages data for all of the approximately 5,377 individuals included in the proposed Settlement Class, not just those individuals in the previously certified classes in *Ibarra* and *Kang*. Stevens Decl., ¶36.

Rather than attempting to sever the *Ibarra* and *Kang* claims and seek settlement approval before two separate courts, the Parties agreed in the Settlement to seek preliminary and final approval before a single court in order to minimize class member confusion and limit the expenditure of the courts' and Parties' time and resources on settlement approval.  Settlement ¶9.

After the Parties notified Judge Anderson of their intention to seek global settlement approval in the *Kang* Court, Judge Anderson ordered the Parties to show cause why *Ibarra* should not be transferred in its entirety to the Northern District of California.  Stevens Decl., ¶30 (*Ibarra* Dkt. 93).  On December 15, 2020, Judge Anderson transferred *Ibarra* to the Northern District of California pursuant to the Parties' stipulation.  *Id.* ¶30 (*Ibarra* Dkt. 94, 96).  After *Ibarra* was transferred to this District, this Court granted plaintiffs' unopposed motion to relate *Ibarra* to *Kang.*  (*Kang* Dkt. 92).

## PRINCIPAL SETTLEMENT TERMS

Overview.  The overall settlement value includes the $25,696,122.35 that Wells Fargo has already paid to the *Ibarra* class, plus an additional $70 million in new money, for a gross settlement fund of $95,696,122.35.  Settlement ¶35.  The global settlement amount will resolve all claims in *Ibarra* and *Kang*.  Attorneys' fees and litigation expenses, the Labor & Workforce Development Agency's ("LWDA") share of PAGA penalties pursuant to Labor Code §2699(i), settlement administrative costs, and class representative service awards will all be deducted from the gross settlement amount.  Settlement ¶35.

Class members who do not opt out of the settlement will be mailed a settlement payment automatically, without having to file a claim.  Settlement ¶34.  All settlement funds are non-reversionary.  Settlement ¶33.  Settlement checks will be negotiable for 180 days after mailing.

Any residual will be redistributed to class members who cashed their initial settlement checks. Settlement ¶49.

Settlement Class Definition.  The overall settlement class encompasses all HMCs who worked for Wells Fargo in California at any time from March 17, 2013 through December 31, 2019, subject to narrow exclusions.  The settlement class includes all members of the previously certified *Ibarra* and *Kang* classes, as well as HMCs employed in California during the class period who had previously been excluded from the *Kang* classes on the basis that they had signed individual arbitration agreements in connection with their employment.  Settlement ¶32; Stevens Decl., ¶¶34-36.

The Settlement Class includes two subclasses.  The Rest Period Subclass includes all HMCs who worked for Wells Fargo in California between March 17, 2013 and March 31, 2018, when Wells Fargo changed the pay practice that was the basis of the rest break claims in *Ibarra* and *Kang*. The Non-Rest Period Subclass includes all HMCs who worked for Wells Fargo in California from October 27, 2013 through December 31, 2019, when Wells Fargo changed its HMC compensation structure from the structure challenged in *Kang*.  Settlement ¶32.

Settlement Payments to Class Members.  The net settlement proceeds (after deduction of attorneys' fees, costs, administrative costs, LWDA payment, and service awards to the named plaintiffs in *Kang*) will be distributed in the following manner.  First, the Parties have allocated 90% of the net settlement fund -- including the $19.2 million that was already distributed to *Ibarra* class members and the amount previously held back for attorneys' fees from the $25,696,122.35 already paid by Wells Fargo (*see supra* at 6) -- to the rest break claims asserted in *Ibarra* and *Kang* (the "Rest Period Allocation").  This amount will be distributed to Rest Period Subclass Members.  Settlement ¶42(a).  Each subclass member will receive a pro rata share of the Rest Period Allocation based on dates worked, to be offset by any amount that the class member has already received pursuant to the November 2020 *Ibarra* distribution.  Settlement ¶42(a).

Second, the Parties have allocated 10% of the net settlement fund to the minimum wage, vacation pay, and waiting time penalty claims asserted in *Kang* (the "Non-Rest Period Allocation").  Settlement ¶42(b).  This amount will be distributed pro rata to all employees in the

-9-

Non-Rest Period Subclass.  *Id*.  Fifty percent of any payment from the Non-Rest Period Allocation will be treated as taxable wages subject to payroll tax withholding.  Settlement ¶50.  Wells Fargo will separately pay the employer's share of payroll taxes on the individual settlement payments.  Settlement ¶36.

PAGA Payment.  The settlement allocates $750,000 to civil penalties under PAGA.  Settlement ¶39.  Pursuant to Labor Code §2699(i), 75% of the PAGA Payment ($562,500) will be sent to the LWDA.  The remaining 25% of the PAGA Payment will be included in the net settlement fund for individual class member settlement payments.  Settlement ¶39.

Class Counsel Attorneys' Fees and Expenses and Class Representative Service Awards.  Class Counsel will seek up to one-third of the gross settlement fund ($31,898,707) as attorneys' fees, in addition to litigation expenses actually incurred in *Ibarra* and *Kang* up to $100,000, to be deducted from the gross settlement fund.  Settlement ¶37.  Class representative service awards of up to $10,000 each for Plaintiffs James Kang and Michael Moses will also be deducted from the gross settlement fund.  Settlement ¶38.  If the Court does not approve the full amounts requested for attorneys' fees and expenses and class representative service awards, and plaintiffs or plaintiffs' counsel appeals that ruling, their appeal(s) will not delay the distribution of any individual class member settlement payments.  Settlement ¶¶37-38, 44.  Any amounts not approved by the Court for attorneys' fees and expenses and class representative service awards will be added to the net settlement fund for distribution to class members.  Settlement ¶¶37-38.

Releases.  Settlement Class Members will release all claims that were or could have been brought arising from the factual allegations or legal claims asserted in the operative *Kang* and *Ibarra* complaints.  Settlement ¶59.  Named Plaintiffs Kang, Moses, and Ibarra will provide a general release of claims including a Cal. Civil Code §1542 waiver.  Settlement ¶¶60-62.

Notice.  Notice will be provided by U.S. Mail to the last known address of each class member as determined from Wells Fargo's business records and as updated through the U.S. Postal Service National Change of Address database.  Settlement ¶¶52-53.  The deadline for objecting to or excluding oneself from the settlement will be 45 days after the notice is mailed.  Settlement ¶54.  The settlement provides for skip tracing to locate class members whose notices

are returned as undeliverable, and an extended response deadline for class members whose notices are remailed.  Settlement ¶53.

      <u>Administrative Costs</u>.  The Parties have appointed Rust Consulting to serve as the Settlement Administrator.  Settlement ¶40.  Rust has estimated the costs of administering the Settlement at $50,000.00.  *Id.*[3]

# ANALYSIS

I. **A Single Global Settlement Approval Process Benefits the Parties, the Class Members, and the Judicial System.**

      A single global settlement approval process in this Court is appropriate for the same reasons that it was appropriate to transfer *Ibarra* to the Northern District of California and relate it to *Kang*.  A single settlement approval process will benefit class members, the Parties, and the court system.  The classes in *Kang* and *Ibarra* substantially overlap.  Both cases involve the identical California law rest period claim, covering contiguous time periods.  *Kang* also asserts additional substantive claims and a PAGA claim on behalf of thousands of the same individuals who have rest period claims in either case.  Therefore, conducting a single settlement approval process in this Court will conserve the resources of the Parties and the court system.

      A single settlement approval process will also prevent class member confusion that might otherwise arise from conducting separate settlement approval processes in different courts, with the possibility of conflicting notices, response deadlines, or rulings on preliminary and final approval.  Class members in both *Kang* and *Ibarra* have already received a class notice at least once in the course of these cases and are likely to be confused if they were to receive two settlement notices.  The proposed settlement notice clearly explains the global settlement, the relationship between *Ibarra* and *Kang*, and the effect of any payments already received by *Ibarra* class members on their individual settlement recoveries.  *See* Settlement Exh. A.

---

[3] As noted *supra* at 6, administrative costs for the initial distribution to *Ibarra* class members and Plaintiff Ibarra's $10,000 class representative service award have already been distributed from Wells Fargo's initial payment in *Ibarra*.

Finally, the global settlement of *Ibarra* and *Kang* eliminated any problem of allocating funds between the two cases, which involve overlapping classes and claims, and treats all rest period claims equally regardless of the case in which a particular class member's claims were asserted. A single settlement approval process will ensure that those identically situated class members with rest period claims are treated equally.

## II.    Scope of the Settlement Class

The *Ibarra* and *Kang* courts previously ruled that the proposed classes in those cases satisfied all requirements of Fed. R. Civ. P. 23(a) and 23(b)(3). As a result, the settlement's class definition need be addressed here only to the extent that the proposed settlement class is slightly larger than the classes that were certified, while still asserting the identical claims, based on the same Wells Fargo pay structure, that were previously certified.

The certified class in *Ibarra* had 4,481 members. The certified class in *Kang*, which has overlapping claims, includes approximately 3,123 individuals. The total number of unique individuals in the *Ibarra* and *Kang* classes is 4,533. Stevens Decl., ¶34.

The Settlement Class is modestly expanded beyond the certified classes in two ways. First, the Settlement Class extends the class period in *Kang* from its original end date of April 15, 2019 (the date that class notice was sent in *Kang*) to December 31, 2019, the date that the Wells Fargo discontinued the pay structure challenged in *Kang*. This change in the temporal scope of the claims at issue does not add class members or alter the claims that were certified.

Second, the Settlement Class adds 844 HMCs who worked for Wells Fargo during the certified *Ibarra* and *Kang* class periods who were previously excluded from the certified classes on the basis that they signed individual arbitration agreements in connection with their employment, resulting in a total of approximately 5,377 Settlement Class members. The additional HMCs worked for Wells Fargo pursuant to the same pay structure that was challenged in *Ibarra* and *Kang*, and assert only the claims that were previously certified in these cases. Stevens Decl., ¶36. Therefore, the slightly expanded settlement class continues to satisfy Rule 23 requirements.

III.   **The Proposed Settlement Merits Preliminary Approval.**

A.    **Legal Standards for Preliminary Approval**

The Court's review of a class action settlement requires a two-step process. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).  First, the Court must determine whether to grant preliminary approval and order class notice.  *Id*.  Second, the Court must hold a fairness hearing to determine if the settlement is "fair, reasonable, and adequate." Fed. R. Civ.P. 23(e)(2).  At the preliminary approval stage, this Court must determine whether the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies.  *See, e.g.*, *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007).  "To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer."  *Vasquez v. Coast Valley Roofing, Inc.*, 670 F.Supp.2d 1114, 1125 (E.D. Cal. 2009) (citing *In re Tableware Antitrust Litig.*, 484 F.Supp.2d at 1080).

Additionally, to determine whether a settlement is fundamentally fair, adequate, and reasonable, the Court may preview the factors that will ultimately inform final settlement approval: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement.  *See Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).  The proposed Settlement readily satisfies these standards.[4]

---

[4] The class members' reaction to the proposed Settlement should be considered after class notice is distributed.

**B.    The Settlement is Non-Collusive.**

This settlement is entirely non-collusive.  *Ibarra* and *Kang* were resolved on a global basis only after several years of vigorous litigation, including litigation through final judgment and a Ninth Circuit appeal in *Ibarra* and through class certification in *Kang*.  During the *Ibarra* action, the Parties engaged in mediation more than once.  Stevens Decl., ¶¶26-27.  The Parties ultimately reached the global settlement of *Ibarra* and *Kang* only with the assistance of a highly experienced mediator, David Rotman.  *Id.* ¶27.  For these reasons, the Settlement merits an initial presumption of fairness.  *See, e.g.*, *Satchell v. Fed. Exp. Corp.*, No. C03-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

There is further evidence that the settlement is non-collusive.  The proposed $95,696.122.35 gross settlement value is entirely non-reversionary and includes $70 million in new money from Wells Fargo in addition to the amount already paid by Wells Fargo to the class members in *Ibarra*.  Also, the settlement class is expanded beyond the scope of the certified classes in *Ibarra* and *Kang* only to the extent necessary to permit recoveries for all HMCs who worked for Wells Fargo in California under the challenged pay structure during the applicable limitations periods, and not to expand the claims that are released; class members will release only those claims against Wells Fargo that were or could have been brought based on the facts and legal theories alleged in the operative complaints.

**C.    The Settlement Appropriately Balances the Strength of Plaintiffs' Claims Against the Risks, Expense, and Delay of Further Litigation.**

<u>Overview.</u>  The settlement provides an aggregate gross settlement fund of $95,696,122.35 to resolve all claims alleged in *Ibarra* and *Kang*.  The aggregate fund includes the $25,696,122.35 that has already been paid to the class in *Ibarra* plus an additional $70 million in new funding from Wells Fargo. [5]  This overall settlement fund represents 47% of the maximum exposure faced

---

[5] Where a defendant has already paid some benefits to class members during the course of the litigation, the value of those benefits is often considered in evaluating the settlement as a

by Wells Fargo on the claims alleged in *Ibarra* and *Kang* and will provide substantial individual recoveries to the class members.  Stevens Decl., ¶41.  The net settlement fund available for individual class member payments is estimated at $62,876,415.30 (assuming the full amounts of attorneys' fees and expenses, class representative service awards, and settlement administration costs are approved by the Court).  Settlement ¶41.

Further, the settlement allocates $750,000 to PAGA civil penalties, of which $562,500 (75%) will be paid to the LWDA and 25% ($187,500) will be included in the net settlement fund for class member payments.

Class Claims.  In recognition of Plaintiffs' relative likelihood of success on the rest period and non-rest period claims, the net settlement fund is allocated 90% to the rest period claim in *Ibarra* and *Kang* and 10% to all other claims alleged in *Kang*.  The average individual recovery from the net settlement fund will be $11,693.59.  Stevens Decl., ¶41.  The vast majority of Settlement Class Members will receive a share of the Rest Period Allocation, and most will receive a share of both Allocations.  *Id.*

Because Plaintiffs' rest period claim is particularly strong, that claim drove the settlement negotiations and the plan of allocation.  Stevens Decl., ¶38.  *Ibarra* alleged that Wells Fargo's HMC pay structure failed to separately compensate HMCs for their rest periods in violation of California law.  *Kang* alleged the same claim on behalf of HMCs who were employed by Wells Fargo after the close of the *Ibarra* class period.  Plaintiffs prevailed on the rest period claim in *Ibarra* before the district court, securing a judgment of $97,284,817.91 on behalf of the *Ibarra* class.

Plaintiffs then prevailed on appeal with respect to Wells Fargo's liability, and the Ninth Circuit remanded the case to Judge Anderson for further proceedings, to be conducted after the California Supreme Court's anticipated ruling in *Ferra* construing Labor Code §226.7's premium

whole.  *See, e.g.*, *Richards v. Chime Financial*, No. 19-cv-06864-HSG, 2020 WL 6318713, at *2-3 (N.D. Cal. Oct. 28, 2020); *Lewis v. Green Dot Corp.*, No. CV16-3557-FMO, 2017 WL 4785978, at *3 (C.D. Cal. June 12, 2017); *Gutierrez v. Stericycle*, No. CV15-08187-JAK, Order Granting Final Approval of Settlement (Dkt. 76; C.D. Cal. Mar. 22, 2019) (Stevens Decl., Exh. 3).

pay language, to determine the full value of the judgment in the class's favor.  As a result of Plaintiffs' efforts in *Ibarra*, Rest Period Subclass members were ensured a minimum recovery of at least $12 per class member per workday (one hour at the employee's advance-against-commissions rate), and, pending the outcome of *Ferra*, stood to recover approximately $52 per class member per workday.  Stevens Decl., ¶39.

By contrast, Plaintiffs faced much greater litigation risk on the non-rest period claims asserted in *Kang*.

The minimum wage claim seeks compensation for Non-Rest Period Subclass members' work time (i.e., time when HMCs were under Wells Fargo's control, or when Wells Fargo suffered or permitted them to engage in work activities) when those HMCs were engaged in non-selling activities such as customer service, loan processing, and trainings.  The minimum wage claim relies on the line of California authorities establishing that employers must compensate employees with at least the minimum wage for each hour worked, without relying on "averaging" an employee's compensation across all hours worked. *See, e.g.*, *Armenta v. Osmose, Inc.*, 135 Cal.App.4th 314 (2005); *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150 (9th Cir. 2016) (applying no-averaging principle to commissioned salespeople).  The California Supreme Court recently restated the principle of the *Armenta* line of cases as a prohibition on "borrowing" compensation contractually promised for certain work time to pay employees for other work time. *Oman v. Delta Air Lines, Inc.*, 9 Cal.5th 762, 781-82 (2020).  While Plaintiffs believe the HMC pay structure violates the "no-borrowing" principle as articulated in *Oman*, Plaintiffs recognize that *Oman*'s full impact has yet to be acknowledged in the case law and that *Oman*'s application to the HMCs' minimum wage claim might be uncertain.

The other non-rest period claims asserted in *Kang* also faced potentially significant hurdles in the absence of a settlement.  In opposition to class certification in Kang, Wells Fargo had pointed out that another district court had rejected a vacation pay claim similar to that asserted in *Kang* in 2016.  *See Kang* Dkt. 54 at 7 (citing *Nguyen v. Wells Fargo Bank, N.A.*, 2016 WL 5390245 (N.D. Cal. Sept. 26, 2016)).  While Plaintiffs believe the California Court of Appeal's 2017 decision in *Vaquero* alters the analysis with respect to the vacation pay claim, Plaintiffs

-16-

recognize that the outcome on this claim is also uncertain.  Likewise, Plaintiffs' Labor Code §203 claim for waiting time penalties requires a showing of willfulness that might have been difficult to establish; and whether the rest period claims under Labor Code §226.7 asserted here can give rise to an entitlement to waiting time penalties is pending before the California Supreme Court in *Naranjo v. Spectrum Sec. Servs.*, Case No. S258966.  Wells Fargo has also suggested that the non-rest period claims asserted in *Kang* are barred by the *Ibarra* judgment with respect to time periods covered by that judgment.  While the minimum wage and other claims alleged in *Kang* do not involve the same primary right as the claim in *Ibarra* that Wells Fargo failed to properly compensate class members for their non-working rest period time, *see Boeken v. Philip Morris USA*, 48 Cal.4th 788, 798 (2010), Plaintiffs recognize that Wells Fargo's res judicata argument could create substantial uncertainty in future litigation.[6]

In sum, the proposed settlement represents a reasonable compromise and a reasonable valuation of the claims at issue.  Wells Fargo's liability on the rest period claim was resolved conclusively in *Ibarra*, leaving only the question of how to calculate damages on that claim.  The minimum value of the rest period claim with respect to all Rest Period Subclass Members is $28,496,442.35 (the calculation if Wells Fargo's interpretation of Labor Code §226.7 ultimately prevails in the California Supreme Court in *Ferra*), and the maximum value is $109,360,535.40 (if Plaintiffs' interpretation of Labor Code §226.7 ultimately prevails).  Stevens Decl., ¶39.  Plaintiffs' decision to compromise also reflects their awareness of the inevitable delays that will ensue while waiting for the California Supreme Court to rule in *Ferra* and the risk that, depending on that ruling, further litigation might be required to determine whether Wells Fargo owed any additional amount to the Rest Period Subclass under Labor Code §226.7 beyond the $25,696,122.35 that Wells Fargo had already paid, and if so, how much more.

---

[6] California res judicata principles would determine the preclusive effect of the *Ibarra* judgment on the California state law claims brought in diversity in *Kang*.  *Semtek Int'l v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001).

Plaintiffs estimated the non-rest period claims at a maximum value of $94 million.  The overall settlement value of $95,696,122.35 is equivalent to 47% of the maximum value of the claims being settled.  Stevens Decl., ¶¶40-41.  By any estimation, the proposed settlement is both an excellent result and reasonable under all of the circumstances, warranting preliminary approval. *See, e.g.*, *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 331 (N.D. Cal. 2014) (approving settlement equivalent to one-third of the defendant's maximum potential liability in wage payment case); *Dynabursky v. Alliedbarton Sec. Servs., LP*, 2016 WL 8921915, at *5 (C.D. Cal. Aug. 15, 2016) (approving settlement equivalent to 27.5% of defendants' maximum potential liability in wage and hour action); *Vasquez v. Packaging Corp. of Am.*, 2020 WL 2559490, at *8 (C.D. Cal. Mar. 27, 2020) (collecting cases approving settlements for 25-35% of total potential liability in wage and hour cases).  The aggregate amount and estimated individual recoveries also compare very favorably with Class Counsel's prior settlements in similar wage-and-hour cases on behalf of bank employees.  Stevens Decl., ¶44.

PAGA Claim.  Under Labor Code §2699(l), the Court must also "review and approve any penalties sought as part of a proposed settlement agreement" of PAGA claims.  There is "no requirement," however, that the Court "certify a PAGA claim for representative treatment," as in a class action.  *Villalobos v. Calandri Sunrise Farm LP*, 2015 WL 12732709, at *5 (C.D. Cal., July 22, 2015). Rather, the PAGA component of the settlement should be approved "where the settlement terms (1) meet the statutory requirements set forth by PAGA, and (2) are fundamentally fair, reasonable, and adequate in view of PAGA's public policy goals."  *Quiruz v. Specialty Commodities, Inc.*, No. 17-cv-03300-BLF, 2020 WL 6562334, at *3 (N.D. Cal. Nov. 9, 2020) (quotation omitted).  "[W]here a settlement for a Rule 23 class is robust, the statutory purposes of PAGA may be fulfilled even with a relatively small award on the PAGA claim itself, because such a settlement not only vindicates the rights of the class members as employees, but may have a deterrent effect upon the defendant employer and other employers, an objective of PAGA."  *Viceral v. Mistras Grp., Inc.*, 2016 WL 5907869, at *9 (N.D. Cal. Oct. 11, 2016).

The PAGA component of this Settlement readily satisfies these standards. Plaintiffs estimated the value of the PAGA claims asserted in *Kang* at approximately $13 million, and the

Parties allocated $750,000 of the gross settlement value to PAGA penalties (to be further allocated between class members and the LWDA, in accordance with Labor Code §2699(i)).  Stevens Decl., ¶42.[7]  As discussed above, the settlement as a whole is extraordinarily robust and will provide substantial individual recoveries, thereby vindicating the rights of Wells Fargo's employees and sending a powerful deterrent message to other California employers.  Here, even a modest allocation from the gross settlement fund to PAGA penalties effectuates PAGA's policy goals.

> **D.**     **The Settlement Does Not Grant Improper Preferential Treatment to Any Segment of the Class.**

The Settlement does not grant improper preferential treatment to the Class Representatives or to any segment of the Class.  As just discussed, the plan of allocation is structured to reflect the relative strength of and likelihood of recovery on the claims alleged by the different Subclasses.

The Settlement recognizes the efforts of the named plaintiffs without granting improper preferential treatment.  The Settlement provides for Class Representative Service Awards of $10,000 each to Plaintiffs Kang and Moses.  Settlement ¶38.  Courts routinely approve service awards to compensate named plaintiffs for the work done on behalf of the class, the risks they incurred during the course of the class action litigation, and sometimes, to recognize their willingness to act as a private attorney general.  *See, e.g.*, *Quiruz*, 2020 WL 6562334, at *11 (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009)).  The proposed awards are consistent with the $10,000 service award already approved by Judge Anderson for Plaintiff Ibarra and with amounts commonly awarded in district courts in the Ninth Circuit.  *See, e.g.*, *Quiruz*, 2020 WL 6562334, at *11 (approving $10,000 class representative service award); *Spann v. J.C. Penney Corp.*, 211 F.Supp.3d 1244, 1265-66 (C.D. Cal. 2016) (same); *Dyer*, 303 F.R.D. at

---

[7] The potential PAGA recovery decreased significantly during the course of the *Kang* litigation.  Stevens Decl., ¶42.  Plaintiffs originally sought to recover unpaid wages as well as civil penalties through the PAGA claim, pursuant to Labor Code §558.  *Kang* Dkt. 64, ¶54.  In 2019, the California Supreme Court held that unpaid wages may not be recovered through a PAGA penalties claim.  *See Z.B., N.A. v. Superior Court*, 8 Cal.5th 175 (2019).

335 (same); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015)

("Incentive awards typically range from $2,000 to $10,000.").  Moreover, as will be set forth in

detail in declarations to be submitted in connection with Plaintiffs' final approval motion, the

proposed service awards for Plaintiffs Kang and Moses compensate each of those individuals for

their time, effort, risks undertaken for the payment of costs in the event the actions had been

unsuccessful, possible retaliation or reputational harm in the industry, and for their provision of a

general release.  *See* Stevens Decl., ¶¶80-84.

The total value of these service awards is a minuscule fraction -- three one-hundredths of

1% -- of the gross settlement value, *see, e.g.*, *In re On-Line DVD Rental Antitrust Litig.*, 779 F.3d

934, 947-48 (9th Cir. 2015) (approving service awards comprising in the aggregate less than 1%

of the gross settlement value), and the awards compare favorably to the class members' individual

recoveries from this settlement.  Individual class member recoveries from the net settlement fund

will be, *on average*, approximately $11,693.59, underscoring that the proposed $10,000 service

awards are reasonable, as Judge Anderson already found with respect to Plaintiff Ibarra.  *See*

*supra* at 15; *see, e.g.*, *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *37 (N.D. Cal.

Apr. 1, 2011) (approving service awards that exceeded the average settlement payment but were

less than the largest settlement payments).

Finally, as noted *supra* at 10, any amounts not approved by the Court will be allocated to

the net fund value for class member settlement payments.

**E.     The Settlement Provides for a Reasonable Award of Attorneys' Fees and Expenses.**

The Settlement permits Class Counsel to seek Court approval for a fee award of up to one-

third of the gross settlement value, and litigation expenses actually incurred in *Ibarra* and *Kang* up

to $100,000.  Settlement ¶37.  As noted *supra* at 6 n.1, Class Counsel have not received any

attorneys' fees yet from the common fund in *Ibarra*.  Plaintiffs had appealed from Judge

Anderson's original fee award in *Ibarra*, and that appeal was administratively closed pending

further district court proceedings in *Ibarra* after the Ninth Circuit ruled on Wells Fargo's appeal

from the judgment.

Class Counsel intend to seek a percentage-of-the-fund fee award based on the applicable California law principles because these cases exclusively involve claims under state law brought in diversity.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  Under California law, the percentage-of-the-fund method may be used to determine attorneys' fees in class actions, *Laffitte v. Robert Half, Int'l*, 1 Cal.5th 480, 503-04 (2016), and a fee award of one-third of the common fund is routine.  *See, e.g.*, *id.* at 487, 506 (affirming award of one-third of $19 million common fund in wage-and-hour class action); *Chavez v. Netflix, Inc.*, 162 Cal.App.4th 43, 66 n.11 (2008) ("fee awards in class actions average around one-third of the recovery"); *Beaver v. Tarsadia Hotels*, 2017 WL 4310707, at *9 (S.D. Cal. Sep. 28, 2017) ("California courts routinely award attorneys' fees of one-third of the common fund.").

As Plaintiffs will set forth in detail in their motion for attorneys' fees and expenses, Class Counsel's efforts in *Ibarra* and *Kang* led to an extraordinarily robust settlement.  Plaintiffs' initial success in the trial court (securing a $97 million class judgment), and their success defending the judgment in the Ninth Circuit (securing a decision that Wells Fargo was liable for failing to provide legally-compliant paid rest periods, and owed the class at least $24 million and up to $97 million, depending on the California Supreme Court's ruling in *Ferra*), positioned Plaintiffs to achieve an extraordinary settlement on behalf of both the *Ibarra* and the *Kang* class members.

Notably, the amount recovered was not a function of class size, but was directly attributable to Class counsel's effective litigation of their damages theory.  The interpretation of the premium pay language in Labor Code §226.7 was, and remains, unsettled.  By prevailing on their interpretation, Class Counsel increased the *Ibarra* judgment by 4.3 times the amount asserted by Wells Fargo, resulting in an additional $74,662,010.64 award to the *Ibarra* class that then drove the extraordinary overall settlement result.  Moreover, the recoveries in this settlement are exemplary both on an individual basis and as a percentage of Wells Fargo's overall potential

liability.  *See supra* at 14-15.[8]  Not only did Class Counsel's efforts secure extraordinary monetary relief for class members, both in the aggregate and in terms of individual class member recoveries, *see supra* at 15, but during and as a result of the litigation, Wells Fargo changed its HMC pay structure to begin separately paying for rest periods and to eliminate the practices that were challenged in *Ibarra* and *Kang*.  Thus, the benefits to HMCs from this litigation will in time equal, and then exceed, the value of the gross settlement fund.  Stevens Decl., ¶43.  A fee award of one-third of the common fund is appropriate here in light of the extraordinary results obtained for class members, the high level of skill with which the cases were litigated, and the fact that these cases were litigated on a contingent basis.  Stevens Decl., ¶57.  Courts often award one-third of the common fund as attorneys' fees where the gross settlement fund, as a percentage of the total possible recovery, is considerably lower than the 47% recovery here.  *In re NCAA Grant-in-Aid Cap Antitrust Litig.*, 2017 WL 6040065, at *3 n.14 (N.D. Cal. Dec. 6, 2017) (collecting cases).

In determining the common fund fee for Class Counsel's work in these cases, it is appropriate to consider both the amount that Wells Fargo has already paid to the class members in *Ibarra* and the additional $70 million that will be distributed through the Settlement.  Class Counsel's efforts created the entire aggregate fund from which Class Counsel will seek a common fund fee award, including the $25,696,122.35 that Wells Fargo has already paid toward the *Ibarra* judgment.  But Class Counsel have not received any fee from the *Ibarra* fund to date, and as part of the Settlement, Plaintiffs have agreed to seek fees in connection with the global settlement solely in this Court.  Stevens Decl., ¶15; Settlement ¶37.

As will be set forth in detail in the fee motion, the proposed award of one-third of the common fund also represents a reasonable multiplier on Class Counsel's combined lodestar for these cases.  Through January 31, 2021, Class Counsel have incurred nearly 4,000 hours of work

---

[8] Similarly, according to a comprehensive study analyzing 613 settlements from January 2007 through March 2015, average individual settlement value per wage and hour class action has been declining since 2011 (from $1,475 in 2011 to $686 in 2014 to $253 through 2015).  Stevens Decl., ¶45 & Exh. 2.

in these cases, resulting in an overall lodestar of $3,583,636.00.  Stevens Decl., ¶72.  In addition, recognizing the importance of the Ninth Circuit appeal (which turned on an issue of California statutory interpretation that had never been decided by a California appellate court at the time the appeal commenced) and the magnitude of the case, Class Counsel retained highly skilled and experienced appellate and employment law counsel at Altshuler Berzon LLP to handle the Ninth Circuit appeals on behalf of the class.  Stevens Decl., ¶14.  Altshuler Berzon has continued to be involved with the case through the subsequent mediation that led to the global settlement and has since associated in as Plaintiffs' counsel to assist with the settlement approval process.  Rubin Decl., ¶16.  Class Counsel's overall lodestar calculation includes the 376.5 hours of attorney time that Altshuler Berzon devoted to *Ibarra* and *Kang*, resulting in a lodestar of $349,323.50.  Rubin Decl., ¶18. The lodestar calculations also include the 168 hours incurred in preparing amicus briefs in the California Court of Appeal and Supreme Court in *Ferra* and consulting with the plaintiff's attorney in *Ferra.*  That work was necessary to protect the *Ibarra* judgment on appeal and to best position the *Ibarra* and *Kang* cases for settlement, and is therefore properly included in the lodestar.  Stevens Decl., ¶71; Rubin Decl., ¶¶11, 15.  *See Gates v. Gomez*, 60 F.3d 525, 535 (9th Cir. 1995) (awarding attorneys' fees for preparing amicus brief in a case raising similar issues in order to "protect the interests of the class").

Class Counsel and Altshuler Berzon will necessarily perform substantial additional work in these cases through final approval, and in connection with the settlement administration if the Settlement is approved.  Haffner Decl., ¶12; Stevens Decl., ¶69; Rubin Decl., ¶18.  Thus, the overall lodestar to date is $3,583,636.00, and the requested common fund fee award reflects an 8.9 multiplier on that current lodestar.  Stevens Decl., ¶72.  Percentage-of-the-fund awards that result in comparable multipliers on lodestar are routinely approved in large common fund cases.  *See Vizcaino*, 290 F.3d at 1051 & n.6 (approving percentage-of-the fund award resulting in 3.65 multiplier; collecting large-fund cases where multipliers ranged from 0.6–19.6).

Finally, Class Counsel will set forth the expenses for which they seek reimbursement in detail in the fee motion, up to $100,000 for both cases.  The expenses for which Class Counsel will seek reimbursement are of the type routinely reimbursed as necessary litigation expenses,

such as expert and mediator's fees and the costs of providing class notices in *Ibarra* and *Kang*. Stevens Decl., ¶73.

**F.     The Settlement Raises None of the Concerns Identified in *Bluetooth*.**

The Settlement raises none of the red flags identified by the Ninth Circuit in *In re Bluetooth Headsets Prods. Liability Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).  The gross settlement amount of $95,696.122.35 is entirely non-reversionary.  Any amounts not approved for Class Counsel's requested attorneys' fees and expenses or for class representative service awards will be added to the net settlement fund for distribution to class members.  Although Wells Fargo has agreed not to oppose a fee application of up to one-third of the gross settlement amount, that distribution, if approved by the Court, is not disproportionate.  As noted above, a fee award of one-third of the gross settlement amount is entirely consistent with fee awards under California law and warranted by the risks of this litigation, the skill with which the case was litigated, and results obtained (including individual class member recoveries in the tens of thousands of dollars).

**IV.     Class Notice and Settlement Administration**

Before finally approving a class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Where the settlement class is certified pursuant to Rule 23(b)(3), the notice must also be the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  The notice provided to class members should "clearly and concisely state in plain, easily understood language" the nature of the action; the class definition; the class claims, issues, or defenses; that the class member may appear through counsel; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members.  *Id.*  "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard," *Churchill*, 361 F.3d at 575, and if mailed to each class member "who can be identified through reasonable effort," *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974).

Here, the proposed Notice (Settlement, Exh. A) has been crafted to minimize confusion to class members, all of whom have received at least one class action notice already in *Ibarra* or *Kang*, and some who have received a notice in both cases.  Pursuant to the Settlement, each class member will receive a single notice of the global settlement that clearly sets forth the relationship of this settlement to the payments already made in *Ibarra*, including that payments previously issued to *Ibarra* class members will be offset against any payments due under the Settlement. The Notice further sets forth, in plain and easily understood language, what the case is about; the class and subclass definitions and claims; the settlement amount and information as to the approximate individual settlement payments; the requested amounts for Class Counsel's fees and costs and class representative service awards; the right of class members to appear through attorneys; the rights of class members to opt out of, or object to, the Settlement and the process by which they can do so; the binding effect of the Settlement on those who do not request exclusion; the terms of the releases; and the particulars of the final fairness hearing.  Settlement Exh. A.

The Notice will be distributed to Class Members in a manner that provides "the best notice practicable under the circumstances."  Wells Fargo's business records will supply class members' last known addresses for the notice mailing.  Before mailing the Notices, the Settlement Administrator will first verify addresses through the U.S. Postal Service's National Change of Address database.  Notice will then be sent to each class member's address by first class U.S. Mail.  Settlement ¶¶52-53.  The Settlement Administrator will remail notices that are returned with forwarding addresses.  Settlement ¶53.  For notices that are returned as undeliverable without a forwarding address, the Settlement Administrator will perform skip traces to obtain more current addresses and shall remail the Notices where new addresses are ascertained.  Settlement ¶53. Class Members will have 45 days to object to, or opt out of, the proposed settlement, conforming with the Court's Procedural Guidance for Class Action Settlements; and Class Members whose Notices are remailed will receive additional time to respond.  Settlement ¶54.

## CONCLUSION

For the foregoing reasons, the Court should grant preliminary approval of the proposed Settlement as set forth in the [Proposed] Order submitted herewith; order notice to be distributed

to the Settlement Class; and set a schedule for further settlement approval proceedings and a final approval hearing.

DATED:  February 26, 2021                    **STEVENS LC**


                                   By:     /s/ Paul D. Stevens
                                          Stevens LC
                                          Attorneys for Plaintiffs