Joshua H. Haffner, SBN 188652
(jhh@haffnerlawyers.com)
Graham G. Lambert, SBN 303056
(gl@haffnerlawyers.com)
**HAFFNER LAW PC**
445 South Figueroa St., Suite 2625
Los Angeles, California 90071
Telephone: (213) 514-5681
Facsimile: (213) 514-5682

Paul D. Stevens, SBN 207107
(pstevens@stevenslc.com)
**STEVENS, LC**
1855 Industrial Street, Suite 518
Los Angeles, California 90021
Telephone: (213) 270-1211
Facsimile: (213) 270-1223

*Attorneys for Plaintiffs James C. Kang,*
*Michael Moses, Jacqueline Ibarra, and the Certified Class*

*Additional Counsel on following page*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES C. KANG, an individual, MICHAEL MOSES, an individual, on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>    v.<br><br>WELLS FARGO BANK, N.A.; and DOES 1 through 10, inclusive,<br>       Defendant.<br>_____<br>PATRICIA BARRERAS, an individual, JACQUELINE F. IBARRA, an individual, on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>    v.<br><br>WELLS FARGO BANK, N.A.; and DOES 1 through 10, inclusive,<br><br>       Defendant. | **Case No. 5:17-cv-06220-BLF**<br><br>**Case No. 5:21-cv-00071-BLF**<br><br><br>**DECLARATION OF PAUL D. STEVENS, IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**<br><br>Date: August 5, 2021<br>Time: 9:00 a.m.<br>Location: Courtroom 3 |

(continued from previous page)

Michael Rubin, SBN 80618
mrubin@altshulerberzon.com
Eileen B. Goldsmith, SBN 218029
egoldsmith@altshulerberzon,com
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064

*Attorneys for Plaintiffs James C. Kang,
Michael Moses, Jacqueline Ibarra, and the Certified Class*

DECLARATION OF PAUL D. STEVENS IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

## DECLARATION OF PAUL D. STEVENS, ESQ.

I, Paul D. Stevens, declare as follows:

1.      I am an attorney admitted and licensed to practice in the state of California and before all of the United States District Courts in the State of California as well as the Ninth Circuit Court of Appeals.  I am a member in good standing and have never been subject to discipline by any court.

2.      I am the owner of the law firm of Stevens, LC.  I am co-Class Counsel in this matter and the related action of *Barreras and Ibarra v. Wells Fargo Bank, N.A.* ("*Ibarra*"), N.D. Cal. Case No. 3:21-cv-00071-BLF (formerly C.D. Cal. Case No. 2:17-cv-04344-PA-AS). Detailed information about my qualifications and experience is included in this declaration starting at paragraph 46.  I have personal knowledge of the matters stated herein. If called as a witness, I could and would testify truthfully and competently thereto under oath.

3.      I submit this declaration in support of Class Counsel's Motion for Preliminary Approval of Proposed Class Action Settlement.

4.      Attached hereto as Exhibit 1 is a true and correct copy of the fully executed global settlement agreement in this action and the related *Ibarra* action.

**Background of the Litigation**

5.      I currently serve as co-class counsel with Joshua H. Haffner in *Kang* and *Ibarra*. Both cases involve the same mortgage loan officer positions and commission-based pay plan and both alleged a failure to compensate class members for rest breaks.

6.      I associated Joshua Haffner and Haffner Law, with whom I have an 18-year working relationship, to co-counsel the original *Ibarra* lawsuit and contribute expertise and manpower.  We filed the original *Ibarra* lawsuit on March 17, 2017.  We later filed the *Kang* action in this Court on October 27, 2017, and filed *Moses v. Wells Fargo Bank, N.A.*, N.D. Cal. Case No. 3:18-cv-06679 in this Court on November 2, 2018.  *Kang* and *Moses* were subsequently consolidated.

7.      Below, I describe the background of the *Ibarra* and *Kang* cases and the ultimate global settlement reached to resolve all claims asserted in the two cases.

### *Ibarra v. Wells Fargo*

8.      *Ibarra* was filed on March 17, 2017 in the Los Angeles Superior Court and was thereafter removed to the U.S. District Court for the Central District of California (Case No. 2:17-cv-04344-PA-AS).  (*Ibarra* Dkt. 1-1).  In *Ibarra*, Plaintiffs alleged a single claim of rest break violations under Labor Code §226.7 on behalf of a class of HMCs employed by Wells Fargo in California.  Plaintiffs alleged that under *Vaquero v. Stoneledge Furniture, LLC*, 9 Cal.App.5th 98 (2017), Wells Fargo's HMC commission-based compensation structure unlawfully failed to separately compensate class members for their non-working rest period time.

9.      On July 25, 2017, pursuant to the parties' stipulation, Judge Percy Anderson certified a class comprised of all HMCs employed by Wells Fargo in California at any time between March 13, 2013 and August 1, 2017.  (*Ibarra* Dkt. 18).

10.      Following discovery, the parties brought cross-motions for summary judgment based on stipulated facts.  On January 19, 2018, Judge Anderson granted Plaintiffs' motion for summary adjudication as to liability and denied Defendant's cross-motion for summary judgment, concluding that Wells Fargo was liable for providing legally noncompliant rest breaks in violation of California law.  (*Ibarra* Dkt. 35).

11.      The parties also conducted discovery regarding the damages calculations and retained damages experts.  Class Counsel worked extensively with our damages expert to develop damages calculations for the *Ibarra* class.  We then met and conferred extensively with Defendant's counsel and their damages expert regarding Defendant's damages calculations.  Ultimately, the parties were able to reach a stipulation regarding the amount of damages that would be owed to the *Ibarra* class depending on which side's legal theories prevailed.

12.      The district court determined the amount of damages owed to the class, based on the parties' stipulated facts and trial briefs.  The principal dispute regarding the measure of damages concerned the interpretation of the premium pay language in Labor Code §226.7, which defined that premium as "one hour of additional pay at the employee's regular rate of compensation.  At the time, no California appellate court had addressed how that statutory

provision should be construed, i.e., what components of an employee's pay should be included in calculating that employee's "regular rate of compensation." Plaintiffs contended that calculation of Section 226.7 premium pay must include all nondiscretionary remuneration to the employee (much as the term "regular rate of pay" is construed in wage-and-hour law, including California overtime law), while Wells Fargo contended that the premium pay calculation must be based solely on the $12-per-hour advances against commissions provided by Wells Fargo. (*Ibarra* Dkt. 50).

13.     The parties stipulated that the classwide damages would be $97,284,817.91 if Plaintiffs' interpretation of Section 226.7 were correct, and $24,472,114.36 if Defendant's interpretation were correct.  On May 8, 2018, Judge Anderson issued findings of fact and conclusions of law in which he ruled that Plaintiffs' calculation was correct.  Judge Anderson also rejected Wells Fargo's argument that 961 class members had not suffered any damages and should be excluded from any relief.  Judge Anderson then entered judgment in favor of the class in the amount of $97,284,817.91.  (*Ibarra* Dkt. 50).

14.     Wells Fargo appealed the judgment, arguing that it was not liable to the class at all, and that even if liability could be established, Judge Anderson should have accepted Wells Fargo's construction of Section 226.7 and, therefore, the lower stipulated amount. Plaintiffs retained experienced appellate counsel from Altshuler Berzon LLP, Michael Rubin and Eileen Goldsmith, to defend the trial court's judgment on appeal.

15.     Although Mr. Haffner and I, as Class Counsel, timely requested an award of attorneys' fees and expenses from the common fund created in *Ibarra*, we have not received payment of any fees and expenses from the *Ibarra* case.  Judge Anderson initially awarded fees after entering judgment in favor of the *Ibarra* class in May 2018, but we appealed that amount (on the ground that it failed to reflect the governing California law common-fund fee principles) and then agreed to stay all proceedings on that fees appeal pending the Ninth Circuit's resolution of the underlying merits in Wells Fargo's appeal from the *Ibarra* judgment.  After the Ninth Circuit's decision, which affirmed liability but remanded for the district court to revisit the amount of the class members' judgment once the California Supreme Court decided *Ferra v.*

*Loews Hollywood Hotel*, Cal. Sup. Ct. No. S259172, our fee appeal was administratively closed on June 3, 2020, without prejudice, as more fully described below.  To avoid unnecessary procedural complexity, the proposed global settlement of *Ibarra* and *Kang* provides for a single award of attorneys' fees and litigation expenses to Class Counsel for all work performed in both actions.

16.  *Ferra*, which like *Ibarra* and *Kang* involved a dispute over the proper construction of Labor Code §226.7(c) and what components of an employee's pay should be included in that employee's "regular rate of compensation," was filed in the California Court of Appeal in June 2017.  My co-counsel and I became aware of the pendency of *Ferra* during our Ninth Circuit briefing on the merits in *Ibarra*, and we recognized that the Ninth Circuit might defer to the construction of Section 226.7 adopted by the California Court of Appeal in determining how the state's highest court – i.e., the California Supreme Court – might construe that statute. As part of our effort to most effectively represent the *Ibarra* and *Kang* classes, we commissioned our appellate counsel from Altshuler Berzon to submit an amicus brief in *Ferra* in support of our construction, and plaintiff Ferra's construction, of Section 226.7(c), the critical statutory provision in our cases and in *Ferra,* which had never before been construed by any California appellate court.  One of our Altshuler Berzon attorneys participated in the oral argument before the Court of Appeal in *Ferra*.

17.  A few weeks before the Ninth Circuit oral argument in *Ibarra* on Wells Fargo's appeal, the Court of Appeal panel issued its decision in *Ferra v. Loews Hollywood Hotel*, 40 Cal.App.5th 1239 (2019).  The panel majority ruled in favor of Wells Fargo, holding that premium pay under Section 226.7 should be calculated based solely on an employee's base hourly rate of pay, not on all forms of nondiscretionary remuneration to the employee as we had urged.  *Ferra*, 40 Cal.App.5th at 1246-52.  In a powerful and comprehensive dissent, Justice Lee Smalley Edmon systematically refuted each of the majority's arguments and explained that the Legislature and Industrial Welfare Commission intended premium pay under Section 226.7 and its Wage Order counterpart to be calculated based on all forms of nondiscretionary remuneration to the employee, just as overtime pay premium is calculated under California law.  *Id.* at 1255-

68.  With our support and advice, the plaintiff in *Ferra* successfully sought review in the California Supreme Court.  *See* Cal. S.Ct. Case No. S259172.  Class Counsel and our appellate counsel from Altshuler Berzon filed an amicus brief in support of reversal and provided additional assistance to counsel for *Ferra* with respect to her Supreme Court petition and briefing.  *Ferra* is now fully briefed in the California Supreme Court and awaits the scheduling of oral argument.

18.     On April 15, 2020, the Ninth Circuit entered a memorandum decision remanding *Ibarra* to the district court.  The Ninth Circuit affirmed the district court's liability finding; instructed the district court to order a distribution to the class of $24,472,114.36, which was the amount the parties had stipulated would be owed if Wells Fargo's statutory interpretation were correct; and further instructed the district court to hold the case in abeyance pending the outcome of *Ferra* in the California Supreme Court – a ruling that could have either resolved the parties' dispute over the intended meaning of Section 226.7 as applied to *Ibarra* and *Kang* or could have required further litigation, given the factual differences between Wells Fargo's compensation scheme and the *Ferra* defendant's.

19.     In response to the Ninth Circuit's remand, Judge Anderson ordered Wells Fargo to pay the undisputed amount of $24,472,114.36 plus post-judgment interest to the class.  *Ibarra* Dkt. 90.  On July 30, 2020, Wells Fargo paid $25,696,122.35 ($24,472,114.36 plus post-judgment interest) toward satisfaction of the *Ibarra* judgment.  Of that payment, $10,000 was distributed to plaintiff Jacqueline Ibarra as a court-approved class representative service award, $30,000 was distributed for administration of payments to *Ibarra* class members, and $6,424,030.59 was held back in an account managed by the administrator pending class counsel's appeal of Judge Anderson's original attorneys' fees award.  (*Ibarra* Dkt. 90).  The remaining $19,232,091.76 was distributed to *Ibarra* class members on November 13, 2020.  The holdback amount will be distributed as part of the global settlement of *Ibarra* and *Kang*.

20.     All further district court proceedings in *Ibarra* were then stayed pending the resolution of *Ferra* in the California Supreme Court (*Ibarra* Dkt. 90), although that stay was

lifted in part to enable Judge Anderson to transfer *Ibarra* to this Court pursuant to the parties' post-settlement stipulation.

### *Kang v. Wells Fargo*

21.    The consolidated cases of *Kang* and *Moses* are follow-on cases to *Ibarra* that continue past the *Ibarra* cut-off date and thus include additional rest break class members and claims as well as other additional claims alleged on behalf of all HMCs, including the *Ibarra* class members.

22.    *Kang* was filed in this Court on October 27, 2017.  The original *Kang* complaint alleged that Wells Fargo's HMC pay structure gave rise to minimum wage and vacation pay violations, as well as a claim for waiting time penalties under Labor Code §203.  These claims were pleaded on behalf of a class of HMCs who had worked for Wells Fargo in California on or after October 23, 2013.  (*Kang* Dkt. 1).  The additional claims asserted in *Kang* arose from the same commission-based HMC pay structure that gave rise to the rest period claims in *Ibarra* and *Kang*.

23.    On February 27, 2019, *Kang* was consolidated in this Court with *Moses v. Wells Fargo*, N.D. Cal. Case No. 3:18-cv-00679.  *Moses* alleged a rest break claim on the same legal theory asserted in *Ibarra* on behalf of HMCs who had worked for Wells Fargo in California at any time between August 2, 2017 (the day after the *Ibarra* class period closed) and March 31, 2018 (the date that Wells Fargo discontinued its pay practice that was alleged to have violated California rest period law).  *Moses* also asserted a claim for PAGA penalties based on the underlying Labor Code violations alleged in *Moses* and *Kang*.

24.    On February 27, 2019, Plaintiffs filed a consolidated First Amended Class Action Complaint in *Kang*, encompassing all claims pleaded in *Kang* and *Moses*.  (*Kang* Dkt. 64).  On February 27, 2019, this Court granted Plaintiffs' motion to certify a class of HMCs who worked for Wells Fargo in California from October 23, 2013 through the date that class notice was mailed.  (*Kang* Dkt. 63 at 11).  The Court also certified a rest period subclass consisting of HMCs who worked at any time between August 2, 2017 and March 31, 2018.  (*Kang* Dkt. 63 at

11).  Notice of the *Kang* action was distributed to the class on April 15, 2019, and the opt-out period has closed.  (*Kang* Dkt. 76).

25.    This Court stayed this case pending the Ninth Circuit's ruling in *Ibarra*.  (*Kang* Dkt. 77).  On July 23, 2020, after the parties notified this Court regarding the Ninth Circuit's decision in *Ibarra*, the Court stayed Kang again through October 31, 2020, pending a planned global mediation of *Ibarra* and *Kang*.  (*Kang* Dkt. 85).

**Global Mediation and Settlement to Resolve *Ibarra* and *Kang***

26.    On March 21, 2018, following Judge Anderson's Orders on class certification and the cross-motions for Summary Adjudication/Judgment, the parties mediated the *Ibarra* case with the assistance of an experienced mediator, David Rotman.  That mediation was unsuccessful.

27.    Following the Ninth Circuit's remand order on April 15, 2020, the parties agreed to a second mediation.   On October 21, 2020, following a day-long mediation with Mr. Rotman's assistance, the parties reached a global settlement of all of the closely related claims in *Ibarra* and *Kang*.

28.    Following the mediation, the parties engaged in continued arms-length negotiations for three months to complete a long-form settlement agreement.

29.    Rather than attempting to sever the *Ibarra* and *Kang* claims and seek settlement approval before two separate courts, the parties agreed in the Settlement to seek preliminary and final approval before a single court in order to minimize class member confusion and limit the expenditure of the courts' and parties' time and resources on settlement approval.

30.    After the parties notified Judge Anderson of their intention to seek global settlement approval in the *Kang* Court, Judge Anderson ordered the parties to show cause why *Ibarra* should not be transferred in its entirety to the Northern District of California.  (*Ibarra* Dkt. 93).  The parties then filed a stipulation to transfer *Ibarra* to the Northern District of California, and on December 15, 2020, Judge Anderson transferred *Ibarra* pursuant to the stipulation.  (*Ibarra* Dkt. 94, 96).

31.     After *Ibarra* was transferred to this District, this Court granted plaintiffs' unopposed motion to relate *Ibarra* to *Kang*.  (*Kang* Dkt. 92).

**Settlement Approval Considerations**

32.     The overall settlement class encompasses all HMCs who worked for Wells Fargo in California at any time from March 17, 2013 through December 31, 2019, subject to narrow exclusions.

33.     The Settlement Class includes two subclasses.  The Rest Period Subclass includes all HMCs who worked for Wells Fargo in California between March 17, 2013 and March 31, 2018, when Wells Fargo changed the pay practice that was the basis of the rest break claims in *Ibarra* and *Kang*.  The Non-Rest Period Subclass includes all HMCs who worked for Wells Fargo in California from October 27, 2013 through December 31, 2019, when Wells Fargo changed its HMC compensation structure from the structure challenged in *Kang*.

34.     The certified class in *Ibarra* had 4,481 members.  The certified class in *Kang* includes approximately 3,123 members.  The *Kang* class membership overlaps with the *Ibarra* class membership.  The total number of unique individuals in the two classes is 4,533.

35.     The proposed Settlement Class slightly expands the certified classes in *Ibarra* and *Kang*.  First, the proposed Settlement Class includes all pay periods worked for class members through December 31, 2019.

36.     Second, the proposed Settlement Class adds 844 HMCs who worked for Wells Fargo during the certified *Ibarra* and *Kang* class periods who were previously excluded from the certified classes because they had signed individual arbitration agreements in connection with their employment, resulting in a total of 5,377 Settlement Class members.  For purposes of mediation, Class Counsel analyzed damages data for all of the approximately 5,377 individuals included in the proposed Settlement Class, not just those individuals in the previously certified classes in *Ibarra* and *Kang*.  The additional HMCs worked for Wells Fargo pursuant to the same pay structure that was challenged in *Ibarra* and *Kang*, and assert only the claims that were previously certified in *Ibarra* and *Kang* respectively.

37.    The settlement provides an aggregate gross settlement fund of $95,696,122.35 to resolve all claims alleged in *Ibarra* and *Kang*.  The aggregate fund includes the $25,696,122.35 that has already been paid to the class in *Ibarra* plus an additional $70 million in new funding from Wells Fargo.  The net settlement fund available for individual class member payments (after the deduction of the full requested amounts of attorneys' fees and expenses, class representative service awards, and settlement administration costs are approved by the Court) is estimated at $62,876,415.30.

38.    Because Plaintiffs' rest period claim is particularly strong, that claim drove the settlement negotiations and the plan of allocation.  In recognition of Plaintiffs' relative likelihood of success on the rest period and non-rest period claims, the net settlement fund is allocated 90% to the rest period claim in *Ibarra* and *Kang* and 10% to all other claims alleged in *Kang*.

39.    Plaintiffs calculated the minimum value of the rest period claim with respect to all Rest Period Subclass Members to be $28,496,442.35 (a recovery of $12 per class member per workday if the calculation if Wells Fargo's interpretation of Labor Code §226.7 ultimately prevails in the California Supreme Court in *Ferra*), and the maximum value to be $109,360,535.40 (a recovery of $52 per class member per workday if Plaintiffs' interpretation of Labor Code §226.7 ultimately prevails).

40.    Plaintiffs estimated the non-rest period claims at a maximum value of $94 million, but the likelihood of success on those claims was much less certain than on the rest period claims.

41.    The overall settlement fund of approximately $95.6 million represents 47% of the maximum exposure faced by Wells Fargo on the claims alleged in *Ibarra* and *Kang*.  The average settlement share per class member, calculated from the gross settlement fund, is $14,368.78.  The net fund, after deductions for attorneys' fees and expenses, the PAGA payment to the LWDA, and other deductions discussed above, will provide substantial individual recoveries to the class members. The average individual recovery from the *net* settlement fund is $11,693.59.  The vast majority of Settlement Class Members will receive a share of the Rest Period Allocation, and most will receive a share of both Allocations.

42.    The settlement allocates $750,000 to PAGA penalties, of which $562,500 will be paid to the Labor & Workforce Development Agency pursuant to Labor Code §2699(i).  Plaintiffs

estimated the value of the PAGA claims asserted in *Kang* at approximately $13 million.  Plaintiffs originally sought to recover unpaid wages as well as civil penalties through the PAGA claim, pursuant to Labor Code §558.  However, in 2019, the California Supreme Court held in *Z.B., N.A. v. Superior Court*, 8 Cal.5th 175 (2019), that unpaid wages may not be recovered through a PAGA penalties claim, thereby diminishing the value of the PAGA claims.

### Additional Non-Monetary Benefits To Class Members

43.     Class Counsel also achieved substantial non-monetary relief for Wells Fargo's HMCs as a result of litigating these cases.  Effective April 1, 2018, Wells Fargo changed the HMCs' compensation structure to separately pay HMCs for their rest break time (at a fixed rate of $12 per hour). This change addresses and stops the rest period practice challenged as unlawful in these cases, and affects all current and future Wells Fargo HMCs.  When extrapolated into the future, this additional relief will eventually equal, and then exceed, the value of the settlement fund.  With such consideration, the estimated additional value would increase the total benefits to HMCs substantially, by roughly 100% every four-year period.  Based thereon, and taking into account the interest on appeal, Class counsel's fee request, although 33% of the common fund, is essentially just 16.5%, or less than the total benefits created.  In addition, Wells Fargo changed the HMC pay structure effective January 1, 2020 so that the HMCs' $12-per-hour advances against future commissions would no longer be treated as advances.  This policy change protects current and future Wells Fargo HMCs from the pay practice that Class Counsel challenged in *Kang* as a violation of California minimum wage law.

### The Results Obtained And Comparison To Results in Similar Cases

44.     My firm and Haffner Law PC have served as class counsel in two other cases in addition to *Kang*, *Moses* and *Ibarra* representing similar classes of mortgage officers on similar rest break and related claims.  The data for those cases and this matter is set forth below.

| | *Boswell/Fernandez v. Bank of America*, Case No. 2:17-cv-06120-GW-RAO; and *Flanagan v. Bank of America*, Case No. 613647/2018 (Supreme Court of New York, County of Suffolk) (final global settlement approval granted 11/20/19) | *James Loud v. U.S. Bank N.A.*, C.D. Cal. Case No. 8:18-CV-01235-DOC-DFM *consolidated with Johnson v. U.S. Bank*, S.D. Cal. Case No. 3:19-cv-0286-JLS-LL (final settlement approval granted 8/20/2020) | *Kang/Ibarra v. Wells Fargo Bank, N.A.* |
|---|---|---|---|
| Gross Settlement Fund | $23,500,000.00 | $6,500,000.00 | $95,626,122.35 |
| Number of class members | 3,328 | 841 | 5,377 |
| Total number of notices sent | 3,328 | 841 | 5,377 (proposed) |
| Claims rate | n/a | n/a | n/a |
| Average recovery per class member (based on gross settlement fund) | $7,061.29 | $7,728.89 | $14,368.78 |
| Amount distributed to cy pres | n/a | n/a | n/a |
| Administrative costs | (Rust Consulting) $40,000 | (CPT Group) $14,500 | $50,000 (estimated) |
| Attorneys' fees | (33% of the common fund) $7,793,333.33 | (33% of the common fund) $2,145,000 | $31,898,707.00 (one-third of common fund; requested) |
| Litigation expenses | $83,851.74 | $12,118 | Actual costs incurred up to $100,000.00, not including appellate counsel (requested) |

45.     According to the report *Trends in Wage and Hour Settlements*: 2015 Update, by NERO Economic Consulting, a comprehensive study analyzing 613 wage and hour settlements from January 2007 through March 2015 shows that average individual settlement value per wage and hour class action has been declining since 2011 (from $1,475.00 in 2011 to $686.00 in 2014 and just $253.00 through 2015).  A true and correct copy of the report is attached hereto as Exhibit 2.

**Co-Class Counsel Paul D. Stevens, Esq. Background And Experience**

46.     For many years, I have been responsible for all facets of class action and other complex litigation, from pre-filing investigation through trial and appeal.

47.     For 17 years, I was employed at three complex civil litigation law firms – Girardi & Keese, Quisenberry & Kabateck and Milstein Adleman, LLP – where I specialized in litigating class action and individual matters under consumer protection statues and employment statutes.   I have served on the Board of Governors for the Consumer Attorneys of California and served as a panel member for the Los Angeles County Complex Court Symposium.

48.     From 2002 to 2015, I was an attorney and partner at Milstein Adelman, where I served as a Senior Partner for nine years, was a founding member and Supervising Partner of the firm's Consumer Class Action Litigation Group and founded and headed the firm's Mass Tort Litigation Group.

49.     In 2015, I left Milstein Adelman to start my own office, which became Stevens LC. Stevens LC is now a boutique complex civil litigation law firm located in Los Angeles, California. The concentration of my practice is and has been complex civil litigation and consumer and public protection.

50.     Prior to becoming an attorney, I was a Public Affairs Consultant at Cerrell Associates, Inc., where I worked in the areas of government affairs, public relations, transportation and infrastructure planning, political campaigns (local, national, and judicial) and media relations.  My work included direct advocacy activities with members of the United States Congress, California Legislature and various transportation, environmental and local government bodies.

51.     I attended Southwestern University School of Law's SCALE program, the only ABA approved two-year accelerated Juris Doctorate program in the nation, and served as a law clerk at the United States District Court, Central District of California, for the Honorable Rupert J. Groh, Jr.

52.     I have extensive experience handling class actions.  During my legal career, I have successfully prosecuted over 100 class actions and have been appointed lead class counsel in many contested state and federal class actions.

53.     In addition to my role as co-Class Counsel in *Ibarra* and *Kang*, I was also co-lead class counsel in another virtually identical action involving mortgage loan officers and a commission-based pay plan.  The consolidated proceedings in *Boswell v. Bank of America and Fernandez v. Bank of America*, C.D. Cal. Case Nos. 2:17-cv-06120-GW-RAO and 2:17-cv-06104-MWF-JC, asserted claims against Bank of America under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., and similar state laws based on *inter alia*, alleged misclassification as exempt employees and alleged failure to pay rest breaks, vacation time, minimum wages and ancillary claims predicated on the same.  Those proceedings were later consolidated with *Flanagan, et al. v. Bank of America*, Case No. 613647/2018 (Supreme Court of New York, County of Suffolk).  *Fernandez* involved a successful Fed. R. Civ. P. 23(f) petition to the Ninth Circuit and resulted in a $23.5 million global common fund class settlement which was completed in December 2019.

54.     On August 17, 2017, I and my co-counsel Haffner Law instituted a similar matter as here entitled *James Loud v. U.S. Bank National Association*, C.D. Cal. Case No. 8:18-CV-01235-DOC-DFM. My co-counsel and I litigated the *Loud* matter for approximately two years prior to reaching a class and collective action common fund settlement of $6.5 million.

55.     Other representative and class actions where I have acted as class counsel include the following:

NOTABLE PUBLIC ACTIONS

   a.   <u>Leavit, et. al. v. Ventura County Community College District Board</u>. Represented Ventura County residents in taxpayer lawsuit seeking and accomplishing removal of several elected officials for misappropriation of public funds and violation of the Ralph M. Brown "Open Meeting" Act.

NOTABLE MULTIPARTY ACTIONS

   b.   <u>In Re Hemet Reservoir</u>. Recovered more than $5 million on behalf of a group of individual homeowners against 23 insurance companies for damages suffered to their homes arising out of a negligent public construction project.

NOTABLE CLASS ACTIONS

c. (Co-lead class counsel) <u>Klotzer, et al. vs. International Windows</u>, (Solano County Superior Court Case No. FCS 021196). Defective residential windows. Estimated $600 million benefit to class.

d. (Co-lead class counsel) <u>Deist, et. al. vs. Viking Industries</u>, (San Joaquin Sup. Crt, Case No. CV 025771). Defective residential windows. Estimated $210 million benefit to class.

e. (Co-lead class counsel) <u>Grair vs. Johnson v. GlaxoSmithKline, Inc.</u>, 166 Cal. App. 4th 1497 (2009), (Los Angeles County Superior Court, Case No. BC288536).  False and deceptive advertising of anti-depressant Paxil (concealment of severe effects of discontinuation).  $9.5 million total benefit made available to the class, $1 million benefit to charity.

f. (Co-lead class counsel) <u>Oliver, et al. vs. Atmos Corporation</u> (San Joaquin Superior Court, Case No. CV 0119362). Defective residential windows. $9.3 million benefit made available to the class.

g. (Co-lead class counsel) <u>Penas vs. Zell, et al</u>. (Los Angeles County Superior Court, Judge Mel Red Recana). Wage & hour class action on behalf of hundreds of employees for lost benefits. Recovered 100% of lost benefits.

56.     I have also briefed and argued precedent setting class action issues in the California Court of Appeal and United States Supreme Court.  These include:

h. <u>Johnson v. GlaxoSmithKline, Inc.</u>, 166 Cal. App. 4th 1497 (2009).  The second published decision to distinguish <u>Alvarez v. May Dept. Stores Co</u>. (2006) 143 Cal.App.4th 1223.  Reversed trial court, confirmed established principles of privity and collateral estoppel necessary to bar class certification issues.

i. <u>Imburgia v. DirecTV, Inc</u>, 225 Cal.App.4th 338 (Apr. 7, 2014). Lead litigation and appellate counsel. Decision allowed plaintiffs to proceed as a class in California state court rather than compel them to individual arbitration

immediately following <u>AT&T v. Concepcion</u>, 563 U.S. 33 (2011).  In affirming the lower court's decision, convinced the California Court of Appeal to reject the Ninth Circuit's decision in *Murphy v. DIRECTV*, Inc. on the same issue.

j.  <u>DirecTV, Inc., v. Imburgia,</u> 136 S. Ct. 463 (Decided December 14, 2015).

k.  <u>Imburgia v. DirecTV, Inc.,</u> 225 Cal.App.4th 338 (Decided May 4, 2016). Lead appellate counsel. Obtained decision in favor of Plaintiffs on Supplemental Briefing following SCOTUS decision.  Court of Appeal ordered the case back to Superior Court to determine whether Defendant waived its right to enforce its arbitration agreement on basis issue not previously considered or determined.

l.  <u>Long v. Provide Commerce, Inc.</u>, 245 Cal. App. 4th 855 (2016).  Lead litigation and appellate counsel.  Obtained favorable decision regarding internet arbitration clause. Decision allowed plaintiffs to proceed as a class in California state court rather than compel them to individual arbitration.

**<u>Fees Are Contingent</u>**

57.  Due to the focus of my practice, Stevens LC represents its clients and prosecutes cases exclusively on a contingent basis.   My office and co-class counsel represented the Plaintiffs and the Classes in these cases, and conducted our work in this litigation, on a pure contingent fee basis.

58.  In individual cases, my office's standard contingent fee rate is 40 percent. Occasionally, I represent a client for a reduced rate of 35 percent.  The rate applies notwithstanding what stage the case resolves.

59.  The retainer agreements in *Ibarra* and *Kang* also provided the law firms of Haffner Law PC and Stevens LC will share the attorneys' fees as follows:  Haffner Law PC - 50%; and Stevens LC - 50%.  Pursuant to the provisions of Rule 2-200 of the Rules of Professional Conduct of the State Bar of California, the retainer agreement further provided that the clients, Jacqueline Ibarra, James Kang, and Michael Moses, consented to fee-sharing as set forth in the retainer.

**<u>Time Spent And Results</u>**

60. From the outset, Class Counsel prosecuted these cases with a precise and efficient result-oriented focus, in a manner that lessened the burdens on the parties and the court, where possible.

61. Class Counsel's work in these cases included:

a. Investigated and prepared the complaint in *Ibarra*, and extensively worked through and resolved challenges to the pleadings.

b. Navigated arbitration agreements and class action waivers that applied to one of the initial class representatives to allow *Ibarra* to proceed.

c. Conducted discovery of all information pertaining to class certification and liability in *Ibarra*, including but not limited to, substantial document production of all relevant employment policies and compensation pay plans, and the depositions of Wells Fargo's most qualified witnesses and the class representatives.

d. Worked to confirm all critical facts to establish appropriateness of class certification in *Ibarra*, including but not limited to, the common essential terms in the various compensation plans over the class period, and the common and essential terms in how the compensation plans were applied.

e. Negotiated and streamlined the process for class certification in *Ibarra* by reaching a stipulation with Defendant to dismiss certain claims and certify the claim for rest-period violations under California Labor Code section 226.7 and a derivative claim under California's Unfair Competition Law.

f. Diligently and efficiently confirmed all critical facts in support of liability in *Ibarra*.

g. Negotiated streamlined process for summary judgment cross-motions in *Ibarra*, including a fact stipulation that proved dispositive to liability.

h. Successfully obtained classwide summary judgment on liability in *Ibarra*, and successfully opposed Wells Fargo's cross-motion for classwide summary judgment.

i.  Retained Torrey Partners, an exceptional economic, forensic accounting and valuation expert, and determined, through extensive focused expert work, appropriate potential damages amounts for the *Ibarra* class.

j.  Evaluated all compensation and payroll data for each of the *Ibarra* class members to determine individual damages calculations for each of the parties competing damages theories and as to each class member.

k.  Fully prepared for and proceed through trial on damages in *Ibarra*, in which plaintiffs prevailed on the entirety of their damages calculation resulting in a classwide damages award approximately four times greater than the amount argued for by Defendant.

l.  Recognizing that the main issue of damages calculation in *Ibarra* was the statutory interpretation of Labor Code §226.7's premium pay language, which had not yet been construed by a California appellate court, retained exceptional appellate counsel, Altshuler Berzon LLP, to assist in the *Ibarra* appeals in the Ninth Circuit and the appeals in the related *Ferra v. Loews Hollywood Hotel* case in the California Court of Appeal and the California Supreme Court.

m.  Investigated and prepared the complaints in *Kang* and *Moses*, and exhausted the PAGA claim in *Moses* through the Labor & Workforce Development Agency.

n.  Prevailed on a contested motion for class certification in *Kang*.

o.  Participated in extensive and ongoing discussions with Defendant's counsel regarding the status and progress of these actions which helped motivate Defendant's position with respect to assessing potential liability and settlement.

p.  Participated in extensive discussions with Defendant's counsel regarding a pre-trial resolution and settlement of these actions.

q.  Prepared for and participated in two mediations with experienced mediator David Rotman that ultimately produced a global resolution of the *Kang* and *Ibarra* cases.

r.  Assisted with all aspects of negotiating the long-form settlement and securing court approval of the global settlement.

s.   Personally communicated with more than 100 class members throughout these matters.

62.     My co-counsel and I also participated in other substantial related litigation and appellate matters that directly pertained to these issues in these cases, including *Boswell and Fernandez v. Bank of America,* C.D. Cal. Case Nos. 2:17-cv-06120-GW-RAO and 2:17-cv-06104-MWF-JC; and *Johnson v. U.S. Bank, N.A.*, S.D. Cal. Case No. 3:19-cv-0286-JLS-LL.  Our efforts prosecuting and settling these cases involving very similar issues helped to position *Ibarra* and *Kang* for settlement.

**Lodestar Fees and Expenses**

63.     I have significant experience prosecuting large-scale wage and hour class and collective actions such as this.  *See supra* at ¶¶ 46-56.  My office has spent approximately 1852.95 attorney and paralegal hours investigating, litigating, and settling this matter as of January 31, 2021.  Below is a chart summarizing the specific attorney and paralegal time of my office, their hourly rates, and their total time worked on the *Kang* and *Ibarra* matters as of January 31, 2021:

| Name | Experience | Hours | Rate | Total Fee |
|---|---|---|---|---|
| Paul Stevens | 21 year Attorney | 1809.75 | $950 | $1,719,262.50 |
| Andrew Kubik | 12 year Attorney | 25.2 | $550 | $13,860.00 |
| Praveeta Garcia | 13 year Certified Paralegal | 18 | $175 | $3,150.00 |
| **Total** | | 1,852.95 | - | $1,736,272.50 |

64.     The hours reported are reasonable for a case of the complexity and size of the *Ibarra* and *Kang* cases.

65.     The hours expended were reasonable given the demands of these cases.

66.     The time recorded does not include countless discussions with my co-counsel which occurred often on a daily basis.

67.     My hourly rate of $950 was approved by the Court in the similar matter of *Johnson v. U.S. Bank, N.A.*, S.D. Cal. Case No. 3:19-cv-0286-JLS-LL (Docket Nos. 40 and 37 Exhibit 4).

68.     In addition, and as discussed above, my co-counsel Haffner and I participated in substantial litigation in three other related matters in the California Court of Appeal and California Supreme Court (*Boswell/Fernandez*, *Johnson*, and *Loud*), as well as retaining appellate counsel from Altshuler Berzon to handle the Ninth Circuit appeals in *Ibarra* and amicus curiae efforts in *Ferra*. Our efforts in *Boswell/Fernandez*, *Johnson*, and *Loud* directly pertained to establishing Wells Fargo's liability in this matter and motivated Defendant's position with respect to liability, class certification and settlement.  To date, we have incurred more than $200,000.00 in appellate costs and hundreds of hours of attorney time which we have not to date been reimbursed or compensated.

69.     In addition to the time recorded to date, I also expect to devote additional time in connection with settlement approval and with implementing and supervising the settlement.

70.     Plaintiffs intend to seek an award of attorneys' fees equivalent to one-third of the Gross Fund Value ($31,898,707.00) – although as noted above, the Gross Fund Value does *not* include the substantial economic value to the class of Wells Fargo's decision, in the midst of this litigation, to discontinue the pay practices we had challenged.  The proposed Class Notice informs Class Members of this proposed fee award.  Settlement Exh. A at ¶ 8.  As discussed above in paragraph 15,  Class Counsel has not received any amount of attorneys' fees and litigation expenses in these cases to date.  The proposed Settlement Agreement provides for a common fund award of attorneys' fees and litigation expenses from the global settlement fund in *Ibarra* and *Kang*.

71.     As of January 31, 2021, Plaintiffs' counsel had incurred nearly 4,000 hours for all work performed in *Ibarra* and *Kang*, resulting in an overall lodestar of $3,583,636.00.  This includes a lodestar of 376.5 hours of work performed by Altshuler Berzon LLP, whom Class Counsel retained for appellate work in *Ibarra*, and who have since continued to participate in the global settlement process in *Ibarra* and Kang.  Altshuler Berzon's lodestar, which is set forth in the Declaration of Michael Rubin, also includes another 168 hours for appellate work performed in the related case of *Ferra*, which directly pertained to establishing the recovery available in these cases, and was therefore essential to protecting the interests of the classes in *Ibarra* and *Kang* and to positioning *Ibarra* and *Kang* for global settlement.  While Class Counsel paid Altshuler Berzon for their work in

these cases, we are treating their time as part of the overall lodestar rather than as a separate litigation expense.

72.     As will be set forth in greater detail in Plaintiffs' Motion for Attorneys' Fees and Expenses, to be filed 14 days before the response deadline in the settlement, Plaintiffs' Counsel's overall lodestar as of January 31, 2021 was as follows.  The requested common fund fee represents an 8.9 multiplier on this current lodestar:

| | *Ibarra/Kang/Moses* | | *Ferra v. Loews Hollywood Hotel* | |
|---|---|---|---|---|
| **Firm** | **Hours** | **Lodestar** | **Hours** | **Lodestar** |
| Haffner Law PC | 1,569.5 | $1,338,930.00 | | |
| Stevens, L.C. | 1,852.95 | $1,736,272.50 | | |
| Altshuler Berzon LLP | 376.5 | $349,323.50 | 168 | $159,110.50 |
| **Totals** | **3,798.95** | **$3,424,526.00** | **168** | **$159,110.50** |
| | | | | |
| **Total Hours/Lodestar** (including *Ferra*) | **3,966.95** | **$3,583,636.00** | | |

**Litigation Expenses**

73.     My firm and Haffner Law have a co-counsel agreement whereby we have agreed to share costs advanced for this litigation 50/50.   Some of those costs include the following:

74.     Together, my firm and co-class counsel have incurred expenses totaling $95,743.46 in litigating these actions.  Of this total amount, my firm has incurred $49,464.79 in expenses through the date of filing this motion.  The principal expenses include the costs of our expert consultant for damages in *Ibarra*, Plaintiffs' share of the mediator's fees, and the distribution of class notices in *Ibarra* and *Kang*.  These costs do not include more than $200,000 advanced for appellate counsel.

75.     These expenses were necessary to advance the claims in this case.  The costs for which Class Counsel will seek reimbursement include the costs of an expert consultant to assist in analyzing the damages data in *Ibarra*.  That work enabled us to secure a $97 million judgment in *Ibarra* by means of a trial conducted entirely on the papers.  Other costs for which class counsel seek reimbursement include travel to depositions and mediation, copying and retrieval of necessary records.

**The Litigation Precluded Other Employment.**

76.     As stated, Stevens, LC is a boutique law firm, with three (3) attorneys and three (3) support staff.  At various times, this matter consumed a great majority of my time and was constant from the moment of filing.  This was particularly true as this class matter went from filing to Judgment in approximately 14 months, during which time the parties engaged in five months of work related to class certification, briefing the cross motions for summary judgement, which was followed by similar work on the damages and then preparation for and submission for trial.  All told, it was a constant flow dealing with the larger projects of discovery and confirmation of the critical evidence, class certification, briefing of cross motions for summary judgment, investigation and calculation of damages, and preparation and submission of all evidence and cross briefings for classwide damages, and will continue to be through the settlement approval process.

**The Class Representatives' Assistance In This Matter**

77.     Each named Plaintiff actively assisted counsel in this action, including by participating in conferences with counsel, assisting in the preparation of discovery responses, encouraging current and former co-workers to speak with counsel, providing declarations, sitting for deposition, and preparing for trial.

78.     Ms. Ibarra, Mr. Kang and Mr. Moses were also instrumental in the results achieved.  For example, they provided critical assistance in identifying important documents for litigating these cases in a discovery process that was otherwise painstaking and tedious.  One such document was a monthly report titled "Wells Fargo Bank, N.A. Distributed Retail Commission Report" ("DRCR").  Wells Fargo did not produce these reports despite initial disclosure obligations and discovery directed at such information and documents.  These monthly reports, however, provided critical proof of how Wells Fargo deducted the advance from the commissions, which Wells Fargo denied had ever happened.  However, with named Plaintiffs' assistance, these documents were located and explained and brought to light.  Each ultimately located and produced more than 211 pages of critical documents including emails from supervisors, texts from supervisors, W-2 wage statements, Wells Fargo FastMail, and the critical Distributed Retail Commission Reports.

79.     Each of the named plaintiffs risked significant reputational damage by initiating this action.  I have spoken to several class members, who applauded each of the named plaintiffs for bringing these actions, and stated they would not have done so themselves.

80.     The proposed global settlement provides for $10,000 class representative service payments for Mr. Kang and Mr. Moses in addition to their individual settlement shares.  Detailed declarations supporting the requested service payments for Mr. Kang and Mr. Moses will be submitted with plaintiffs' motion for final approval of the settlement.  Judge Anderson approved a $10,000 class representative service payment to Ms. Ibarra in the *Ibarra* case, and she received that amount in November 2020.  Therefore, the proposed global settlement does not provide for any additional service payment for Ms. Ibarra.  However, her service payment is counted toward the gross settlement value.

**Class Counsel's History of Engagements with the Proposed Settlement Administrator.**

81.     The Settlement Agreement appoints Rust Consulting to serve as the settlement administrator.  Rust Consulting was also the settlement administrator in *Boswell/Fernandez v. Bank of America*, Case No. 2:17-cv-06120-GW-RAO; and *Flanagan v. Bank of America*, Case No. 613647/2018 (Supreme Court of New York, County of Suffolk) (final global settlement approval granted 11/20/19).  Rust has provided an estimate of $50,000 to perform the duties required by the Settlement.  Class Notice will be distributed by first class mail to the last known addresses of class members, with skip tracing to locate class members whose notices are returned as undeliverable.  Claim forms will not be required; all class members who do not timely and validly request exclusion from the settlement will be mailed a settlement payment (assuming that the class member's settlement share exceeds any amount already distributed to the class member in *Ibarra*).

//

//

//

//

//

82.     Attached as Exhibit 3 is a true and correct copy of the order granting final settlement approval in *Gutierrez v. Stericycle*, C.D. Cal. Case No. CV15-08187-JAK, Dkt. 76 (Mar. 22, 2019).

I declare, under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.  Executed this 26th day of February 2021, in Los Angeles, California.

By: Paul D. Stevens
Attorneys for Plaintiff and the Plaintiff Class

EXHIBIT 1

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
THOMAS R.  KAUFMAN, Cal.  Bar No. 177936
tkaufman@sheppardmullin.com
PAUL BERKOWITZ, Cal.  Bar No. 251077
pberkowitz@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone: 310.228.3700/Facsimile: 310.228.3701

Attorneys for Defendant
WELLS FARGO BANK, N.A.

HAFFNER LAW PC
Joshua H. Haffner, SBN 188652
jhh@haffnerlawyers.com
Graham G. Lambert, SBN 303056
gl@haffnerlawyers.com
445 South Figueroa St., Suite 2625
Los Angeles, California 90071
Telephone: (213) 514-5681
Facsimile: (213) 514-5682

STEVENS, LC
Paul D. Stevens, SBN: 207107
pstevens@stevenslc.com
1855 Industrial Street, Suite 518
Los Angeles, California 90021
Telephone: (213) 270-1211
Facsimile: (213) 270-1223

Attorneys for Plaintiffs
JAMES C. KANG, MICHAEL MOSES
AND THE CERTIFIED CLASS

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES C. KANG, an individual, on behalf of himself and all others similarly situated,<br><br>            Plaintiff,<br><br>        v.<br><br>WELLS FARGO BANK, N.A. and DOES 1 through 10, inclusive,<br><br>            Defendant. | Case No. 5:17-cv-06220-BLF<br><br>Assigned to Hon. Beth Labson Freeman<br><br>**STIPULATION OF CLASS SETTLEMENT AND RELEASE**<br><br>Complaint Filed: October 27, 2017 |

This Stipulation of Class Settlement and Release ("Stipulation of Settlement" or "Settlement Agreement") is entered into by and among (1) Plaintiffs James Kang and Michael Moses, on their own behalf and as representatives of the certified class in *Kang v. Wells Fargo Bank, N.A.*, USDC N.D. Cal. Case No. 5:17-cv-06220-BLF ("*Kang* Plaintiffs"), (2) Plaintiff Jacqueline Ibarra, on her own behalf and as representative of the certified class in *Ibarra v. Wells Fargo Bank, N.A.*, USDC C.D. Cal. Case No. 2:17-cv-04344-PA-AS ("*Ibarra* Plaintiff," and collectively, "Plaintiffs" or "Class Representatives") on the one hand, and (3) Defendant Wells Fargo Bank, N.A. ("Wells Fargo") on the other, and is subject to the terms and conditions herein and the approval of the Court.  Plaintiffs and Wells Fargo are referenced collectively herein as "the Parties."

## I.   BACKGROUND AND RECITALS

1.     The *Kang* Plaintiffs and the *Ibarra* Plaintiff are the designated Class Representatives in two related class actions, *Ibarra v. Wells Fargo Bank, N.A.*, USDC C.D. Cal. Case No. 2:17-cv-04344-PA-AS ("*Ibarra*"), and *Kang v. Wells Fargo Bank, N.A.*, USDC N.D. Cal. Case No. 5:17-cv-06220-BLF ("*Kang*").  The *Ibarra* and *Kang* class actions, which were brought on behalf of largely overlapping classes of Wells Fargo's California-based Home Mortgage Consultants and Private Mortgage Bankers (collectively "HMCs"), challenge the legality of certain aspects of Wells Fargo's compensation plan for those HMCs.

2.     The *Ibarra* action asserts a single certified class action claim against Wells Fargo alleging that Wells Fargo failed to provide legally compliant paid rest periods in violation of California Labor Code §226.7 from March 17, 2013 to August 1, 2017.

3.     The *Kang* action (which incorporates *Moses v. Wells Fargo Bank, N.A.*, USDC N.D. Cal. Case No. 3:18-cv-06679, with which it was previously consolidated) asserts the same certified class action rest period claim, but from August 2, 2017 to April 1, 2018.  The consolidated *Kang* class action also asserts

certified claims that Wells Fargo failed to pay minimum wages and vacation pay, and derivative claims, all for the period from October 27, 2013 through April 15, 2019, as well as a representative PAGA claim for civil penalties on behalf of the California Labor Workforce and Development Agency ("LWDA") and all aggrieved Wells Fargo HMC employees, encompassing the period from August 2, 2017 to December 31, 2019.

4.      The *Kang* Plaintiffs and class members and the *Ibarra* Plaintiff and class members are represented by the same two law firms, Haffner Law PC and Stevens, LC, both of which were designated as Class Counsel by the courts in *Kang* and *Ibarra*.

5.      Judgment in the amount of $97,284,817.91 was entered in favor of Plaintiff Ibarra and the certified class in *Ibarra* on May 8, 2018 by the Hon. Percy Anderson of the Central District of California.  On a subsequent appeal by Wells Fargo, the Ninth Circuit affirmed as to liability, but left open the question of whether the final amount of the judgment should be $24,472,114.36 or $97,284,817.91 (exclusive of interest).  The Ninth Circuit subsequently instructed the district court in *Ibarra* to order Wells Fargo to pay the lower amount, to order those funds to be promptly distributed to the *Ibarra* class (subject to a holdback for potential attorneys' fee of $6,424,030.59), and to defer further rulings in the case pending the outcome of *Ferra v. Loews Hollywood Hotel, Cal., LLC*, Cal. Supreme Ct. Case No. S259172 (*"Ferra"*), which is expected to determine the legally required methodology for calculating premium pay under Labor Code §226.7 for violations of California rest break law.

6.      In July 2020, Wells Fargo paid the required sum of $24,472,114.36 plus post-judgment interest, for a total of $25,696,122.35. Of that amount, 25% ($6,424,030.59) was held back to cover potential attorney's fees ("*Ibarra* Holdback"); $10,000 was paid to Plaintiff Ibarra as a service payment previously approved by Judge Anderson, and $30,000 was held back to pay the estimated

administrative costs associated with an initial distribution to the *Ibarra* class members.  The remaining $19,232,091.76 ($25,696,122.35 minus the *Ibarra* Holdback and the deductions just described) was distributed to the *Ibarra* class members in November 2020. Depending on the outcome of *Ferra* in the California Supreme Court and its impact on the remaining disputed issues in *Ibarra*, Wells Fargo (but for this settlement, if approved) could be ordered to pay an additional $72,812,703.55 plus interest to the *Ibarra* class or could be held not to owe any further amounts in *Ibarra*. When the Parties reached this global settlement, the *Ibarra* action had been stayed pending the resolution of *Ferra*

7.      No attorneys' fees or costs have been paid to Class Counsel in *Ibarra* to date.  Class Counsel filed an appeal from the district court's original fees ruling in *Ibarra,* but that appeal was stayed pending Wells Fargo's appeal from the liability and damages judgment against it. After the Ninth Circuit affirmed the liability ruling in *Ibarra* and remanded for an initial distribution pending the outcome of *Ferra*, the Ninth Circuit with the consent of the parties administratively closed Class Counsel's fee appeal, subject to that appeal being reopened based on subsequent events.

8.      The parties in *Kang* and *Ibarra* participated in a consolidated mediation before experienced mediator David Rotman on October 21, 2020 and reached a global settlement of the two cases, subject to court approval, as documented in this settlement agreement. To further the goal of judicial efficiency and consistency of implementation, and because of the substantial overlap of issues and class membership between *Kang* and *Ibarra*, the parties agreed to submit this global settlement to this Court to certify a single global settlement class, with the understanding that if this settlement is finally approved, Plaintiff Ibarra will dismiss the *Ibarra* action with prejudice, all funds paid and held back in *Ibarra* will be distributed and/or accounted for pursuant to the terms of this global settlement, and Wells Fargo will not separately be required to contribute any additional sums of

money to members of the *Kang* or *Ibarra* classes or to Class Counsel in either or both cases except as set forth in this global settlement agreement.

9.     The Parties seek approval of the global settlement in a single court for several reasons. The classes and claims in *Ibarra* and *Kang* substantially overlap. This global settlement was negotiated by all interested parties with the intent that it fully resolve all pending claims in both *Ibarra* and *Kang*. The *Kang* Plaintiffs, the *Ibarra* Plaintiff, and the certified class members they represent in *Kang* and *Ibarra* respectively are represented by the same Class Counsel, just as Defendant Wells Fargo is represented by the same counsel in both actions.  For these reasons, a single, global settlement approval process is necessary and desirable to conserve judicial resources, to avoid the possibility of conflicting outcomes if different aspects of the settlement are subject to separate approval processes in different courts at different times, and to prevent the risk of class member confusion where hundreds of individual class members might otherwise be entitled to receive two settlement notices permitting them to participate in, object to, or opt out of different parts of the settlement on different timelines. The parties have jointly agreed to seek approval of their global settlement in this Court because the consolidated *Kang* action includes all claims encompassed by both *Kang* and *Ibarra*.

10.     Notwithstanding Wells Fargo's agreement to all terms of this settlement as set forth herein, Wells Fargo denies any liability or wrongdoing of any kind associated with the claims alleged in *Kang* or *Ibarra*. Wells Fargo contends, among other things, that it has always complied with the California Labor Code and all applicable California laws with regard to the payment of wages to California HMCs.

11.     The Parties wish to fully, finally, and forever settle, compromise, and discharge all disputes and claims that exist between them as alleged in *Kang* and *Ibarra* and that arise from the facts alleged in *Kang* and *Ibarra*. To achieve the agreed-upon release of claims against Wells Fargo and the other "Releasees" as

defined in Paragraph 12, the Parties acknowledge that this Stipulation of Settlement is intended to include all Released Class Claims that were or could have been alleged in *Ibarra* and *Kang*, as more fully described in Paragraph 59 of this Stipulation of Settlement.

12.     The Parties intend this Stipulation of Settlement to constitute a full and complete settlement and release of all claims described in Paragraph 59 of this Stipulation of Settlement. That release shall include in its effect not only Wells Fargo, but also its respective affiliates, subsidiaries, parent companies, predecessor entities, successor entities, related companies, partners, officers, directors, managers, servants, agents, employees, former employees, representatives, and attorneys, past or present, and all persons acting under, by, though, or in concert with any of them (collectively, the "Releasees").

## II.     DEFINITIONS

13.     "Class Counsel" means Haffner Law PC and Stevens, LC.

14.     "Class Counsel Award" means such award of fees, costs, and litigation expenses as the Court may authorize to be paid to Class Counsel for the services they have rendered and will render to the *Kang* Plaintiffs, the *Ibarra* Plaintiff, the certified classes in *Kang* and *Ibarra*, and the Settlement Class as defined herein.

15.     "Class Member" means any individual who worked for Wells Fargo in the State of California in the job title of Home Mortgage Consultant, Home Mortgage Consultant Jr., Private Mortgage Banker, or Private Mortgage Banker, Jr. at any time between March 17, 2013 and December 31, 2019.

16.     "Class Representatives" means named plaintiffs Michael Kang and Michael Moses in *Kang*, and Jacqueline Ibarra in *Ibarra*.

17.     "Class Representative Service Payments" means the amount that the Court authorizes to be paid to named plaintiffs Michael Kang and Michael Moses that is in addition to their individual settlement payments.

18.     "Court" means the Court in which the *Kang* Plaintiffs and *Ibarra* Plaintiff seek approval of this Stipulation of Settlement.

19.     "Gross Fund Value" or "GFV" means the aggregate amount of NINETY-FIVE MILLION SIX HUNDRED NINETY-SIX THOUSAND ONE HUNDRED TWENTY-TWO DOLLARS AND THIRTY-FIVE CENTS ($95,696,122.35) that is being paid as a result of the global resolution of the Kang and Ibarra class actions.  The GFV includes the TWENTY-FIVE MILLION SIX HUNDRED NINETY SIX THOUSAND ONE HUNDRED TWENTY-TWO DOLLARS AND THIRTY-FIVE CENTS ($25,696,122.35) that Wells Fargo has already paid toward the *Ibarra* judgment, plus the additional gross sum of SEVENTY MILLION DOLLARS ($70,000,000).

20.     "Net Fund Value" means the Gross Fund Value less the Class Counsel Award, Class Representative Service Payments, Settlement Administration Costs, and the portion of the PAGA Payment to be paid to the LWDA.

21.     "Non-Rest Period Allocation" means 10% of the Net Fund Value.

22.     "Non-Rest Period Subclass" means all Class Members who worked for Wells Fargo in the State of California in the job title of Home Mortgage Consultant, Home Mortgage Consultant Jr., Private Mortgage Banker, or Private Mortgage Banker, Jr. at any time between October 27, 2013 and December 31, 2019.

23.     "Notice" means the mailing to Class Members including the Notice of Class Action Settlement in a form substantially similar to the form attached hereto as Exhibit A.

24.     "PAGA Payment" means the entire amount allocated for civil penalties under the Labor Code Private Attorneys' General Act ("PAGA"), Cal. Labor Code §§2698 *et seq.*  Pursuant to Labor Code §2699(i), 75% of the PAGA Payment shall be paid to the LWDA and 25% of the PAGA Payment shall be allocated to the Net Fund Value.

25.     "Response Deadline" means the last day for Class Members to opt out of or object to the Settlement, or to dispute the calculation of their settlement payments, which shall be forty-five (45) days after the Notice mailing date.

26.     "Rest Period Allocation" means 90% of the Net Fund Value.

27.     "Rest Period Subclass" means all Class Members who worked for Wells Fargo in the State of California in the job title of Home Mortgage Consultant, Home Mortgage Consultant Jr., Private Mortgage Banker, or Private Mortgage Banker, Jr. at any time between March 17, 2013 and March 31, 2018.

28.     "Second Amended Complaint" means the Second Amended Complaint to be filed in the *Kang* Action, if any such Second Amended Complaint is required, to implement this settlement.

29.     "Settlement Class" means all Class Members who did not timely and validly request exclusion from the Class, and subject to such other exclusions as set forth in Paragraph 32(c).

30.     "Settlement Class Member" means a Class Member who did not timely and validly request exclusion from the Class.

## III.     TERMS OF SETTLEMENT

### A.     Global Settlement Class

31.     As necessary to  implement this global settlement, the parties will stipulate to the filing of a Second Amended Complaint in *Kang* as the parties deem necessary.

32.     The Settlement Class shall be defined as "all individuals who worked for Wells Fargo in the State of California in the job title of Home Mortgage Consultant, Home Mortgage Consultant Jr., Private Mortgage Banker, or Private Mortgage Banker, Jr. at any time between March 17, 2013 and December 31, 2019," subject to the exclusions set forth below in subparagraph (c). The Settlement Class shall consist of two subclasses defined as follows:

(a)   All individuals who worked for Wells Fargo in the State of California in the job title of Home Mortgage Consultant, Home Mortgage Consultant Jr., Private Mortgage Banker, or Private Mortgage Banker, Jr. at any time between March 17, 2013 and March 31, 2018 ("the Rest Period Subclass").

(b)   All individuals who worked for Wells Fargo in the State of California in the job title of Home Mortgage Consultant, Home Mortgage Consultant Jr., Private Mortgage Banker, or Private Mortgage Banker, Jr. at any time between October 27, 2013 and December 31, 2019 ("the Non-Rest Period Subclass").

(c)   The Settlement Class shall specifically exclude (1) Jasmine Maggiulli, who has her own pending putative class action in the San Bernardino Superior Court and (2) any other HMCs who entered into general release agreements following termination of their employment with Wells Fargo.

(d)   For purposes of this settlement only, Wells Fargo agrees to conditional certification of the global Settlement Class and Subclasses.  If the proposed Settlement is not finally approved for any reason, the Parties shall be returned to their respective statuses as of the date and time immediately prior to the execution of this Stipulation of Settlement.

**B.     Overview of Payment Structure**

33.     This settlement is made on a non-reversionary basis. The settlement shall consist of a Gross Fund Value, comprised of a Net Fund Value for the class, the Class Counsel Award, the PAGA Payment, Settlement Administration Costs, and the Class Representative Service Payments. Further specifics are provided below.

34.     Each Settlement Class Member shall automatically be mailed a settlement check. There will be no claims process.

**C.**     **Gross Fund Value**

35.     Wells Fargo shall pay an additional gross sum of SEVENTY MILLION DOLLARS ($70,000,000) which, when taken together with the TWENTY FIVE MILLION SIX HUNDRED NINETY SIX THOUSAND ONE HUNDRED TWENTY-TWO DOLLARS AND THIRTY-FIVE CENTS ($25,696,122.35) that Wells Fargo has already paid toward the *Ibarra* judgment, shall constitute a combined Gross Fund Value of NINETY FIVE MILLION SIX HUNDRED NINETY SIX THOUSAND ONE HUNDRED TWENTY-TWO DOLLARS AND THIRTY-FIVE CENTS ($95,696,122.35).  The Gross Fund Value shall be used to fund the settlement of class claims, the Class Counsel Award, the PAGA Payment, Settlement Administration Costs, and the Class Representative Service Awards. The settlement payments are not being made for any other purpose and will not be construed as compensation for purposes of determining eligibility for any health and welfare benefits or unemployment compensation.

36.     Wells Fargo shall be responsible for paying any appropriate and lawfully required employer-side payroll taxes arising from the portion of the class member settlement payments that is attributable to wages, as set forth in Paragraph 50, and any such amounts shall not be paid from the Gross Fund Value.

**1.**     **Amounts Paid from the Gross Fund Value**

**a)**     **Class Counsel Award**

37.     Class Counsel intend to apply the Court for approval of a payment of no more than one-third of the GFV ($31,898,707) for reasonable attorneys' fees pursuant to the common fund doctrine and California Labor Code §§ 218.5 and 2699(g) for the work they performed on behalf of the classes in *Kang* and *Ibarra* plus no more than $100,000 in actual documented litigation expenses.  As explained below, and subject to Court approval, Class Counsel do not intend to separately apply for an additional award of attorneys' fees from the court in *Ibarra* but, in the interests of judicial economy as further described above will seek to recover their

reasonable attorneys' fees and expenses for their litigation efforts in *Kang* and *Ibarra* solely pursuant to this Stipulation of Settlement. Any Court-approved award of fees and expenses to Class Counsel shall be paid from the GFV. If the Court awards a lower amount of fees or expenses than Class Counsel seek, the difference between the amount Class Counsel seek and the amount awarded shall be allocated to the NFV and will not revert to Wells Fargo. The Parties agree that the validity of the underlying Settlement shall not be affected by any action that may be taken with respect to the Class Counsel Award by the Court or any appellate court.

### b)     Class Representative Service Payments

38.     Class Representatives Moses,  Kang and Ibarra intend to apply to the Court for Class Representative Service Payments not to exceed $10,000 per person, which shall be in addition to the share of the NFV to which each of those Class Representatives would be otherwise entitled as Settlement Class Members. Any such award approved by the Court shall be paid from the GFV. If the Court awards a lower amount of service payments to the Plaintiffs than they seek, the difference between the amount they seek and the amount awarded shall be allocated to the NFV and will not revert to Wells Fargo. The Parties agree that the validity of the underlying Settlement shall not be affected by any action that may be taken with respect to the service awards to the *Kang* Plaintiffs by the Court or any appellate court. The *Ibarra* Plaintiff has already received a $10,000 service payment, as approved by the Court in *Ibarra*, as set forth above in Paragraph 6.

### c)     PAGA Payment

39.     The parties have allocated $750,000 of the GFV to payment of PAGA civil penalties ("PAGA Payment"). Pursuant to Labor Code §2699(i), 75% of the PAGA Payment, or $562,500, shall be paid to the LWDA. The remaining portion shall be allocated to the NFV. In the event the Court determines that the portion of the GFV designated as a PAGA Payment is inadequate, the parties agree to increase the PAGA Payment to whatever level the Court deems minimally acceptable,

without the need to modify or rewrite this Stipulation of Settlement in any other respect. Whatever portion of the GFV is allocated to the PAGA Payment with the approval of the Court, 75% of that amount will be paid to the LWDA and the remaining 25% will be allocated to the NFV.

### d)   Settlement Administration Costs

40.   All costs of notice and claims administration shall be paid from the GFV. The parties agree to use Rust Consulting as Settlement Administrator. The Settlement Administrator has provided an estimate of $50,000 to administer the settlement, which administration shall include, without limitation, setting up a website for Class Members to obtain information about the settlement and to download important documents, mailing Notices and reminder postcards, calculating individual settlement payments, processing objections and opt-outs, performing necessary skip traces on Notices and reminder postcards returned as undeliverable, mailing Class Member settlement checks, issuing any required tax reporting forms, and providing weekly status reports to Counsel for the Parties, among other tasks as set forth in this Stipulation.

### 2.   Remaining Net Fund Value for Settlement Class Member Payments

41.   The Net Fund Value shall be distributed to Settlement Class Members as set forth below. If the Court approves the amounts designated herein that will be requested for the Class Counsel Award, the Class Representative Service Payments, the PAGA Payment, and Settlement Administration Costs, the NFV would be approximately $62,876,415.30, before taking into account the offsets for *Ibarra* payments described below.

### 3.   Distribution of NFV to Class

42.   Ninety percent (90%) of the NFV shall be allocated to the rest period subclass (the "Rest Period Allocation") and ten percent (10%) of the NFV shall be allocated to the non-rest period subclass (the "Non-Rest Period Allocation"). Each

Settlement Class Member's total recovery from the NFV shall be calculated based on that individual's combined share of the portions of the NFV allocated to the two separate subclasses, based on the distribution formula set forth below, to the extent the Settlement Class Member is a member of each subclass. The formula for distribution of portion of the NFV attributable to each subclass shall be as follows:

(a) Each member of the Rest Period Subclass shall be entitled to a proportional share of the Rest Period Allocation, which proportional share shall be calculated by dividing (1) the number of days that Rest Period Subclass member recorded at least 3.5 hours in the Wells Fargo timekeeping system while working an HMC in California during the period of the Rest Period Subclass by (2) the total number of days all Rest Period Subclass members recorded at least 3.5 hours in the Wells Fargo timekeeping system while working as HMCs in California during the period of the Rest Period Subclass. To the extent any Rest Period Subclass member has already received a payment pursuant to the judgment in *Ibarra*, that Rest Period Subclass member's payment from the portion of the NFV designated for Rest Period Allocation shall be reduced by the amount of that *Ibarra* payment.

(b) Each member of the Non-Rest Period Subclass shall be entitled to a proportional share of the Non-Rest Period Allocation, which proportional share shall be calculated by dividing (1) the number of days that Non-Rest Period Subclass member recorded any work time in Wells Fargo's timekeeping system while working as an HMC in California during the period of the Non-Rest Period Subclass by (2) the total number of days all Non-Rest Period Subclass members recorded any work time in Wells Fargo's timekeeping system while working as an HMC in California during the period of the Non-Rest Period Subclass.

(c) To the extent any Class Member timely and validly requests exclusion from the settlement, that Class Member's shares, if any, of the Rest

Period and Non-Rest Period Allocations shall be reallocated to the respective subclass allocations.

**D.    Funding and Payout of Settlement Funds**

43.    The parties agree to take all reasonable steps to expedite moving for and taking reasonable steps necessary to obtain preliminary approval of the proposed settlement and to facilitate distribution of notice to the Class, and moving for final approval and necessary to obtain final approval.

44.    The Effective Date of the settlement shall be the date of final approval if no objections are filed to the settlement. If objections are filed and overruled and no appeal is taken of the final approval order, the Effective Date shall be thirty (30) days after the Court enters final approval and judgment. If an appeal is taken from the Court's final approval order, other than an appeal solely limited to the share of the settlement that should be allocated to attorney's fees or class representative service payments, then the Effective Date shall be the day final approval decision becomes final after all appeals not related solely to attorney's fees or class representative service payments have been resolved.

45.    No later than thirty calendar (30) days after the effective date of final approval, Wells Fargo shall deposit the sum of SEVENTY MILLION DOLLARS ($70,000,000.00) into a Qualified Settlement Fund ("QSF"). The QSF shall be a fund established and administered by the Settlement Administrator pursuant to Internal Revenue Code Section 1.468B-1 in connection with the Settlement.

46.    If no appeal has been filed concerning the attorneys' fee or class representative service payment allocation, then the entire QSF may be distributed within ten (10) business days of the date that Wells Fargo funds the settlement.   If an appeal is pending concerning the attorney's fee allocation, then a portion of the QSF equal to the maximum amount of attorney's fees and class representative service payments Plaintiffs' counsel could be allocated as a result of the appeal will be held back from distribution pending the resolution of that appeal.  The remaining

portion of the QSF will be distributed pursuant to the district court's order following the resolution of the appeal.

47.    No later than ten (10) business days after the funding date, the Settlement Administrator shall mail settlement checks to Settlement Class Members and send payments to Class Counsel for their court-approved attorneys' fees and expenses and to the Class Representatives for their court-approved service payments and to the LWDA for its portion of the court-approved PAGA Payment.

48.    Settlement Class Members shall have 180 days after mailing by the Settlement Administrator to cash their settlement checks.

(a)    Beginning 10 days after mailing settlement checks to Settlement Class Members, the Settlement Administrator shall provide counsel for the Parties with a weekly check cashing report identifying all Class Members who have not cashed their checks.

(b)     If any settlement check remains uncashed after 90 calendar days, the Settlement Administrator shall send a reminder postcard to the recipient to advise that individual that all settlement checks will be voided after 180 calendar days if not cashed by that date.

(c)    The Settlement Administrator shall use reasonable skip-tracing methods to identify a new mailing address for any Settlement Class Member whose settlement check or reminder postcard is returned as undeliverable and for any Settlement Class Member whose settlement check remains uncashed after 120 calendar days. The Settlement Administrator shall re-mail the settlement check or postcard to each Settlement Class Member for whom a new address is obtained as a result of such skip tracing.

(d)    No later than 21 days after the final distribution of the GFV, the Parties shall file a post-distribution accounting with the Court, including a declaration from the Settlement Administrator, and post the post-distribution accounting on the case website.

49.     Class Members shall have 180 days after mailing by the Settlement Administrator to cash their settlement checks. If the total amount of uncashed settlement checks exceeds $50,000, the class members who failed to cash their checks by that date shall forfeit their right to the settlement funds and their share of the settlement shall be redistributed to the participating class members on a proportional basis based on the size of each participating class members' claim. However, if the total amount of unclaimed settlement checks that remain uncashed more than 180 calendar days after mailing totals $50,000 or less, the Settlement Administrator shall pay the funds represented by such un-redeemed checks to the California Unclaimed Property Fund in the name of the Class Member. Even if a Class Member fails to cash his or her settlement check, the Class Member will still release claims pursuant to Paragraph 59.

### E.      Tax Treatment of Settlement Payments

50.     The Parties agree that the amount distributed to each Settlement Class Member consists of a combination of wage and non-wage claims. The parties agree that no portion of the rest period subclass payments shall be allocated to wages, and that 50% of the non-rest period subclass payments shall be allocated to wages. The Settlement Administrator shall report the portion of the non-rest period subclass payment allocated to wages on IRS Forms W-2. The Settlement Administrator shall report the remaining portion of payments (which represent interest and penalties) to class members on IRS Forms 1099-MISC as required by law. Each Settlement Class Member shall be responsible for correctly characterizing his or her settlement payments for tax purposes and for payment of any personal income taxes owing on said amount.

### F.      Resolution of Disputes Relating to Amounts Owed to a Claimant

51.     If a Settlement Class Member timely disputes Wells Fargo's records as to the proper size of his or her share of the NFV, the Parties' counsel shall make a good faith effort to resolve the dispute informally. If counsel for the Parties cannot

agree, the dispute shall be finally resolved by the Court, which shall examine the records to attempt to resolve the dispute. Wells Fargo's records shall control unless Wells Fargo expressly agrees otherwise in an individual case.

## IV.   NOTICE TO THE CLASS

52.     The Parties agree that within ten (10) business days after preliminary approval of this settlement, Wells Fargo shall provide to the Settlement Administrator all of the following information about each Class Member in Excel format ("Class Data List"): (1) name, (2) last known home address, email address and telephone number, (3) social security number, and (4) dates of employment in an HMC position in California. Prior to receiving the Class Data List, the Settlement Administrator shall enter into a written agreement with Wells Fargo concerning the confidentiality of the Class Data List. Within ten (10) business days after receipt of the Class Data List, the Settlement Administrator shall send Class Members, by first-class mail to their last known address, the Court-approved Notice of Pendency of Class Action ("Notice"), in substantially the form attached hereto as Exhibit "A." The Notice shall include Wells Fargo's calculation of each Class Member's total Rest Period and Non-Rest Period Subclass qualifying days worked and corresponding anticipated settlement allocation share.

53.     Prior to mailing the Notice, the Settlement Administrator shall check all addresses against the National Change of Address database and shall mail Notices to Settlement Class Members at their new addresses to the extent such addresses are obtained through this process. The Settlement Administrator shall promptly re-mail any Notice that is returned with a forwarding address. The Settlement Administrator shall perform skip-traces on returned mail and shall re-mail the Notice to an updated address (if any) as soon as possible upon return of the undeliverable Notice, but no later than ten (10) days of receiving notice that a Notice was undeliverable. It is the intent of the Parties that reasonable means be used to locate Class Members. To the extent that a party or its counsel learns of a new address for a Class Member, such

information must be communicated immediately to the Settlement Administrator, and the Settlement Administrator shall thereupon issue a new Notice to such Class Member at such address.

54.     The Response Deadline, which is the deadline for a Class Member to opt out of, or object to, the settlement or dispute the calculation of his or her settlement payment, shall be forty-five (45) days after the date of mailing of Notices; provided however, that the Response Deadline for Notices that are re-mailed shall be the earlier of: (a) thirty (30) days after re-mailing of the Notice; or (b) fifteen (15) days before the date set by the Court for the final approval hearing. The Settlement Administrator shall provide a weekly report to the Parties' Counsel identifying those Class Members whose notices have been re-mailed, and the re-mailing dates.

## V.     ADMINISTRATION PROCESS

55.     Class Members must file or postmark their objections to the Court no later than the Response Deadline for those objections to be timely.  No objection may be considered by the Court unless it includes the Class Member's name and address and the last four numbers of the Class Member's social security number and is signed by the Class Member or the Class Member's attorney. The objection must state all reasons for the Class Member's objection. Copies of any objections and the Parties' response thereto shall be submitted to the Court no later than five days before the final approval hearing, unless the Court orders otherwise.

56.     Class Members who wish to exclude themselves from the Settlement must submit a written request for exclusion by the Response Deadline. Any such request for exclusion, to be valid, must state that the Class Member wishes to be excluded from the Settlement and must: (1) contain the name, address, telephone number, and the last four digits of the Social Security number of the person requesting exclusion; (2) be signed by the Class Member or the Class Member's attorney; (3) be postmarked or fax-stamped by the Response Deadline and returned

to the Settlement Administrator at the specified address or fax number; and (4) contain a typewritten or handwritten notice that contains a statement that clearly conveys the Class Member's request to be excluded from the Settlement Class. No request for exclusion will be valid if it does not comply with each of these requirements. The date of the postmark or fax-stamp on the request for exclusion shall be the exclusive means used to determine whether the request for exclusion was timely submitted. Any Class Member who timely and validly requests to be excluded from the Settlement Class shall not be entitled to any recovery under the Settlement and shall not be bound by the terms of the Settlement or have any right to object, appeal, or comment thereon. Class Members who fail to submit a valid and timely written request for exclusion on or before the Response Deadline shall be bound by all terms of the Settlement and any final judgment entered in *Kang* if the Settlement is approved by the Court.  If more than one hundred (100) class members request exclusion from the settlement, Wells Fargo shall be entitled in its sole discretion to invalidate the settlement and the Parties shall be returned to their respective statuses as of the date and time immediately prior to the execution of this Stipulation of Settlement with neither party being permitted to use the fact of the settlement for any purpose in the ongoing litigation.

57.     No later than fourteen (14) calendar days after the Response Deadline, the Settlement Administrator shall provide counsel for the Parties with a final list of the Class Members who have timely submitted written requests for exclusion. At no time shall any of the Parties or their respective counsel seek to solicit or otherwise encourage Class Members to submit requests for exclusion from the Settlement. If any Class Member submits a defective request for exclusion before the Response Deadline, the Settlement Administrator shall notify the Parties' counsel so the Parties can meet and confer regarding any such defective request for exclusion and thereafter promptly instruct the Settlement Administrator concerning the defect(s).

58.     The Settlement Administrator shall use the Class Data List provided by Wells Fargo to calculate each Class Member's share of the NFV for inclusion in the Notice. The Settlement Administrator shall be responsible for calculating the payments, issuing the payments and any required tax reporting forms, and for communicating this information to Wells Fargo and Class Counsel. Upon completion of its calculation of payments, the Settlement Administrator shall provide Class Counsel and Wells Fargo with a report listing the amount of the allocations to each Class Member, and Wells Fargo shall have ten (10) business days to verify the calculations. If no objections to the Settlement Administrator's calculations are made within such time, the Settlement Administrator's calculations shall be deemed correct. Following the Response Deadline, the Settlement Administrator shall recalculate final allocations to the extent necessary to account for any Class Members who timely and validly requested exclusion from the Settlement. The Settlement Administrator shall provide the Parties' Counsel with a report listing the amount of the final allocations to each Class Member, and Wells Fargo shall have ten (10) business days to verify the calculations. If no objections to the Settlement Administrator's calculations are made within such time, the Settlement Administrator's calculations shall be deemed correct.

## VI.     RELEASE BY THE CLASS OF RELEASED CLASS CLAIMS

59.     Upon final approval by the Court, the Settlement Class and each Settlement Class Member shall be deemed to have released Wells Fargo and the Releasees from the Released Class Claims. The Released Class Claims shall include any claims arising from the factual allegations or legal claims asserted in the operative *Kang* and *Ibarra* Complaints. This includes claims arising under California Labor Code Sections 201, 202, 203, 226, 226.7, 227.3, 512, 1194, 1194.1, 2699, or any other claims based on the same factual allegations asserted in the operative *Kang* and *Ibarra* Complaints, including the claims for PAGA penalties asserted in *Kang* and the PAGA Notice letter that Plaintiff Michael Moses submitted

to the LWDA on August 3, 2018 (which asserts PAGA claims for underlying violations of Labor Code Sections 203, 204, 226(a), 226.7, 510, 512, 1194, 1194.2, 1197, and Wage Order 4-2001 Sections 4 and 11). The Released Class Claims shall include all claims asserting that Wells Fargo's compensation system for HMCs in effect between October 27, 2013 and December 31, 2019 failed to pay wages for all hours worked, failed to pay for rest periods, failed to provide lawful vacation pay, or any derivative claims.

## VII.   GENERAL RELEASE OF CLAIMS BY CLASS REPRESENTATIVES

60.     In consideration for receiving Class Representative Service Payments, and to the extent permitted by law, *Kang* Plaintiffs Moses and Kang and *Ibarra* Plaintiff Ibarra provide the following general release of claims: In addition to the releases above, the Class Representatives make the following general release of all claims, known or unknown (the "General Release"). the Class Representatives release the Releasees from all claims, demands, rights, liabilities and causes of action of every nature and description whatsoever, known or unknown, asserted or that might have been asserted, whether in tort, contract, or for violation of any state or federal statute, rule or regulation arising out of, relating to, or in connection with any act or omission by or on the part of any of the Releasees committed or omitted prior to the execution hereof.  This General Release excludes any and all past, present and/or future claims arising under the Workers' Compensation laws. The General Release includes any unknown claims the Class Representatives do not know or suspect to exist in the Class Representatives' favor at the time of the General Release, which, if known by the Class Representatives, might have affected the Class Representatives' settlement with, and release of, Releasees by the Class Representatives or might have affected the Class Representatives' decision not to object to this Settlement or the General Release.

61.     The Class Representatives may hereafter discover facts in addition to or different from those the Class Representatives now know or believe to be true with

respect to the subject matter of the General Release, but the Class Representatives, upon the Effective Date, shall be deemed to have, and by operation of the Court's approval of the Settlement, shall have, fully, finally, and forever settled and released any and all of the claims released pursuant to the General Release whether known or unknown, suspected or unsuspected, contingent or non-contingent, which now exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.

62.    It is understood and agreed by the Parties, that, as a condition of this Agreement, and with respect to the general releases pursuant to this Paragraph, the Parties hereby expressly and mutually waive and relinquish any and all employment-related claims, rights, or benefits that they may have against one another. The class representatives agree to waive any rights they may have under California Civil Code §1542, which provides: A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

**VIII. DUTIES OF THE PARTIES IN CONNECTION WITH COURT APPROVAL**

63.    The Parties shall promptly submit this Stipulation of Settlement to the Court in support of their request for preliminary approval and for a determination by the Court as to the fairness, adequacy, and reasonableness of the Parties' Settlement. As soon as practicable after this Stipulation of Settlement is fully executed, the Parties shall apply to the Court for the entry of a preliminary order substantially in the form attached hereto as Exhibit "B" which would accomplish the following:

a.   Conditionally certify the Settlement Class and Subclasses;

b.   Schedule a final fairness hearing on the question of whether the proposed settlement, the Class Representative Service Payments, and the Class Counsel Award should be finally approved as fair, reasonable, and adequate;

c.   Approve the form and content of the proposed Notice and direct the mailing of the Notice, by first-class mail, to the Class Members;

d.   Preliminarily approve the settlement subject only to the objections of Class Members and final review by the Court; and,

e.   Preliminarily approve the use of a mutually agreed Settlement Administrator consistent with the Parties' agreement.

64.   Class Counsel shall submit a copy of the Stipulation of Settlement to the LWDA pursuant to Labor Code § 2699(l)(2).

65.   No later than seven (7) calendar days after the filing of the preliminary approval motion, the Settlement Administrator shall provide notice of the Settlement to the appropriate federal and state officials pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1715. No later than fourteen (14) calendar days before the final approval hearing, Wells Fargo shall file with the Court a declaration attesting that CAFA notice has been properly served pursuant to 28 U.S.C. §1715.

66.   At least fourteen (14) days before the Response Deadline, Class Counsel shall file with the Court a motion for final approval of the Settlement and the Class Representative Service Payments and a separate motion for the Class Counsel Award. No later than seven (7) days after the Response Deadline, Class Counsel may file a supplemental brief in support of the motions if necessary.

67.   The Settlement Administrator shall submit a declaration in support of Plaintiffs' motion for final approval of the Settlement detailing the number of Notices mailed and re-mailed to Class Members, the number of undeliverable

Notices, the number of timely requests for exclusion, the number of objections received, the amount of the average individual settlement payment, the Settlement Administration Costs, and any other information that the Parties mutually agree or the Court orders the Settlement Administrator to provide.

## IX.   DUTIES OF THE PARTIES FOLLOWING FINAL APPROVAL

68.   Following final approval of the settlement provided for in this Stipulation of Settlement, Class Counsel will submit a proposed final order and Judgment substantially in the form attached hereto as Exhibit "C":

> a.   Approving the Settlement, adjudging the terms thereof to be fair, reasonable, and adequate, and directing implementation of its terms and provisions;
>
> b.   Approving the Class Counsel Award;
>
> c.   Approving the Class Representative Service Payments;
>
> d.   Approving the release of the Released Class Claims against Releasees by the Settlement Class Members and the individual releases between Plaintiffs and Wells Fargo.

## X.   ADDITIONAL PROVISIONS

### A.   PARTIES' AUTHORITY

69.   The signatories hereto hereby represent that they are fully authorized to enter into this Stipulation of Settlement.

### B.   MUTUAL FULL COOPERATION

70.   The Parties agree fully to cooperate with each other to accomplish the terms of this Stipulation of Settlement, including but not limited to executing such documents, cooperating to file any documents or secure any approvals required by the *Ibarra* Court to implement this settlement, and taking such other action as may reasonably be necessary to implement the terms of this Stipulation of Settlement. Neither the Parties nor their respective counsel shall solicit or otherwise encourage directly or indirectly any Class Member to object to the Settlement or to appeal from

the Judgment. The Parties to this Stipulation of Settlement shall use their best efforts, including all efforts contemplated by this Stipulation of Settlement and any other efforts that may become necessary by order of the Court or otherwise, to effectuate this Stipulation of Settlement and the terms set forth herein. As soon as practicable after execution of this Stipulation of Settlement, Class Counsel shall, with the assistance and cooperation of Wells Fargo and its counsel, take all necessary steps to secure the Court's final approval of this Stipulation of Settlement.

**C.     NO PRIOR ASSIGNMENTS**

71.     The Parties hereto represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or rights herein released and discharged except as set forth herein.

**D.     NO ADMISSION**

72.     Nothing contained herein, nor pertaining to the consummation of this Stipulation of Settlement, shall be construed or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of Wells Fargo. Wells Fargo specifically denies any liability. Each of the Parties hereto has entered into this Stipulation of Settlement with the intention of avoiding further disputes and litigation with the attendant inconvenience and expenses.

**E.     PUBLICITY**

73.     Neither Plaintiff nor Class Counsel will publicize the Settlement in any way prior to the granting of preliminary settlement approval, except as required by this Agreement. This provision shall not prohibit any party's counsel from communicating with members of the Class who reach out to Class Counsel with questions about the settlement.

### F.   NO RETALIATION

74.   Wells Fargo agrees that it shall not retaliate or discriminate against or take any other adverse employment action against any Plaintiff or Class Member as a result of the *Ibarra* or *Kang* actions, this Settlement, or their participation in these actions or this Settlement.

### G.   CONSTRUCTION

75.   The Parties agree that the terms and conditions of this Stipulation of Settlement are the result of lengthy, intensive arms-length negotiations between the Parties and that this Stipulation of Settlement shall not be construed in favor of or against any Party by reason of the extent to which any Party or his, her, or its counsel participated in the drafting of this Stipulation of Settlement.

### H.   CAPTIONS AND INTERPRETATIONS

76.   Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference and in no way define, limit, extend, or describe the scope of this Stipulation of Settlement or any provision hereof. Each term of this Stipulation of Settlement is contractual and not merely a recital.

### I.   MODIFICATION

77.   This Stipulation of Settlement may not be changed, altered, or modified, except in writing and signed by the Parties or their counsel, and approved by the Court. This Stipulation of Settlement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties hereto.

### J.   INTEGRATION CLAUSE

78.   No other agreements, understandings, representations, or statements, except for those expressly provided herein, have been made by a Party to induce execution of this Stipulation of Settlement. No rights hereunder may be waived except in writing.

**K.   COUNTERPARTS**

79.   This Stipulation of Settlement may be executed in counterparts electronically, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Stipulation of Settlement, which shall be binding upon and effective as to all Parties.

**L.   RETURN OF CLASS DATA**

80.   During the course of the *Ibarra* and *Kang* actions, Wells Fargo produced financial and personal contact information of class members. Within thirty (30) days after the Effective Date, class counsel shall gather and delete all class data it received through the *Ibarra* and *Kang* actions and shall provide a sworn declaration affirming it has satisfied this obligation.

**M.   CONSEQUENCES OF NON-APPROVAL OF SETTLEMENT**

81.   If the proposed Settlement is not finally approved for any reason, the Parties shall be returned to their respective statuses as of the date and time immediately prior to the execution of this Stipulation of Settlement; the Parties shall proceed in all respects as if this Stipulation of Settlement had not been executed, including that the operative complaint in *Kang* shall be the First Amended Class Action Complaint, and the certified classes and subclasses in *Ibarra* and *Kang*, respectively, shall be the operative classes and subclasses; and the Parties shall split the Settlement Administration Costs actually incurred.

Dated:   ___1/29___, 2021   _____
                                    mike moses (Jan 29, 2021 14:55 PST)
                                    Michael Moses, Plaintiff

Dated:   ___01/29___, 2021   _____
                                    James C. Kang, Plaintiff

DocuSign Envelope ID: 6B115599-04B8-4926-8547-34357998F357

Dated: ~~December ___, 2020~~ February 2, 2021

_____
Jacqueline Ibarra, Plaintiff

Dated: ~~December ___, 2020~~   1/29/2021 | 12:48:01 PM PST

_____
for Wells Fargo Bank, N.A.

## Approval as to Form and Content by Counsel:

Dated: December ___, 2020

_____
Joshua Haffner
Class Counsel

Dated: December ___, 2020

_____
Paul Stevens
Class Counsel

Dated: ~~December ___, 2020~~ January 29, 2021

Thomas R. Kaufman

_____
Thomas R. Kaufman
Counsel for Wells Fargo Bank, N.A.

DocuSign Envelope ID: 6B115599-04B8-4926-8547-34357998F357

1   Dated:          December ___, 2020          _____
2                                                Jacqueline Ibarra, Plaintiff

3                   1/29/2021 | 12:48:01 PM PST
4   Dated:          ~~December ___, 2020~~        Janice Reznick
                                                 —DocuSigned by:
5                                                —0E27DC805EF464...
                                                 for Wells Fargo Bank, N.A.

6
7   **Approval as to Form and Content by Counsel:**

8                   February 2, 2021
9   Dated:          ~~December ___, 2020~~        _____
                                                 Joshua Haffner
10                                               Class Counsel

11                  February 2
    Dated:          ~~December ___~~, 2020        _____
12                                               Paul Stevens
                                                 Class Counsel
13                  January 29, 2021
14  Dated:          ~~December ___, 2020~~        Thomas R. Kaufman
                                                 _____
15                                               Thomas R.  Kaufman
                                                 Counsel for Wells Fargo Bank, N.A.
16
17
18
19
20
21
22
23
24
25
26
27
28

SMRH:4822-8160-1752.1          STIPULATION OF CLASS SETTLEMENT AND RELEASE - Page 28

# EXHIBIT A

## NOTICE OF CLASS ACTION SETTLEMENT

*Kang v. Wells Fargo Bank, N.A.*
United States District Court for the Northern District of California Case No. 5:17-cv-06220-BLF

*Ibarra v. Wells Fargo Bank, N.A.*
United States District Court for the Northern District of California Case No. 5:21-cv-00071-BLF

### *PLEASE READ THIS NOTICE CAREFULLY.*

*A court authorized this notice. This is not a solicitation. This is not a lawsuit against you and you are not being sued. However, your legal rights are affected whether you act or don't act.*

**If you were employed by Wells Fargo Bank, N.A. ("Wells Fargo") in California as a Home Mortgage Consultant, Home Mortgage Consultant, Jr., Private Mortgage Banker, or Private Mortgage Banker, Jr. (collectively "HMCs") at any time from March 17, 2013 through December 31, 2019, you may be entitled to receive money from a class action settlement.**

**You are receiving this notice to inform you of the terms of the classwide settlement the parties have reached subject to the court's final approval so you will be aware of the settlement terms and your rights to a recovery under the settlement.  The court has already granted preliminary approval of the class settlement.  This notice also provides options and instructions as to how you may respond to the notice.**

| SUMMARY OF YOUR OPTIONS | | |
|---|---|---|
| **Do Nothing, and Participate in the Settlement** | If the Court approves the settlement, you will receive a settlement payment calculated based on the number of days you worked for Wells Fargo as an HMC in California during the time periods covered by the settlement, offset by any payment you may have already received in connection with *Ibarra v. Wells Fargo Bank, N.A.*, and you will release claims against Wells Fargo and related entities. | **Deadline: None** |
| **Exclude Yourself from the Settlement** | If you exclude yourself from the settlement ("opt out"), you will not release any claims asserted in the *Kang v. Wells Fargo* class action. You also will not receive a settlement payment if the settlement is approved.  You may not object to or comment on the settlement. | **Deadline: [DATE]** |
| **Object to the Settlement** | You may object to the settlement or any part of it by submitting a written objection to the Court. By objecting, you do not give up your right to receive a settlement payment if the settlement is approved.  You will release claims against Wells Fargo and related entities if the settlement is approved. | **Deadline: [DATE]** |
| **Dispute Your Estimated Settlement Payment** | If the settlement is approved, your individual settlement payment will be based on the number of days you worked as an HMC for Wells Fargo in California in the time periods covered by the settlement.  (See Section 9.) The Court will decide the dispute.  By submitting a dispute, you do not give up | **Deadline: [DATE]** |

| | your right to receive a settlement payment if the settlement is approved.  You will release claims against Wells Fargo and related entities if the settlement is approved. | |

## 1.  WHAT IS THE PURPOSE OF THIS NOTICE?

The purpose of this Notice is to let you know that the court has granted preliminary approval of the settlement of a consolidated class action lawsuit pending in the United States District Court for the Northern District of California Case No. 5:17-cv-06220-BLF entitled *Kang v. Wells Fargo Bank, N.A.*, and that you may be entitled to a payment as part of the settlement. This settlement also incorporates claims in another lawsuit, *Ibarra v. Wells Fargo Bank, N.A.*, United States District Court for the Northern District of California Case No. 5:21-cv-00071-BLF (formerly Central District of California Case No. 17-cv-4344 PA (ASx)). Even if you have already received a payment in connection with the *Ibarra* lawsuit, you may be eligible for an additional payment from this proposed settlement.

A hearing addressing the fairness, adequacy, and reasonableness of the settlement will be held on _____ at _____.m. to determine whether the settlement should receive the Court's final approval.

## 2.  WHAT ARE THE CLASS CLAIMS?

The lawsuit alleges, in relevant part, that Wells Fargo's compensation system for its California HMCs failed to provide paid rest periods, failed to pay vacation pay, and failed to pay minimum wage for all hours worked. The case seeks to recover premium pay for rest period violations, alleged unpaid vacation, minimum wages, and civil and statutory penalties.

## 3.  WHAT IS WELLS FARGO'S POSITION ON THE CLAIMS?

Wells Fargo denies all the allegations in the case.  Wells Fargo contends that its compensation system has at all times fully complied with California law.

## 4.  WHY DO PLAINTIFFS SEEK SETTLEMENT APPROVAL?

Plaintiffs seek approval of the settlement because they believe the proposed settlement with Wells Fargo is fair, reasonable, adequate, and in the best interests of the members of the Class and all parties.

## 5.  WHY DID I GET THIS NOTICE?

You received this Notice because you were identified as having worked for Wells Fargo in California as an HMC at some point between March 17, 2013 and December 31, 2019.  Approximately 5,377 individuals qualify as class members. The court authorized this Notice as it has preliminarily approved the class settlement.

## 6.  WHO ARE THE ATTORNEYS REPRESENTING THE PARTIES?

**Counsel for Plaintiffs**

HAFFNER LAW PC
Joshua H. Haffner
Graham G. Lambert
445 South Figueroa St., Suite 2625
Los Angeles, California 90071
Telephone: (213) 514-5681
jhh@haffnerlawyers.com
gl@haffnerlawyers.com

STEVENS, LC
Paul D. Stevens
1855 Industrial Street, Suite 518
Los Angeles, California 90021
Telephone: (213) 270-1211
pstevens@stevenslc.com

**Counsel for Wells Fargo**

SHEPPARD MULLIN RICHTER &
HAMPTON, LLP
Thomas Kaufman
Paul Berkowitz
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067-6017
Telephone: 310-228-3700
tkaufman@sheppardmullin.com
pberkowitz@sheppardmullin.com

## 7.  HOW DOES THIS SETTLEMENT RELATE TO THE *IBARRA* JUDGMENT?

The *Ibarra* lawsuit is a class action on behalf of Wells Fargo's California HMCs. Plaintiff alleges that for the period between March 17, 2013 and August 1, 2017, Wells Fargo failed to pay California HMCs for the time they spent on rest periods and, as a result, must pay premium pay under Labor Code § 226.7 for each day it failed to pay for a statutorily required paid rest period.  Judgment was entered against Wells Fargo and in favor of the HMC class in *Ibarra*. A portion of that judgment, in the amount of $25,696,122.35, was partially distributed to members of the *Ibarra* class in November 2020.  There remain two open questions in that case: whether the amount of the judgment should be increased to approximately $97 million, and what constitutes a reasonable attorneys' fee to class counsel.  The proposed *Kang* settlement would resolve all claims in both *Ibarra* and *Kang*, including the amount owed to *Ibarra* class members.

If the *Kang* settlement is approved, the remaining portion of the $25,696,122.35 *Ibarra* payment that has *not* yet been distributed will be added to the consolidated *Kang* settlement amount and will be distributed in accordance with the parties' global settlement agreement. Any payments already received by members of the *Ibarra* class have been taken into account in determining how much of the additional settlement fund will be distributed to those individuals under the current settlement, to avoid double recovery.

## 8.  WHAT IS THE PROPOSED SETTLEMENT?

The following is a summary of the proposed settlement. The complete terms of the proposed settlement are stated in the Stipulation of Class Settlement between Plaintiffs and Wells Fargo ("Stipulation of Settlement" or "Settlement Agreement"), which is on file with the Court and is available at www._____.

Under the Settlement Agreement, Wells Fargo has agreed to pay an aggregate amount of $95,696,122.35 as the "Gross Fund Value" to settle the claims asserted in this lawsuit.  This Gross Fund Value includes the $25,696,122.35 that Wells Fargo has already paid in *Ibarra*.

Subject to Court approval, the following amounts will be deducted from the Gross Fund Value:  (1) Class Counsel's attorney's fees (not to exceed $31,898,707) to compensate class counsel for the unpaid work they have performed on the class action; (2) reimbursement of class counsel's out-of-pocket litigation expenses, up

to $100,000; (3) a payment of $562,500 to the State of California as part of the settlement of the California Labor Code Private Attorneys General ("PAGA") claim in the *Kang* lawsuit; (4) payment of the cost of administering the settlement to the settlement administrator, estimated to be approximately $50,000; and (5) an award of additional funds (not to exceed $20,000) to class representatives Michael Kang and Michael Moses, in consideration of their services to the class in this case and the payment of $10,000 already paid to Jacqueline Ibarra in the *Ibarra* action. Following the Court-approved deductions, the remaining sum of approximately $62,876,415.30 (the "Net Fund Value") will be distributed to all members of the settlement class, which includes class members in *Kang* and *Ibarra*.

**Individual Settlement Payments.**  Individual settlement payments will be calculated according to the following formula.

***Rest Period Allocation.***  Ninety percent (90%) of the Net Fund Value will be allocated to Rest Period claims, for individuals who worked for Wells Fargo as HMCs in California at any time between March 17, 2013 and March 31, 2018.  Each such class member will receive a pro rata share of the Rest Period Allocation based on the number of days during this time period the HMC worked in California and recorded at least 3.5 hours into the timekeeping system. Any amount received by the class member in connection with the *Ibarra* judgment will be offset from the class member's share of the Rest Period Allocation.

***Non-Rest Period Allocation.***  Ten percent (10%) of the Net Fund Value will be allocated to Non-Rest Period claims, for individuals who worked for Wells Fargo as HMCs in California at any time between October 27, 2013 and December 31, 2019.  Each class member will receive a pro rata share of the Non-Rest Period Allocation based on the number of days during this time period the HMC worked in California and recorded any time into the timekeeping system.

Wells Fargo has agreed to pay each Class Member an amount as calculated in accordance with the terms of the Settlement Agreement after final approval of the class action settlement. Your settlement check will be valid for 180 days, after which it will become void. If any settlement checks remain uncashed after 180 days, the uncashed amount may be redistributed to other class members who cashed their checks on time, but you will still be deemed to have released your claims. If there are appeals from an order granting final approval the Settlement, payments will be issued only if the Settlement is approved after resolution of those appeals. Please be patient.

**Class Counsel Attorneys' Fees and Costs, Class Representative Service Payments, and Administrative Costs.**  Class Counsel will ask the Court to award attorneys' fees up to one-third of the Gross Fund Value ($31,898,707) and reasonable litigation costs actually incurred, not to exceed $____.   The request for attorney's fees is subject to approval by the Court. These fees will serve to compensate Class Counsel for their efforts in achieving the settlement for the benefit of the Class and their risk in undertaking this representation on a contingency basis. Class Counsel will also ask the Court to authorize service awards of up to $10,000 each for Plaintiffs Moses and Kang, in addition to their shares of the Net Fund Value. The Parties estimate the cost of administering the Settlement will be $____.

The motion for final approval of the settlement, which will include Class Counsel's application for an award of attorney's fees and costs will be filed with the court by _____, 2020 and may be viewed in the court file at the United States District Court for the Northern District of California, located at 280 South 1st Street, San Jose, CA 95113, or on line at www._____ [website set up by Administrator].

**9.  YOUR ESTIMATED PAYMENT UNDER THIS SETTLEMENT IS $_____.** This amount is based on your having recorded more than 3.5 hours of work time in the Wells Fargo timekeeping system on ___ days during the relevant period from March 17, 2013 to April 1, 2018; and having recorded any work time at all on ___ days during the relevant time period from October 27, 2013 to December 31, 2019. This amount also

reflects any offset that applies to you based on your receipt of payment from the *Ibarra* judgment. Your final settlement payment, if the settlement is approved, may be a different amount.

## 10.  WHAT ARE MY RIGHTS IN THIS MATTER?

If you fit the description of a Class Member as set forth in this Notice, you have four options. Each option has its own consequences which you should understand before making your decision. Your rights regarding each option and the procedure you must follow to select each option are set forth below.

### A.      Option One. Do Nothing and Participate in the Settlement.

To receive money from the settlement, you do not need to do anything. As a Class Member, if the Court approves the settlement you will be bound by that settlement. You will then receive a settlement payment and will provide a release to Wells Fargo and other "Releasees" (which includes Wells Fargo's employees, officers, affiliates, parent companies, and predecessor companies you worked for during the class period that were acquired by Wells Fargo). The scope of the release is as follows:

> The Released Class Claims shall include any claims arising from the factual allegations or legal claims asserted in the Second Amended Complaint.  This includes claims arising under California Labor Code Sections 201, 202, 203, 226, 226.7, 227.3, 512, 1194, 1194.1, 2699, or any other claims based on the same factual allegations asserted in the Second Amended Complaint, including the claims for PAGA penalties asserted in *Kang* and the PAGA Notice letter that Plaintiff Michael Moses submitted to the LWDA on August 3, 2018 (which asserts PAGA claims for underlying violations of Labor Code Sections 203, 204, 226(a), 226.7, 510, 512, 1194, 1194.2, 1197, and Wage Order 4-2001 Sections 4 and 11).  The Released Class Claims shall include all claims asserting that Wells Fargo's compensation system for HMCs in effect between October 27, 2013 and December 31, 2019 failed to pay wages for all hours worked, failed to pay for rest periods, failed to provide lawful vacation pay, or any derivative claims.

If the Court gives final approval to the settlement, the Settlement Administrator will send you a check to the address it has on file for you. **It is important that you keep the Settlement Administrator informed of any changes to your address until you receive your settlement payment.**

### B.      Option Two. You May Exclude Yourself From The Settlement

If you do not wish to participate in the settlement and wish to retain your right to bring your own claims within the scope of the lawsuit as an individual, you must send a request for exclusion to the Settlement Administrator, set forth below. The request for exclusion must be mailed to the Settlement Administrator and **post-marked on or before [DATE]**. The request for exclusion from the settlement **must** include the case name (*Kang v. Wells Fargo Bank, N.A.*) your first and last name, signature, address, phone number, last four digits of your social security number for verification purposes and a statement that you wish to exclude yourself from the settlement of the case or words to that effect. No form is provided for an exclusion request. Any Class Member who requests exclusion will not be entitled to any portion of the settlement and will not be providing a release of claims to Wells Fargo and other Releasees. If you exclude yourself from the settlement, you will not have any right to object, appeal, or comment on the settlement.  Class Members who fail to submit a valid and timely exclusion request shall be bound by all terms of the Settlement Agreement and any judgment entered in the Action if the Settlement is approved by the Court.

**C.**    <u>**Option Three.**</u> **You May Dispute the Information Used to Calculate Your Settlement Payment**

The amount of your settlement payment is based on the days (as described above) that you recorded time in the timekeeping system while working for Wells Fargo in an HMC position in California during the applicable class periods. If you do not believe that the numbers for these items assigned to you in Section 9 of this notice are correct, you may dispute those numbers. Any such dispute must be mailed to the Settlement Administrator and **post-marked on or before [DATE]**. Your dispute must state what you believe to be the correct numbers for these items and must be accompanied by any documentation you have to support your dispute. In addition, your dispute **must** include the case name (*Kang v. Wells Fargo Bank, N.A.*), your first and last name, signature, address, phone number, and last four digits of your social security number for verification purposes. Submitting a dispute will not jeopardize your right to your settlement payment. All disputes will be finally decided by the Court in the event counsel for the parties cannot resolve a dispute.

**D.**    <u>**Option Four.**</u> **You May Object to the Settlement**

You may ask the Court to deny approval in whole or in part by filing an objection to the proposed settlement or any part of it. You cannot ask the Court to order a different settlement; the Court can only approve or reject the settlement the parties have agreed to. If the Court denies approval, no settlement payments will be sent out and the lawsuit will continue. If that is *not* what you want to happen, you must object.

Any objection to the proposed settlement must be in writing. If you file a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney. All written objections and supporting papers must (a) clearly identify the case name and number (*Kang v. Wells Fargo Bank, N.A.*, Case No. 5:17-cv-06220-BLF), (b) be submitted to the Court either by mailing them to the Class Action Clerk, United States District Court for the Northern District of California, 280 South 1st Street, San Jose, CA 95113, or by filing them in person at any location of the United States District Court for the Northern District of California, and (c) be filed or postmarked on or before **[DATE]**.

Objections **must** state all of the reasons for your objection. In addition, any objection **must** include the case name) your first and last name, address, phone number, and last four digits of your social security number for verification purposes and must be signed by you or your attorney. While the Court may, in its discretion, permit objections to be filed up until the date of the Final Approval Hearing, you will only be assured that your objection will be considered if you submit it to the Court by the **[DATE]** deadline.

## 11. FINAL APPROVAL HEARING ON PROPOSED SETTLEMENT

The Final Approval Hearing on the fairness and adequacy of the proposed settlement, the plan of distribution, the service award to the Plaintiff, and Class Counsel's request for attorneys' fees and costs, and other issues will be held on _____, 2021 at __ __.m., in Courtroom F of the United States District Court for the Northern District of California, located at 280 South 1st Street, San Jose, CA 95113. You may attend the Final Approval Hearing and be heard even if you do not submit an objection to the settlement. The Final Approval Hearing may be continued to another date without further notice. If you plan to attend the Final Approval Hearing, it is recommended that you contact the Settlement Administrator to confirm the date and time.

## 12. NON-RETALIATION

Wells Fargo will not retaliate or take any adverse action against you or any Class Member for participating in the settlement.

**13. ADDITIONAL INFORMATION**.

This Notice only summarizes the lawsuit and settlement. For more information, you may inspect the Court file at the United States District Court for the Northern District of California, located at 280 South 1st Street, San Jose, CA 95113, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays. You may also review the settlement agreement and other documents related to this settlement online at www._____. You may also view the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov.

You may also contact the Settlement Administrator as follows:

*Kang v. Wells Fargo Bank, N.A.*
c/o [Settlement Administrator]
[ADDRESS]
[TELEPHONE NUMBER]

If you have questions, you may call the Settlement Administrator, _____, toll free at [TELEPHONE NUMBER]. Ask about the *Kang v. Wells Fargo* class settlement.

You may also contact Class Counsel at the addresses and telephone numbers listed above. **PLEASE DO NOT CALL THE COURT OR COUNSEL FOR WELLS FARGO.**

**If your address changes or is different from the address on the envelope enclosing this Notice, please promptly notify the settlement administrator.**

EXHIBIT B

1  Joshua H. Haffner, SBN 188652
   (jhh@haffnerlawyers.com)
2  Graham G. Lambert, SBN 303056
   (gl@haffnerlawyers.com)
3  **HAFFNER LAW PC**
   445 South Figueroa Street, Suite 2625
4  Los Angeles, California 90071
   Telephone: (213) 514-5681
5  Facsimile: (213) 514-5682

6  Paul D. Stevens, SBN 207107
   (pstevens@stevenslc.com)
7  **STEVENS, LC**
8  1855 Industrial Street, Suite 518
   Los Angeles, California 90021
9  Telephone: (213) 270-1211
   Facsimile: (213) 270-1223

10
   *Attorneys for Plaintiffs James C. Kang,*
11 *Michael Moses, and the Certified Class*

12 *Additional Counsel on following page*

13              **UNITED STATES DISTRICT COURT**

14            **NORTHERN DISTRICT OF CALIFORNIA**

15
   JAMES C. KANG, an individual, MICHAEL        **Case No. 3:17-cv-06220-BLF**
16 MOSES, an individual, on behalf of
   themselves and all others similarly situated,  **Case No. 3:21-cv-00071-BLF**
17                                  Plaintiffs,
18              v.                              **[PROPOSED] ORDER GRANTING**
                                                **PLAINTIFFS' MOTION FOR PRELIMINARY**
19 WELLS FARGO BANK, N.A.; and DOES 1            **APPROVAL OF CLASS ACTION**
   through 10, inclusive,                        **SETTLEMENT**
20
                                Defendant.
21 _____
   PATRICIA BARRERA, an individual,
22 JACQUELINE F. IBARRA, an individual,
   on behalf of themselves and all others
23 similarly situated,
                                  Plaintiffs,
24
25              v.

26 WELLS FARGO BANK, N.A.; and DOES 1
   through 10, inclusive,
27
                                Defendant.
28

(continued from previous page)

Michael Rubin, SBN 80618
mrubin@altshulerberzon.com
Eileen B. Goldsmith, SBN 218029
egoldsmith@altshulerberzon,com
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064

*Attorneys for Plaintiffs James C. Kang and
Michael Moses*

Plaintiffs Michael Moses, Michael Kang, and Jacqueline F. Ibarra's Motion for Preliminary Approval of Class Action Settlement came before this Court on [DATE] at [TIME]. The Court, having fully reviewed Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, the supporting Points and Authorities and Declarations filed in support thereof, including the Stipulation of Settlement ("Settlement Agreement") and Notice of Class Action Settlement ("Notice"), and for good cause appearing, hereby makes the following findings and orders:

1.      Except as expressly stated in this Order, all capitalized terms defined in the Settlement Agreement shall have the same meaning when used in this Order.

2.      The Court grants preliminary approval of the proposed settlement based upon the terms set forth in the Settlement Agreement, which is attached as Exhibit A to the Declaration of Paul D. Stevens and is incorporated in full and made part of this Order.

3.      The Settlement Agreement is entered into between Plaintiffs Michael Moses, Michael Kang, and Jacqueline F. Ibarra ("Plaintiffs") and Defendant Wells Fargo Bank, N.A. ("Wells Fargo") (collectively "the Parties"), and is intended as a global settlement of all claims asserted in this action, which was previously consolidated with *Moses v. Wells Fargo Bank, N.A.*, United States District Court, Northern District of California, Case No. 3:18-cv-06679, and in *Ibarra v. Wells Fargo Bank, N.A.*, United States District Court, Northern District of California, Case No. 5:21-cv-00071.

4.      The Settlement is within the range of reasonableness of a settlement that could ultimately receive final approval from this Court and appears to be presumptively valid, subject only to any objections that may be raised at the Final Approval Hearing and final approval by this Court.  The Settlement creates a non-reversionary Gross Fund Value of $95,696,122.35, consisting of $25,696,122.35 already paid by Wells Fargo toward satisfaction of the judgment in *Ibarra* and partially distributed to the class members in *Ibarra*, plus $70,000,000.00 in additional funding to be paid by Wells Fargo.  The remaining portion of the amount already paid toward satisfaction of the *Ibarra* judgment would also be distributed through this Settlement.  The Court notes that if final approval is granted, the aggregate Gross Settlement Value will be used to fund

the following payments: an award of reasonable attorneys' fees to Class Counsel not to exceed one-third of the Gross Fund Value ($31,898,707) plus litigation expenses actually incurred not to exceed $100,000; a payment of $562,500 to the California Labor and Workforce Development Agency ("LWDA") for the State of California's share of civil penalties under the Labor Code Private Attorneys' General Act ("PAGA"); service awards of up to $10,000 each to Class Representatives Moses and Kang; reasonable settlement administration costs; and the remaining Net Fund Value to be distributed as individual settlement payments to Settlement Class Members.  Wells Fargo has further agreed to pay the employer's share of payroll taxes on the portion of the individual settlement payments to Settlement Class Members that is allocated to wages, as set forth in the Settlement Agreement.

5.     The Court finds and concludes that the proposed global Settlement is the result of serious, informed, arms'-length negotiations between the parties, conducted after Class Counsel had adequately investigated Plaintiffs' claims, engaged in substantial motion practice and discovery, and become familiar with the strengths and weaknesses of their claims in *Kang* and *Ibarra*.  The Settlement does not improperly grant preferential treatment to any individual or segment of the Settlement Class and does not contain any obvious deficiencies.  The parties reached agreement with the assistance of an experienced mediator, David Rotman.

6.     The Court finds that a single settlement approval process for this proposed global settlement is appropriate.   The proposed settlement was negotiated by Wells Fargo and Plaintiffs in *Kang* and *Ibarra* with the intent that it would fully resolve all pending claims in both actions. Plaintiffs in *Kang* and *Ibarra*, and the classes they represent, are represented by the same Class Counsel, and Wells Fargo is represented by the same counsel in both cases.  The certified classes and issues presented in *Kang* and *Ibarra* substantially overlap.  A single settlement approval process is necessary and desirable to conserve judicial resources, to avoid the possibility of conflicting outcomes if different aspects of the settlement were subject to separate approval processes in different courts at different times, and to prevent the risk of class member confusion where hundreds of individual class members might otherwise be entitled to two settlement notices permitting them to participate in, object to, or opt out of different parties of the settlement

on different timelines.  It is appropriate for this Court to preside over the single, global settlement approval process because *Kang* includes all of the claims encompassed by both the *Kang* and *Ibarra* actions.

7.      In accordance with the Settlement Agreement, the Court hereby preliminarily certifies the following Class for the purposes of settlement only: All individuals who worked for Wells Fargo in the State of California in the job title of Home Mortgage Consultant, Home Mortgage Consultant Jr., Private Mortgage Banker, or Private Mortgage Banker, Jr. at any time between March 17, 2013 and December 31, 2019.

8.      In accordance with the Settlement Agreement, the Court hereby preliminarily certifies the following Subclasses for the purposes of settlement only:

a.      All individuals who worked for Wells Fargo in the State of California in the job title of Home Mortgage Consultant, Home Mortgage Consultant Jr., Private Mortgage Banker, or Private Mortgage Banker, Jr. at any time between March 17, 2013 and March 31, 2018 ("the Rest Period Subclass").

b.      All individuals who worked for Wells Fargo in the State of California in the job title of Home Mortgage Consultant, Home Mortgage Consultant Jr., Private Mortgage Banker, or Private Mortgage Banker, Jr. at any time between October 27, 2013 and December 31, 2019 ("the Non-Rest Period Subclass").

9.      The following persons shall be excluded from the Settlement Class and Subclasses: (1) Jasmine Maggiulli, who has her own pending putative class action in the San Bernardino Superior Court and (2) any HMCs who entered into general release agreements following termination of their employment with Wells Fargo.

10.     The Court confirms the appointment of Stevens, LC and Haffner Law PC as Class Counsel.

11.     The Court preliminarily concludes that the Settlement Class and Subclasses satisfy all of the requirements for certification, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3). The Court bases this conclusion on the following findings:

a.      The Court has previously certified the following class in this action,

finding that it met all of the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3): "All non-exempt employees of Wells Fargo who at any time during the period beginning October 27, 2013 through the date notice is mailed to the Class [April 15, 2019] worked for Wells Fargo in California in the job titles of Home Mortgage Consultant, Home Mortgage Consultant, Jr., Private Mortgage Banker, or Private Mortgage Banker, Jr. ("the Class"). Employees who were hired or rehired on or after December 11, 2015 are excluded from the Class." Dkt. 54 at 11.

b.      The Court also previously certified the following subclass in this action, finding that it met all of the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3): "<u>Vacation/Separation Pay SubClass</u>: All non-exempt employees of Wells Fargo who at any time during the period beginning October 27, 2013 through the date notice is mailed to the Class [April 15, 2019] worked for Wells Fargo in California in the job titles of Home Mortgage Consultant, Home Mortgage Consultant, Jr., Private Mortgage Banker, or Private Mortgage Banker, Jr, and whose employment with Wells Fargo terminated. Employees who were hired or rehired on or after December 11, 2015 are excluded from the Class." Dkt. 54 at 11.

c.      The *Ibarra* Court previously certified the following class, finding that it met all of the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3): "All non-exempt employees for Wells Fargo who at any time during the period from March 17, 2013 to August 1, 2017 worked for Wells Fargo in California in the job titles of Home Mortgage Consultant, Home Mortgage Consultant, Jr., Private Mortgage Banker, or Private Mortgage Banker, Jr and were subject to the common compensation plans during this period ("the Class")." *Ibarra*, Dkt. 18.

d.      The proposed Settlement Class and Subclasses encompass all members of the certified classes and subclass in *Kang* and *Ibarra*, with respect to the same claims that were certified in those cases. The proposed Settlement resolves the claims of all Class Members in a single action.  The Second Amended Complaint filed in this action to implement the Settlement asserts all claims previously asserted in both *Ibarra* and *Kang*.  All certified claims in both cases arise from the identical Wells Fargo compensation structure for HMCs.  *Ibarra* and *Kang* involve the identical claim for rest period violations affecting the identical group of employees, only for different time periods.  *Kang* also previously alleged non-rest period claims; the

proposed Settlement will enable the *Ibarra* class members to recover for those claims.  For the same reasons this Court and the *Ibarra* Court ruled that the classes and subclass could be certified in *Kang* and *Ibarra*, respectively, this Court finds that the combined Settlement Class and Subclasses meet the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3).

            e.      The Settlement Class and Subclasses are slightly broader than those that were previously certified in *Kang* and *Ibarra*.  The class and subclass previously certified in *Kang* excluded HMCs who were employed hired or rehired by Wells Fargo on or after December 11, 2015.  Those individuals were excluded because they had signed individual arbitration agreements with respect to their employment with Wells Fargo that prohibited them from participating in class or collective proceedings against Wells Fargo.  Those individuals are properly included in the proposed Class and Subclasses for purposes of Settlement because they are similarly situated to other Class and Subclass Members with respect to the Wells Fargo compensation structure under which they were employed.  Through the proposed Settlement, Wells Fargo is waiving any right to invoke the arbitration agreements with respect to these claims.  Individuals who were employed hired or rehired by Wells Fargo on or after December 11, 2015 and who choose to participate in the Settlement will similarly waive any right to invoke their arbitration agreements with respect to these claims.

          11.      The Court approves Rust Consulting ("Settlement Administrator") to perform the duties of the Settlement Administrator as set forth in the Settlement Agreement and this Order.

          12.      The Court finds that the Notice, which is attached as Exhibit A to the Settlement Agreement, comports with Fed. R. Civ. P. 23 and all constitutional requirements, including those of due process.  The Court further finds that the Notice adequately advises the Class about the class action; the terms of the proposed Settlement, the benefits available to each Class Member and the proposed fees and costs to Class Counsel; each Class Member's right to object or opt out of the Settlement and the timing and procedures for doing so; preliminary Court approval of the proposed Settlement; and the date of the Final Approval Hearing, as well as the rights of Class Members to file documentation in support of or in opposition to final approval, and to appear in connection with the hearing.  The Court further finds that mailing of the Notice to each Class

Member's last known address as supplied by Wells Fargo, with appropriate skip tracing and mail forwarding for Notices that are returned as undeliverable, as specifically described in the Settlement Agreement, constitutes reasonable notice to Class Members of their rights with respect to the class action and proposed Settlement.

13.     Within 10 business days after the issuance of this Order, Wells Fargo shall provide the Settlement Administrator with the Class Data List, as specified in the Settlement Agreement.

14.     Within 10 business days after receiving the Class Data List, the Settlement Administrator shall mail the Notice to Class Members in the manner specified in the Settlement Agreement.

15.     The Response Deadline for objections, requests for exclusion from the Settlement, and disputes regarding dates of employment shall be forty-five (45) days after the Notice is initially mailed to Class Members; provided, however, that the Response Deadline for Notices that are re-mailed shall be the earlier of: (a) thirty (30) days after re-mailing of the Notice; or (b) fifteen (15) days before the date set by the Court for the final approval hearing.

16.     The Court orders that any request for exclusion from the Settlement must be postmarked no later than the Response Deadline, and must be received by the Settlement Administrator to be valid.  To be valid, the request for exclusion must include the name, address, telephone number, and last four digits of the social security number of the Class Member requesting exclusion, must be signed by the Class Member requesting exclusion, and must contain a statement that clearly conveys the Class Member's request to be excluded from the Settlement Class.

17.     Any Class Member who does not timely and validly opt out of the Settlement shall be bound by the terms of the Settlement Agreement upon entry of the Final Approval Order and Judgment. The Court shall enjoin any Class Member who does not timely and validly opt out of the Settlement from asserting, instituting or prosecuting in any court or governmental agency, any claims released in the Settlement against Defendant or any other parties released by the Settlement.

18.     Any Class Member who does not timely and validly request exclusion from the Settlement may object to the Settlement by submitting a written objection to the Court in accordance with the procedures outlined in the Notice.  The objection must be filed with the Court or postmarked no later than the Response Deadline.  All written objections and supporting papers must clearly identify the case name and number (*Kang v. Wells Fargo Bank, N.A.*, 17-cv-06220-BLF) and must include the first and last name, address, phone number, and last four digits of social security number for verification purposes of the objecting Class Member, must be signed by the Class Member or Class Member's attorney, and must state the basis of the objection.  Objections may be mailed to the attention of the Class Action Clerk, United States District Court for the Northern District of California, 280 South 1st Street, San Jose, CA 95113, or may be filed in person at any location of the United State District Court for the Northern District of California.  Any Class Member who does not timely submit such a written objection in accordance with these procedures shall not be permitted to raise such objection, except for good cause shown, and shall be deemed to have waived any objection to the Settlement.

19.     The Court will hold a Final Approval Hearing on _____, 2021 at _____ _.m. in Courtroom F of the United States District Court for the Northern District of California, located at 280 South 1st Street, San Jose, CA 95113.  At the Final Approval Hearing, the Court will consider whether: (a) the Settlement is fair, reasonable, and adequate; (b) the Class and Subclasses should be finally certified; (c) a final judgment should be entered; (d) Class Counsel's motion for attorneys' fees and costs should be granted; and (e) the Class Representative Service Awards should be granted.  The Court may continue the date of the Final Approval Hearing without further notice to Class Members.

20.     Further proceedings regarding the Settlement shall be filed and served in accordance with the following schedule:

| Event | Date |
|---|---|
| Notice of Class Action Settlement mailed to class members | 20 business days after preliminary approval |
| Response Deadline | 45 days after Notice mailing |

| Motion for Final Approval filed | 14 days before Response Deadline |
|---|---|
| Motion for Attorneys' Fees and Expenses and Class Representative Service Awards filed | 14 days before Response Deadline |
| Reply Brief(s) in Support of Motions for Final Approval and Attorneys' Fees | 7 days after Response Deadline |
| Defendant to file declaration verifying that CAFA Notice was provided | 14 days before Final Approval Hearing |
| Hearing on Motions for Final Approval and Attorneys' Fees and Expenses | |

21.     All proceedings and deadlines in this case, except those necessary to implement this Order and the Settlement, are hereby stayed.

22.     The Court orders that if, for any reason, the Court does not grant Final Approval, or if such a Final Approval order is reversed, the Settlement Agreement and this Order shall become void, shall have no further force or effect, and shall not be used in any Action or any other proceedings for any purpose other than as may be necessary to enforce the terms of the Settlement Agreement that survive termination; and this matter will revert to the status that existed before execution of the parties' Stipulation of Settlement, as more specifically set forth in the Settlement Agreement.

23.     The Court orders that the Settlement Agreement shall not be construed as an admission or evidence of liability.

IT IS SO ORDERED.

Dated: _____, 2021

_____
Hon. Beth Labson Freeman
United States District Judge

# EXHIBIT C

Joshua H. Haffner, SBN 188652
(jhh@haffnerlawyers.com)
Graham G. Lambert, SBN 303056
(gl@haffnerlawyers.com)
**HAFFNER LAW PC**
445 South Figueroa Street, Suite 2625
Los Angeles, California 90071
Telephone: (213) 514-5681
Facsimile: (213) 514-5682

Paul D. Stevens, SBN 207107
(pstevens@stevenslc.com)
**STEVENS, LC**
1855 Industrial Street, Suite 518
Los Angeles, California 90021
Telephone: (213) 270-1211
Facsímile: (213) 270-1223

*Attorneys for Plaintiffs James C. Kang,*
*Michael Moses, and the Certified Class*

*Additional Counsel on following page*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES C. KANG, an individual, MICHAEL MOSES, an individual, on behalf of themselves and all others similarly situated, <br>                  Plaintiffs, <br>        v. <br><br> WELLS FARGO BANK, N.A.; and DOES 1 through 10, inclusive, <br><br>             Defendant. <br>_____<br> PATRICIA BARRERAS, an individual, JACQUELINE F. IBARRA, an individual, on behalf of themselves and all others similarly situated, <br>             Plaintiffs, <br><br>        v. <br><br> WELLS FARGO BANK, N.A.; and DOES 1 through 10, inclusive, <br><br>        Defendant. | **Case No. 5:17-cv-06220-BLF** <br><br> **Case No. 5:21-cv-00071-BLF** <br><br><br> **[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

-- 1 --

1

2

3   (continued from previous page)

4   Michael Rubin, SBN 80618
    mrubin@altshulerberzon.com
5   Eileen B. Goldsmith, SBN 218029
    egoldsmith@altshulerberzon,com
6   ALTSHULER BERZON LLP
7   177 Post Street, Suite 300
    San Francisco, CA 94108
8   Telephone: (415) 421-7151
    Facsimile: (415) 362-8064
9
    *Attorneys for Plaintiffs James C. Kang and*
10  *Michael Moses*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs' unopposed Motion for Final Approval of Class Action Settlement and Motion for Attorneys' Fees and Expenses and Class Representative Service Awards came before this Court on _____, 2021. The proposed Settlement in this case was preliminarily approved by this Court on _____, 2021. Pursuant to the Court's Preliminary Approval Order and the Notice provided to the Class, the Court conducted a final fairness hearing as required by Federal Rule of Civil Procedure 23(e). The Court has reviewed the materials submitted by the parties and has heard arguments presented by counsel at the hearing. For the reasons cited on the record as well as those stated hereafter, the Court HEREBY FINDS AND ORDERS as follows:

1. Except as otherwise specified herein, for purposes of this Final Approval Order, the Court adopts all defined terms set forth in the Stipulation of Settlement of Class Action and Release of Claims ("Settlement" or "Settlement Agreement").

2. The Court finds that this action satisfies the requirements of Rule 23 and further finds that the Class has at all times been adequately represented by the Plaintiffs and Class Counsel.

3. The Court HEREBY APPROVES the Class Settlement based upon the terms set forth in the Order Granting Motion for Preliminary Approval and the Settlement Agreement filed by the Parties. The Settlement appears to be fair, adequate, and reasonable to the Class and Subclasses.

4. The Notice approved by the Court was provided by First Class mail to the last known address of each of the individuals identified as Class Members. In addition, reasonable follow-up efforts were made to send the Notice to those individuals whose original notices were returned as undeliverable. The Notice adequately described all of the relevant and necessary terms of the proposed Settlement Agreement, the request for Class Representative service awards to Plaintiffs Kang and Moses, and Class Counsel's motion for an award of attorney's fees and expenses.

5. The Court finds that the Notice given to the Class fully complied with Rule 23, was the best notice practicable, satisfied all constitutional due process concerns, and provides the Court with jurisdiction over the Class Members.

6. Each Class Member who did not timely and validly request exclusion from the Settlement ("Settlement Class Member") shall be bound by the Settlement and all terms and

provisions thereof. The Court finds that the Settlement is rationally related to the strength of Plaintiffs' claims given the risk, complexity, and duration of further litigation. The Court also finds that the Settlement is the result of arms-length negotiations between experienced counsel representing the interests of the Class and Subclasses and Defendant, after conducting appropriate factual and legal investigation. The Court finds that the uncertainty and delay of further litigation strongly supports the reasonableness and adequacy of the non-reversionary $95,696,122.35 Gross Fund Value established pursuant to the Settlement Agreement.

7. Of the identified Class Members who were notified, only [number] individuals have opted out of the Settlement. Only [number] Class Members have objected to any aspect of the proposed settlement. The reaction of the Class to the proposed settlement strongly supports the conclusion that the proposed Settlement is fair, reasonable, and adequate.

8. The Gross Fund Value shall be distributed in accordance with the Settlement Agreement, as detailed in the Motion for Preliminary Approval of Class Action Settlement, granted on _____, 2021.

9. Rust Consulting is appointed as the Settlement Administrator and awarded its fees and expenses not to exceed $50,000. This amount shall be paid from the Gross Fund Value.

10. Named Plaintiffs James Kang and Michael Moses are hereby awarded $10,000 each for their services to the Class and Subclasses and their effort in pursuing this litigation. These amounts shall be paid from the Gross Fund Value.

11. The Court finds that the allocation of $750,000 to civil penalties under the Cal. Labor Code Private Attorneys' General Act ("the PAGA Payment") is fair, reasonable and appropriate, and is HEREBY APPROVED. The PAGA Payment shall be paid from the Gross Fund Value. The Settlement Administrator shall distribute the PAGA Payment as follows: $562,500 to the State of California Labor & Workforce Development Agency, and $187,500 to the Net Fund Value.

12. Pursuant to the common fund doctrine and Cal. Labor Code §§ 218.5 and 2699(g), Class Counsel are awarded $_____ in reasonable attorneys' fees and $_____ in litigation expenses actually incurred in prosecution of this action and *Ibarra*

*v. Wells Fargo Bank, N.A.*, U.S. District Court for the Northern District of California Case No. 5:21-cv-00071-BLF (*"Ibarra"*).  These amounts shall be paid from the Gross Fund Value.  The fee award, which is one-third of the Gross Fund Value, is reasonable under both the percentage-of-the-fund method and a lodestar cross-check, particularly in light of the substantial time and resources Class Counsel devoted to this risky multi-year litigation on a contingency basis, and in light of the extraordinary results obtained through the Settlement.

13. In addition to the Gross Fund Value, Defendant shall pay the employer's share of payroll taxes on the portion of each individual Class Member settlement payment that is allocated to wages pursuant to the Settlement.

14. The Action is hereby DISMISSED WITH PREJUDICE, with each party to bear his, her, or its own costs, except as set forth herein, and with this Court retaining exclusive jurisdiction to enforce the Settlement Agreement, including over disbursement of the Gross Fund Value. If, for any reason, the Effective Date of the Settlement does not occur, this Final Approval Order will be vacated, the Parties will return to their respective positions in this action as those positions existed immediately before the Parties executed the Settlement;, the operative complaint in *Kang* shall be the First Amended Class Action Complaint (Dkt. 64), and the certified class and subclass in *Kang* shall be those certified by this Court in its Order Granting Plaintiff's Motion for Class Certification entered on April 22, 2019 (Dkt. 54).

15.  The following individuals submitted timely and valid exclusions from the Settlement: _____.  These individuals are not bound by the Settlement and have not released any claims against Defendant.

16.  By operation of this Final Approval Order, the Court ENJOINS any Class Member, whether acting directly, in a representative capacity, or in any other capacity, and whether or not any such Class Member has appeared in the litigation, from asserting, instituting or prosecuting in any capacity in any court or governmental agency any claims released in the Settlement against Defendant or any other parties released by the Settlement, unless the Class Member has sent a timely and valid request to be excluded from the Settlement.

17. No later than 21 days after the void date for individual settlement payments to

Settlement Class Members, Plaintiffs shall file a Post-Distribution Accounting in accordance with the United States District Court for the Northern District of California's class action guidelines.

IT IS SO ORDERED.

Dated: _____, 2021                    _____
                                             Hon. Beth Labson Freeman
                                             United States District Judge

1  Joshua H. Haffner, SBN 188652
   (jhh@haffnerlawyers.com)
2  Graham G. Lambert, SBN 303056
   (gl@haffnerlawyers.com)
3  **HAFFNER LAW PC**
   445 South Figueroa Street, Suite 2625
4  Los Angeles, California 90071
   Telephone: (213) 514-5681
5  Facsimile: (213) 514-5682

6  Paul D. Stevens, SBN 207107
   (pstevens@stevenslc.com)
7  **STEVENS, LC**
8  1855 Industrial Street, Suite 518
   Los Angeles, California 90021
9  Telephone: (213) 270-1211
   Facsimile: (213) 270-1223

10

11 *Attorneys for Plaintiffs James C. Kang,*
   *Michael Moses, and the Certified Class*

12 *Additional Counsel on following page*

13            **UNITED STATES DISTRICT COURT**

14           **NORTHERN DISTRICT OF CALIFORNIA**

15

16 | JAMES C. KANG, an individual, MICHAEL    **Case No.  17-cv-06220-BLF**
     MOSES, an individual, on behalf of
17 | themselves and all others similarly situated,   **Case No. 3:21-cv-00071-BLF**
                                Plaintiffs,
18 |                       v.                        **[PROPOSED] JUDGMENT**

19 | WELLS FARGO BANK, N.A.; and DOES 1
     through 10, inclusive,
20

21 |                     Defendant.
   ─────────────────────────────────
22 | PATRICIA BARRERAS, an individual,
     JACQUELINE F. IBARRA, an individual,
23 | on behalf of themselves and all others
     similarly situated,
24 |                                Plaintiffs,

25 |                       v.

26 | WELLS FARGO BANK, N.A.; and DOES 1
     through 10, inclusive,
27 |
                        Defendant.

28

MRH:489526703.1                          -- 1 --

(continued from previous page)

Michael Rubin, SBN 80618
mrubin@altshulerberzon.com
Eileen B. Goldsmith, SBN 218029
egoldsmith@altshulerberzon,com
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064

*Attorneys for Plaintiffs James C. Kang and
Michael Moses*

MRH:489526703.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Court having granted Final Approval of the Parties' Settlement in this case, the case is hereby DISMISSED WITH PREJUDICE, with each Party to bear his/its own costs, except as set forth in the Settlement approved by the Court, with this Court retaining exclusive jurisdiction to enforce the Settlement Agreement, including over disbursement of the Settlement Funds. This is a Final Judgment. The Clerk of the Court shall close this case.

IT IS SO ORDERED.

Dated: _____, 2021

_____
Hon. Beth Labson Freeman
United States District Judge

# EXHIBIT 2



NERA
ECONOMIC CONSULTING

14 July 2015

# Trends in Wage and Hour Settlements: 2015 Update



By **Dr. Stephanie Plancich,
Neil Fanaroff,** and
**Janeen McIntosh**

In wage and hour litigation, current and/or former employees allege unpaid work, including unpaid overtime, failure to provide meals and/or rest breaks, and off-the-clock work. Cases may be brought under state law or under the Federal Fair Labor Standards Act (FLSA). These cases may result in civil settlements or verdicts, as well as in back wages and penalties levied by the Department of Labor (DOL).

In this 2015 Update, we add 27 months of data to our database of civil wage and hour settlements, creating a dataset that spans January 2007 to March 2015. Looking at patterns in this data over time, we found that companies continued to pay substantial amounts to settle lawsuits involving allegations of wage and hour violations. We identified total wage and hour settlement payments of $445 million in 2013, $400 million in 2014, and $39 million through the first three months of 2015, bringing the aggregate amount paid for cases settled since January 2007 to over $3.6 billion. In total, our database contains 613 settlements from January 2007 through March 2015, for an average rate of approximately 75 settlements per year.

Average settlement values were lower in 2014 than in prior years. On average, companies paid $5.3 million to resolve a case in 2014, lower than the observed average of $6.3 million in 2013 and the overall average of $6.9 million for the 2007 to 2015 period. This pattern has continued into the first quarter of 2015; during this period, average settlement values were down to $2.8 million. Median settlement values have similarly declined. The median settlement value was $3.0 million in 2013, the median was $2.4 million in 2014, and the median was just $1.9 million through the first 3 months of 2015. This is below the overall 2007-2015 median of $2.2 million.

*Insight in Economics*™

After controlling for the number of plaintiffs in a case and the number of years in the class period, we found a decreasing trend in the average settlement value per plaintiff per class year— from a peak of $1,475 in 2011 to $686 in 2014 and just $253 through the first three months of 2015.

Historically, the most common allegation in the settlement data related to overtime violations, and this remained true over the past 15 months. In addition, we identified an increase in the proportion of settlements that included allegations of minimum wage violations in 2014 and 2015 relative to prior years.

The number and amount of settlements also vary by industry. In 2014 and 2015, we found an increase in the proportion of settlement dollars spent in the food & food services industry relative to prior years.

We compared our sample of civil wage and hour settlements to concluded actions taken by the DOL's Wage and Hour Compliance division over the past nine years. Over that time period, the DOL reported thousands of investigations, of which 75% resulted in a determination of a violation. Comparing our wage and hour settlement data to the DOL data, we found that nearly 60% of the companies with a wage and hour settlement between 2007 and 2015 had also been investigated by the DOL's Wage and Hour Compliance division. Approximately 25% of the companies in our wage and hour settlement database were found by the DOL to have an FLSA violation, and back wages associated with these violations totaling $19.3 million were paid.[1]

Figure 1. **Over 600 Wage and Hour Cases Have Settled Since 2007**
Settled Wage and Hour Cases by Year
Data as of March 31, 2015



Figure 2. **Average Settlement Values Have Declined in 2014-15, Reversing the 2013 Increase**
Mean Wage and Hour Settlement Amount by Year
Data as of March 31, 2015



Figure 3. **Median Settlement Values Have Declined in 2014-15 Relative to 2013**
Median Wage and Hour Settlement Amount by Year
Data as of March 31, 2015



Figure 4. **More Than Half of Cases Settle for Under $2.5 Million**
Settled Wage and Hour Cases by Settlement Amount
January 2007 – March 2015



## Data and Methodology

Our updated data includes 613 settlements for wage and hour cases, obtained from articles published in *Law360* between 1 January 2007 and 31 March 2015, and a review of the Seyfarth Shaw annual litigation report for 2007 through 2014. When the information available from these sources was incomplete, additional case-specific details were obtained from Factiva. In addition to settlement value, the data extracted includes case-specific information such as industry, allegations, number of plaintiffs, length of class period, and jurisdiction. While this data collection methodology yielded a substantial number of wage and hour settlements, particularly those with large settlement amounts and/or large classes, it is not necessarily comprehensive.

The DOL's Wage and Hour Compliance Data was obtained from the website http://ogesdw.dol.gov/data_summary.php.[2]

## Average Wage and Hour Settlements – Trends per Plaintiff and per Class Period Year

- For approximately 75% of the cases in our database, we were able to determine the number of plaintiffs participating in the settlement; for about 66%, we could determine both the number of plaintiffs and the reported settlement amount.

  – The number of cases with over 10,000 plaintiffs had been decreasing between 2007 and 2013, but increased in 2014, as 16% of settlements were associated with such large classes. The percentage of large settlements remained above 2013 levels in the first three months of 2015.

- On average, the settlement per plaintiff for this subset of cases for which we have plaintiff counts was $5,742. A small proportion of cases—approximately 5%—had settlements averaging over $25,000 per plaintiff, which skews the average upward. The median settlement per plaintiff was lower, at $2,576.

- Cases with more plaintiffs tend to have higher total settlements but lower settlements per person.

- For about 40% of the settlements in our database, we identified the number of plaintiffs in the case, the number of years covered by the settlement, and the settlement amount.

- The median and average duration of a class period in our data were five years. Like cases with more plaintiffs, cases with longer class periods tend to have larger total settlements. However, these cases do not necessarily have higher settlements per class year.

- The vast majority of average settlements were less than $5,000 per plaintiff per class year. The few cases with average settlement amounts per plaintiff per class year above $5,000 were in either the telecommunications/utilities or the financial services/insurance industries and included allegations of misclassification and overtime.

- More recently, the average per plaintiff per class year has dropped substantially, relative to the overall average.

Figure 5. **More Than Half the Cases Have Fewer Than 1,000 Plaintiffs**
Settled Wage and Hour Cases by Number of Plaintiffs
January 2007 – March 2015



Figure 6. **The Proportion of Cases Involving Large Classes Grew in 2014**
Annual Distribution of Settled Wage and Hour Cases by Number of Plaintiffs
Data as of March 31, 2015



Figure 7. **The Average Settlement Value Per Plaintiff Decreased Significantly in 2014, but Increased in the First 3 Months of 2015**
Average Settlement Value Per Plaintiff for Wage and Hour Cases by Settlement Year
Data as of March 31, 2015



Figure 8. **A Large Proportion of Cases Have an Average Settlement Value Per Plaintiff Between $1,000 and $4,999**
Settled Wage and Hour Cases by the Average Settlement Value Per Plaintiff
January 2007 – March 2015



Figure 9. **Less Than 15% of Settled Cases Have a Class Period Greater Than 7 Years**
Settled Wage and Hour Cases by Number of Years in Class Period
January 2007 – March 2015



Figure 10. **The Average Settlement Value Per Plaintiff Per Class Year Has Declined Considerably Since the Peak in 2011**
Average Settlement Value Per Plaintiff Per Class Year for Wage and Hour Cases by Settlement Year
Data as of March 31, 2015





Figure 11. **Few Cases Settle for More Than $5,000 Per Plaintiff Per Class Year**
Settled Wage and Hour Cases  by the Average Settlement Value Per Plaintiff Per Class Year
January 2007 – March 2015

## Case Characteristics

- We identified all the allegations made in the cases in our settlement database and classified these allegations in the following categories:[3]

  - Overtime
  - Off-the-clock
  - Minimum wage violation
  - Donning and doffing
  - Missed meals and breaks
  - Misclassification
  - Tip Pooling

- Many of the cases in our database had multiple allegations—for example, workers frequently claim that alleged off-the-clock work caused them to have minimum wage violations. About 60% of the cases had at least two allegations. Approximately 16% of the cases in our data had an allegation of overtime only, while another 55% included an allegation of overtime in addition to one or more other allegations.

- This pattern of allegations has been relatively steady: as in prior years, overtime allegations dominated in 2014 and 2015. The share of misclassification and off-the-clock allegations were slightly down in 2014 and 2015 compared to earlier years, but the share of minimum wage violation allegations increased.

- We also identified the industries of the settling defendants and found that the most common industries in all years were financial services/insurance, retail, and food & food services. In 2014 and 2015, the most common industry of settling defendants was retail, followed closely by the financial services/insurance and food & food services industries.

- Three industries accounted for more than half of total spending overall in 2014 and 2015. Over the past 15 months, 21% of settlement dollars were paid to workers in the financial services/insurance sector, 19% of settlement dollars were paid to workers in the retail industry, and 17% were paid to workers in the food & food services industry—in total, 57% of spending. Over all years, these three industries comprised 54% of total spending.

- The majority of the cases in the financial services/insurance, retail, and food & food services industries included allegations of overtime.

- The second most frequent allegation in the financial services/insurance industry was misclassification.

- In the retail industry, we saw allegations of overtime violations, off-the-clock work, and missed meals and breaks, as well as misclassification.

- There were relatively few allegations of misclassification in the food & food services industry, but that industry had several other types of alleged violations, including donning and doffing, missed meals and breaks, and off-the-clock work.

- From 2007 – 2015, settlements with defendants in the technology industry were the highest, followed closely by settlements in the financial services/insurance and food & food services industries.

- In 2014 and 2015, as in prior years, the majority of settlement dollars have been paid out in New York and California.



Figure 12a. **Over 40 Percent of Allegations Relate to Overtime Violations**
Allegations in Settled Wage and Hour Cases
January 2007 – March 2015



Figure 12b. **In 2014 and 2015, Overtime Remained the Most Common Type of Allegation**
Allegations in Settled Wage and Hour Cases
January 2014 – March 2015

Figure 13. **The Financial Services/Insurance, Retail, and Food & Food Services Industries are the Most Common Industries for Settlements**
Settled Wage and Hour Cases by Industry of Employer
January 2007 – March 2015



Figure 14a. **Nearly Half of All Total Settlement Dollars Were Paid to Employees in the Retail and Financial Services/Insurance Industries**
Wage and Hour Settlement Dollars by Industry: January 2007 – March 2015



Figure 14b. **Over Half of All Total Settlement Dollars were Paid to Employees in the Retail, Financial Services/Insurance, and Food & Food Services Industries in 2014 & 2015**
Wage and Hour Settlement Dollars by Industry: January 2014 – March 2015



Figure 15. **The Average Settlement Value by Industry Ranged from $2.9 Million to $7.4 Million in 2014 & 2015**
Mean Settlement Values for Wage and Hour Cases by Industry of Employer
January 2014 – March 2015



Figure 16. **The Vast Majority of Settlement Dollars Have Been Paid in New York and California**
Distribution of Settlement Dollars Paid for Wage and Hour Cases by Year and State
Data as of March 31, 2015



## Notable Recent Settlements

Although no recent settlements were outside of the historical range observed in our database, a few notable cases had settlement values over $20 million in the last 15 months:

- Brinker Restaurant Corp. – $56.5 million. The case included 108,000 workers who alleged wage and hour violations. Because of the large class, the average settlement value per plaintiff was just $523.

- City of Los Angeles – $26 million. The case included 1,074 trash truck drivers who alleged meal and rest break violations. The average settlement value per plaintiff was $24,209.

- Walgreen Co. – $23 million. The case included 40,000 workers who alleged that they were denied overtime and meal and rest breaks. Because of the large class, the average settlement value per plaintiff was $575. Further, the class period lasted seven years, so the average settlement value per plaintiff per class year was just $82.

- Schneider Logistics Transloading and Distribution Inc. – $21 million. Plaintiffs asserted that they were denied overtime and minimum wage.

## DOL Public Wage and Hour Data

The data NERA compiled are public civil wage and hour cases. Another source of data on wage and hour activity comes from the U.S. Department of Labor, which reports statistics on their investigations, violations, and back wage payments related to wage and hour issues. The data spans all concluded actions since 2007 and includes variables such as indicators for whether violations were found, whether the violations were FLSA, and the amount of back wages, if any, agreed to be paid by the employer.

According to the DOL's public data, the DOL has completed over 150,000 investigations since 2007. Of these:

- Over 115,000 resulted in findings of violations.

- 56% of the investigations found violations that included back wage payments, while 8% found violations that included some kind of penalty.

- Over 60% of the investigations were found to have an FLSA violation, and nearly half of the investigations resulted in an FLSA violation that included back wage payments.

- 90% of back wage payments included an overtime violation.

- The states with the most DOL cases were Texas, California, Florida, and New York. These four states accounted for 35% of all investigations and violations since 2007.

- In the aggregate, back wages paid for cases with DOL wage and hour enforcement violations was $1.55 billion over the six years, with an additional $75 million assessed as civil money penalties.

Figure 17. **Approximately Half of All Investigations Resulted in FLSA Violations with Back Wages or Civil Money Penalties**
Distribution of All Concluded DOL Wage and Hour Compliance Investigations 2007 – 2015



Figure 18. **Nearly 90% of Cases Resulting in Back Wages Paid for FLSA Violations Included an Overtime Violation**
Distribution of Back Wages Agreed to Pay for FLSA Violations for Concluded DOL Wage and Hour Compliance Investigations



Figure 19. **California, Florida, New York, and Texas Accounted for Over One Third of the FLSA Violations Found**
Distribution of FLSA Violations Following DOL Wage and Hour Compliance Investigations Across Regions
2007 – 2015



Figure 20. **Average Back Wages Agreed to Under FLSA in California, New York, and Texas were Above the National Average**
Average Back Wages Agreed to Pay Under FLSA Following DOL Wage and Hour Compliance Investigations by Region
2007 – 2015



## Comparing DOL and NERA Wage and Hour Data

Many of the allegations related to FLSA violations are the same as those brought in state court wage and hour civil litigation. To see if there was overlap in the defendants settling civil cases with those found to have FLSA violations by the DOL, we matched our wage and hour settlement database to the DOL's violation list.

Given the available data, it is not possible to do a one-to-one map of each investigation to each settlement. However, we can identify and match the defendant companies in both databases. In other words, starting with our wage and hour settlement data companies, we looked to see if any of these companies were listed in the DOL data during the January 2007 – March 2015 period.[4]

We found that 59% of the defendants in our database with a settled wage and hour civil case during this time period also had a DOL investigation. Of those, 21% were found to have a non-FLSA related violation and 44% were found to have at least one FLSA violation. In total, 60% of the companies with wage and hour settlements either had no investigation or were found to have no violation.

For the defendants with an FLSA violation, 86% paid at least some back wages to employees. 53% of these were for overtime, 26% were for overtime and minimum wage, and 7% were for minimum wage only.

Figure 21. **Two-Thirds of the Companies with a Wage and Hour Settlement Between 2007 and 2015 Had a DOL Investigation; Over 25 Percent Had an FLSA Violation**
Distribution of Concluded DOL Wage and Hour Compliance Investigations for Companies with Wage and Hour Settlement



Companies with No Investigation, 41%

Companies with FLSA Violation, 26%

Companies with Violation, but Not FLSA, 13%

Companies with an Investigation, but No Violation, 20%

- Companies with FLSA Violation
- Companies with Violation, but Not FLSA
- Companies with an Investigation, but No Violation
- Companies with No Investigation

Figure 22.  **Approximately 80% of the Companies with a Wage and Hour Settlement Between 2007 and 2015 were Found by the DOL to Have an Overtime Violation**
Distribution of Back Wages Agreed to Pay for FLSA Violations for Concluded DOL Wage and Hour Compliance Investigation



Legend:
- Overtime
- Overtime and Minimum Wage
- Minimum Wage
- No Back Wages Paid

## Endnotes

[1]  We thank Mary Elizabeth Stern for her peer review and Tanner Baker, Christopher Dederick, Matthew Fisher, Wendy Magaronga, Yingtian Yang, and Richelle Zheng for additional research assistance.

[2]  Also, due to incomplete information, reported statistics exclude the *Wal-Mart Multi-District Litigation* settlement in 2008, which resolved 63 wage and hour class action cases for over $600 million.

[3]  There are a handful of cases with "Other" allegations that were not captured by these categories.

[4]  This restriction exists because a company may show up multiple times in either database, so there is no definitive way to tie an investigation to a specific settlement. Furthermore, no open or close dates exist in the DOL data, so there is no way to effectively approximate which DOL investigation is related to which settlement.



## About NERA

NERA Economic Consulting (**www.nera.com**) is a global firm of experts dedicated to applying economic, finance, and quantitative principles to complex business and legal challenges. For over half a century, NERA's economists have been creating strategies, studies, reports, expert testimony, and policy recommendations for government authorities and the world's leading law firms and corporations. We bring academic rigor, objectivity, and real world industry experience to bear on issues arising from competition, regulation, public policy, strategy, finance, and litigation.

NERA's clients value our ability to apply and communicate state-of-the-art approaches clearly and convincingly, our commitment to deliver unbiased findings, and our reputation for quality and independence. Our clients rely on the integrity and skills of our unparalleled team of economists and other experts backed by the resources and reliability of one of the world's largest economic consultancies. With its main office in New York City, NERA serves clients from more than 25 offices across North America, Europe, and Asia Pacific.

## Contact

For further information and questions, please contact the author:

**Dr. Stephanie Plancich**
Vice President
+1 212 345 7719
stephanie.plancich@nera.com

*The opinions expressed herein do not necessarily represent the views of NERA Economic Consulting or any other NERA consultant. Please do not cite without explicit permission from the author.*

EXHIBIT 3

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV15-08187 JAK (JEMx) | Date | March 22, 2019 |
| Title | Sergio Gutierrez v. Stericycle, Inc. | | |

| | |
|---|---|
| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
| Andrea Keifer | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

| | |
|---|---|
| Proceedings: | (IN CHAMBERS) ORDER RE PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEY FEES, COSTS AND CLASS REPRESENTATIVE ENHANCEMENTS (DKT. 71) |

I. <u>Introduction</u>

On August 14, 2014, Sergio Gutierrez ("Gutierrez") brought this class action in the Los Angeles Superior Court against Stericycle, Inc. ("Defendant," "Stericycle"). *See* Complaint ("Compl."), Dkt. 1-1. Subsequently, Gutierrez passed away, and on August 28, 2015, a First Amended Complaint ("FAC") substituted Kenneth Moniz ("Moniz") and Kevin Henshaw ("Henshaw") (collectively, "Plaintiffs") for Gutierrez as class representatives. *See* Notice of Removal, Dkt. 1 at 2; FAC, Ex. B to Notice of Removal, Dkt. 1-31. The claims advanced in the FAC are based on allegations that Stericycle violated certain wage and hour statutes with respect to its California employees. FAC ¶¶ 1-6. Stericycle removed the action on October 19, 2015. Dkt. 1.

On November 21, 2017, the parties reached a settlement. Dkt. 67-1 at 6. On February 5, 2018, the plaintiffs filed an unopposed Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Motion"). Dkt. 67. On October 24, 2018, the Preliminary Approval Motion was granted. Dkt. 70 ("Preliminary Approval Order"). The Preliminary Approval Order reduced the incentive awards for the class representatives and deferred a determination of the reasonableness of the request for an award of attorney's fees to counsel for plaintiffs and the class. *Id.* at 23, 25.

On February 4, 2019, Plaintiffs filed a Motion for Final Approval of Class Action Settlement, Attorney Fees, Costs and Class Representative Enhancements (the "Motion"). Dkt. 71. Defendants did not oppose the Motion. A hearing on the Motion was held on March 4, 2019, and following supplemental briefing it was taken under submission. *See* Dkts. 74, 75.

The Preliminary Approval Order includes a detailed discussion of the factual background of this action. It also addresses the details of the settlement, the basis for a determination that the proposed class should be certified for settlement purposes, and that the settlement should be approved, subject to a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-08187 JAK (JEMx) | Date | March 22, 2019 |
|---|---|---|---|
| Title | Sergio Gutierrez v. Stericycle, Inc. | | |

later assessment of the request for an award of attorney's fees. That order is incorporated by this reference.

For the reasons stated in this Order, the Motion is **GRANTED**.

II.     <u>Summary of Settlement and Notice</u>

A Stipulation of Class Settlement and Release (the "Settlement") was attached to the Preliminary Approval Motion. *See* Settlement, Dkt. 67-3. A brief summary of the Settlement provisions, including the amendment made to the incentive awards pursuant to the Preliminary Approval Order, is also provided in the Motion (Dkt. 71-1 at 9-11). Certain material elements of the Settlement are discussed in the following portion of this Order.

    A.     Class Definition

For purposes of the Settlement, the certified class ("Class") is defined as follows:

> All non-exempt hourly employees who worked for Stericycle in California at an[y] time between August 14, 2010 and September 18, 2017, except the class shall not include: (1) members of the settlement class in the class action *Butler v. Stericycle, Inc.*; (2) any non-exempt employees who worked for Stericycle in California but was hired on or after April 1, 2017; (3) any other individuals who have filed their own lawsuits asserting any of the claims raised in the *Gutierrez v. Stericycle, Inc.* lawsuit; or (4) any Class Member who entered into a general release as part of a settlement of a lawsuit.

Settlement ¶ 3. The parties added the following language in the Proposed Order and Judgment (Dkt. 71-11): "[t]he class shall also exclude weeks worked by employees that were released pursuant to individual settlement agreements that Stericycle entered into with certain current and former employees in or about September 2015." *See also* Dkt. 71-1 at 10 (describing the class period as "excluding periods covered by Pick Up Stix releases").

    B.     The Class Period

The Settlement defines the class period as August 14, 2010 through September 18, 2017. Settlement ¶ 3; Dkt. 71-1 at 10.

    C.     Payments to Class Members

The Settlement provides for a Gross Fund Value ("GFV") of $2,000,000, which Stericycle has agreed to pay to settle all claims at issue between the parties. Settlement ¶ 10; Dkt. 71-1 at 9. The Settlement provides that certain amounts, including attorney's fees and litigation costs, administration expenses, incentive awards to representatives of the Class and PAGA payments, will be paid from the GFV. Settlement ¶ 9; Dkt. 71-1 at 9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-08187 JAK (JEMx) | Date | March 22, 2019 |
|----------|--------------------------|------|----------------|
| Title | Sergio Gutierrez v. Stericycle, Inc. | | |

'The parties agree that an additional $460,000 will be deducted from the GFV as a credit for "the amount Stericycle has paid to individual class member[s] who have previously entered into an individual settlement agreement of wage and hour claims under which that class member received a payment." Settlement ¶ 9; Dkt. 71-1 at 9. The remaining Net Fund Value ("NFV") will be distributed to the Class. Settlement ¶ 11(e).

The NFV will be approximately $965,214.60. Dkt. 71-1 at 9. It will be distributed proportionally based on the "number of work shifts each class member worked in a [C]lass position" during the [C]lass period. Settlement ¶ 11(h); Dkt. 71-1 at 9-10.

Following the Preliminary Approval Order, 1,715 class members received notice of the settlement, and were provided with the opportunity to object to the settlement or to opt out of the Class. No class members objected, and one class member opted out. Declaration of Abigail Schwartz ("Schwartz Decl."), Dkt. 71-3 ¶ 15. Consequently, there are 1,714 members of the Class (99.94%), who are participating in the settlement. The average amount of the individual settlement payments is $563.73, with an estimated maximum payment of $3,229.23. *Id.* ¶¶ 15, 17.

        D.     Deductions from the GFV

As noted, the Settlement provides for certain deductions from the GFV in order to calculate the NFV that will be distributed among the Class. This calculation is summarized in the following table:

**Table A: Net Fund Value**

| | Amount | Percent of GFV |
|---|--------|----------------|
| **Gross Fund Value ("GFV")** | **$2,000,000** | **100%** |
| Attorneys' Fees and Costs | ($500,000) | 25% |
| Litigation Costs | ($23,935) | 1.2% |
| Enhancement Award to Moniz | ($5,000) | 0.25% |
| Enhancement Award to Henshaw | ($5,000) | 0.25% |
| Settlement Administration Costs | ($29,600) | 1.48% |
| PAGA Payment[1] | ($11,250) | 0.56% |
| Credit for Settlement Sums Already Paid | ($460,000) | 23% |
| **Net Fund Value ("NFV")** | **$965,215** | **48.2%** |

There have been no material changes to the amounts set forth in Exhibit A since the Preliminary Approval Order.[2]

---

[1] The parties have allocated $15,000 for the payment of claims under PAGA. The state will receive a 75% share ($11,250). The remaining $3,750 will be allocated to the NFV. Settlement ¶ 11.

[2] The following changes have been made since the issuance of the Preliminary Approval Order: (i) litigation costs are $2,065 less than the amount approved in that order; and (ii) settlement administration costs are $3,089 more than the amount approved there. This results in a net decrease of $1,024 to the NFV.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-08187 JAK (JEMx) | Date | March 22, 2019 |
|---|---|---|---|
| Title | Sergio Gutierrez v. Stericycle, Inc. | | |

E.    Notice Plan

The Settlement provided for notice to members of the Class. Settlement. ¶¶ 14-15. The text of the proposed notice was submitted with the Settlement. Ex. A to Settlement, Dkt. 67-3 at 25-28. Counsel approved a formatted version of this notice, which was sent on November 20, 2018, by first-class mail, to all members of the Class. Schwartz Decl. ¶¶ 6-9; *see also* Dkt. 72 (a copy of the notice as mailed).

Class members were notified of their right to opt out of, object to, or dispute the settlement by mailing a notice within 45 days. Settlement ¶ 16; Schwartz Decl. ¶ 9. As of January 4, 2019, one member of the Class had opted out (0.06% of the class members to whom a Notice was mailed). Schwartz Decl. ¶ 15. No objections were received. *Id.* ¶ 16. Additionally, of the 1,715 Notices sent, there are 22 class members (1.28%) whose Notices were returned as undeliverable and for whom no updated or forwarding address could be located. *Id.* ¶ 10.

F.    Release of Claims

As stated in the Preliminary Approval Order, the Settlement provides that upon final approval of the Settlement, the Settlement Class and each class member who has not opted out will release Stericycle from "any and all claims asserted in the operative Complaint and any other claims based on the same cited statutes or underlying facts." Settlement ¶ 21. The release applies to "any claims arising within the scope of the Lawsuit up through November 30, 2017." *Id.* However, members of the Class are not required to release other claims, including "claims outside the Class Period, claims for unemployment insurance, wrongful termination, hostile work environment, Title VII, FEHA, and disability and workers' compensation." *Id.* The Settlement also provides that the named Plaintiffs, after receiving their incentive awards, waive all rights and benefits under Cal. Civ. Code § 1542, *i.e.*, all claims even if they were not known or suspected to exist at the time of the release. *See id.* ¶ 22.

**III.    Analysis**

A.    Class Certification

The Preliminary Approval Order included a detailed analysis of the basis for certification of the Class for purposes of settlement. Dkt. 70 at 7-13. The size of the class has since increased from approximately 984 to 1,715. This ratifies the prior analysis as to numerosity. There have been no other material changes to the Rule 23 factors. Therefore, for the reasons stated in the Preliminary Approval Order, the Motion is **GRANTED** as to certification of the Class.

B.    Final Approval of the Settlement Agreement

1.    Legal Standards

Fed. R. Civ. P. 23(e) requires a two-step process in considering whether to approve the settlement of a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-08187 JAK (JEMx) | Date | March 22, 2019 |
|----------|--------------------------|------|----------------|
| Title | Sergio Gutierrez v. Stericycle, Inc. | | |

class action. *First*, a court must make a preliminary determination whether the proposed settlement "is fundamentally fair, adequate, and reasonable." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003)). *Second,* if preliminary approval is granted, class members are notified, and any objections by members of the Class are reviewed, a court determines whether final approval of the settlement should be granted by applying several criteria.

At the final approval stage, a court must consider "the fairness of a settlement as a whole, rather than assessing its individual components." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818-19 (9th Cir. 2012). The following non-exclusive factors are among those that may be considered during both the preliminary and final approval processes:

> (1) the strength of the plaintiff's case;
> (2) the risk, expense, complexity, and likely duration of further litigation;
> (3) the amount offered in settlement;
> (4) the extent of discovery completed and the stage of the proceedings;
> (5) the experience and views of counsel;
> (6) any evidence of collusion between the parties; and
> (7) the reaction of the class members to the proposed settlement.

*See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458-60 (9th Cir. 2000).

Each factor does not necessarily apply to every class action settlement, and others may also be considered. For example, courts often consider whether the settlement is the product of arms' length negotiations. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."). As noted, the ultimate question is whether the settlement is "fair, adequate, and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F. 3d 1101, 1027 (9th Cir. 1998).

> 2. <u>Application</u>

> a) In General

The Preliminary Approval Order considered the relevant factors in detail and concluded that the strength of the plaintiff's case, the risks and expense of further litigation, the extent of discovery completed, the experience and views of counsel, and the lack of evidence of collusion between the parties all weighed in favor of granting approval. Dkt. 70 at 15, 20-22.[3] No new information has been

---

[3] In December 2018, after the Preliminary Approval Order was issued, Rule 23(e) was amended. The Settlement satisfies the requirements of the amended Rule 23 for the same reasons that it satisfied the previous version. This conclusion is consistent with the comments of the Advisory Committee, that "[t]he goal of [the] amendment [was] not to displace any factor" that would have been relevant prior to the amendment, but rather to address inconsistent "vocabulary" that had arisen among the circuits and "to focus the court and the lawyers on the core concerns" of the fairness inquiry.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-08187 JAK (JEMx) | Date | March 22, 2019 |
|----------|---------------------------|------|----------------|
| Title | Sergio Gutierrez v. Stericycle, Inc. | | |

presented that would change these conclusions. However, in the Preliminary Approval Order the reaction of class members was unknown, and final determination of the amount of the settlement as well as the award of attorney's fees, was deferred.

> b) Reaction of the Class Members

As discussed above, members of the Class could opt out of or object to the Settlement by sending a notice within 45 days. Settlement ¶ 16; Schwartz Decl. 9. As of January 4, 2019, one had opted out, and none had objected. This is an opt-out rate of approximately 0.06% percent. A low proportion of opts outs and objections "indicates that the class generally approves of the settlement." *In re Toys R Us-Delaware, Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 456 (C.D. Cal. 2014) (citing cases); *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.").

Accordingly, this factor weighs in favor of approval of the Settlement.

> c) Amount Offered in Settlement

The Preliminary Approval Order discussed in detail the amount of the Settlement. *See* Dkt. 70 at 15-20. The Order noted, however, that the analysis would be renewed in connection with the Motion for Final Approval.

> (1) "Pick Up Stix" Settlements

After this action was filed on August 14, 2014, Defendant "offered individual settlements to individuals who will fall within the Settlement Class pursuant to *Chindarah v. Pick Up Stix, Inc.*" Dkt. 71-1 at 9; *see also Chindarah v. Pick Up Stix, Inc.*, 171 Cal. App. 4th 796 (2009). Defendant paid "$460,000 to class members" ("Individual Settlements") as part of this process. Dkt. 71-1 at 9.Those who received Individual Settlements may also benefit from the Settlement, insofar as they "will receive money for all of their work shifts worked after the time period covered by their individual settlement agreement." Dkt. 67-1 at 8-9.

The parties later agreed that the total amount of the Individual Settlements would be included in the Settlement GFV. Dkt. 71-1 at 9. Therefore, although the "settlement is for a total amount of $2,000,000," that includes a $460,000 "credit" for Individual Settlements. *Id.*

As previously noted, there is no showing that there was any impropriety that led to any of the Individual Settlements. Dkt. 70 at 17. However, supplemental briefing addressed whether the Individual Settlements are properly included within the GFV. *See* Dkts. 74, 75. The details of the Individual Settlements, which approximately 717 individuals entered, were also provided. Dkt. 75 ¶ 3. These individuals received approximately $5.68 per work week, compared to approximately $7.98 per work week payable under the Settlement with the Class. *Id.* This represents a 40% premium for class

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-08187 JAK (JEMx) | Date | March 22, 2019 |
|---|---|---|---|
| Title | Sergio Gutierrez v. Stericycle, Inc. | | |

members. This mitigates concerns as to the appropriateness of the Individual Settlements.

Including Individual Settlements within the GFV effects a reduction in the NFV, due to the deduction of attorney's fees based on a percentage of GFV. Class Counsel argue that such an award is warranted pursuant to the "catalyst theory," discussed below in connection with the fee award. Although there is no applicable, appellate authority, Class Counsel cite decisions in several California Superior Court actions in which Pick Up Stix settlements were included in the value of class action settlement funds. *See, e.g., Sforza v. Go Wireless, Inc*, No. BC636573 (Cal. Super. Ct. 2019), Dkts. 75-4, 75-5, (approving a settlement amount of $2,100,000 inclusive of $700,000 in separately-settled claims); *Goodwin v. CSI at PH, LLC*, No. 30-2016-00844674 (Cal. Super. Ct. 2018), Dkt. 75-6 (approving a settlement of $525,000 "subject to a credit for monies previously paid . . . into Pick Up Stix settlement agreements"); *Gutierrez v. Southern Countries Oil Co.*, No. 37-2017-00040850 (Cal. Super. Ct. 2018), Dkts. 75-7, 75-8 (approving a settlement of $1,912,500 inclusive of "amounts paid by Defendants to current employees after it [sic] was served with Plaintiff's LWDA notice"). In all cases, inclusion was permitted notwithstanding a calculation of attorney's fees based on the GFV.

For all of the foregoing reasons, and those stated in the Preliminary Approval Order, the monetary amount of the Settlement is appropriate.

(2)  Sufficiency of Monetary Damages

The Preliminary Approval Order included a detailed analysis of the sufficiency of the monetary damages award. Dkt. 70 at 18-20. This analysis assumed an NFV of $966,239. In light of the reduced incentive awards and other minor changes discussed above, the NFV is $965,215. There is no material change in the amount of damages paid, or the benefits received by members of the Class. Therefore, and for the reasons stated in the Preliminary Approval Order, the amount of damages paid is reasonable.

\*                              \*                              \*

For the foregoing reasons, and those stated in the Preliminary Approval Order, the Settlement Agreement is sufficiently fair, reasonable and adequate to warrant final approval. Accordingly, the Motion is **GRANTED** as to final approval of the Settlement.

C.  PAGA Payment

The Preliminary Approval Order included a detailed analysis of the PAGA award, and concluded that it was appropriate. Dkt. 70 at 22. There have been no material changes that would affect that analysis. Therefore, for the reasons stated in the Preliminary Approval Order, the Motion is **GRANTED** as to the PAGA award.

D.  Incentive Awards

The Preliminary Approval Order included a detailed analysis of the incentive awards to each of the two

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-08187 JAK (JEMx) | Date | March 22, 2019 |
|---|---|---|---|
| Title | Sergio Gutierrez v. Stericycle, Inc. | | |

named Plaintiffs, and determined the awards should be reduced to $5,000. *Id.* at 22-23. There have been no material changes that would affect that analysis, and the reduced amount has been adopted in the Motion. Dkt. 71-1 at 11; *see also* Declarations of Kevin Henshaw and Kenneth Moniz, Dkts. 71-9 ¶ 13; 71-10 ¶ 13 (accepting the reduced award). Therefore, for the reasons stated in the Preliminary Approval Order, the Motion is **GRANTED** as to $5,000 incentive awards to Moniz and Henshaw.

      E.     Attorney's Fees and Costs

The Preliminary Approval Order deferred a decision on the appropriateness of the attorney's fees until the Final Fairness hearing. This approach was adopted to permit the review of further evidence from Class Counsel and any responses from members of the Class in response to the notice that followed the Preliminary Approval Order. Dkt. 70 at 24-25.

      1.    Legal Standards

Attorney's fees and costs "may be awarded in a certified class action where so authorized by law or the parties' agreement." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). However, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Id.*; *see also* Fed. R. Civ. P. 23(h). "If fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have [been] obtained." *Staton* , 327 F.3d at 964. Thus, a district court must "assure itself that the fees awarded in the agreement were not unreasonably high, so as to ensure that the class members' interests were not compromised in favor of those of class counsel." *Id.* at 965. Factors considered in examining the reasonableness of the fee include: (1) whether the results achieved were exceptional; (2) risks of litigation; (3) non-monetary benefits conferred by the litigation; (4) customary fees for similar cases; and (5) the contingent nature of the fee and financial burden carried by counsel. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002).

In common fund cases, a district court has discretion to choose either "the percentage-of-the- fund or the lodestar method" to assess the reasonableness of requested attorney's fees. *Id.* at 1047. When the percentage-of-fund method is chosen, 25% of the total settlement amount is the "benchmark." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 273 (9th Cir. 1989). Any amount between 20-30% is within the "usual range." *Vizcaino*, 290 F.3d at 1047. That amount may be "adjusted upward or downward to account for any unusual circumstances involved in [the] case." *Paul*, 886 F.2d at 272. Although 25% is the "starting point," it may in some cases constitute a windfall for counsel. *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002). For this reason, the selection of the benchmark or any other rate "must be supported by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. If a court elects to employ a percentage-of-fund method, it may "cross-check" this amount by calculating the lodestar. *Id.* at 1050. "Thus, while the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award." *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-08187 JAK (JEMx) | Date | March 22, 2019 |
|---|---|---|---|
| Title | Sergio Gutierrez v. Stericycle, Inc. | | |

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth,* 654 F.3d at 941. After the lodestar amount is determined, a trial court "may adjust the lodestar upward or downward using a 'multiplier' based on factors not subsumed in the initial calculation of the lodestar." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). A court has discretion to "adjust the lodestar upward or downward using a multiplier that reflects a host of reasonableness factors, including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Stetson v. Grissom*, 821 F.3d 1157, 1166-67 (9th Cir. 2016) (internal quotation marks and citation omitted).

      2.   <u>Application</u>

         a)   Attorney's Fees

Plaintiffs and members of the Class have been represented by The Barnes Firm and the Majarian Firm. *See* Settlement ¶ 4. The Settlement provides for an award to Class Counsel not to exceed 25% of the GFV. *See id.* ¶ 11(a). Counsel declare that the 25% rate is reasonable based on the benchmarks for awards of attorney's fees approved in prior Ninth Circuit decisions. *See* Dkt. 71-1 at 11-15; Declaration of Kevin T. Barnes ("Barnes Decl.") ¶ 11; *see also Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 448 (E.D. Cal 2013) ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20 percent to 33.3 percent of the total settlement value, with 25 percent considered a benchmark percentage.").

Class Counsel declare that, in addition to the monetary benefits to the Class, Defendant has also agreed to change its policies in a manner that will benefit members of the Class who remain employed with Defendant. Barnes Decl., Dkt. 71-2 ¶ 10. Defendant will be "ending its rounding practice," "standardizing all of its meal and rest break policies to comply with California law," and "chang[ing] its pay policy so that all non-discretionary bonuses are included in the regular rate for purposes of overtime calculations." *Id.* Such changes support an award of attorney's fees under a "catalyst theory," pursuant to which "attorney fees may be awarded even when litigation does not result in a judicial resolution if the defendant changes its behavior substantially because of, and in the manner sought by, the litigation." *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 560 (2004). Class Counsel argue that this theory provides further support for the maximum award: 25% of the GFV of $2,000,000, or $500,000. Dkt. 71-1 at 23. As discussed above, the GFV includes $460,000 in Individual Settlements.

Class Counsel did not represent those members of the Class who entered Individual Settlements. Nor were those settlements reached as part of the resolution of this action. Dkt. 74 at 2. However, Class Counsel state, and defense counsel do not dispute, that the Individual Settlements were "a direct attempt" by Defendant to minimize its liability. *See* Dkt. 71-1 at 9. They were prompted by the pendency of this action. Thus, Class Counsel argue that inclusion of Individual Settlements within the GFV is justified for purposes of fee award calculation.

There is evidence here that, but for the effort of Class Counsel in bringing this action, which they did on a contingency basis, the Individual Settlements would not have been offered. There is some support for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-08187 JAK (JEMx) | Date | March 22, 2019 |
|---|---|---|---|
| Title | Sergio Gutierrez v. Stericycle, Inc. | | |

this position in several California cases in which fee awards have been based on the combined value of class and individual settlements. *See, e.g., Sforza*, No. BC636573, Dkts. 75-4 ¶ 6, 75-5 at 10-11 (awarding $700,000 as "compensation for all attorney time spent on this matter from inception," which was one-third of a settlement of $2,100,000 inclusive of $700,000 in Pick Up Stix settlements); *Goodwin*, No. 30-2016-00844674, Dkt. 75-6 ¶ 9 (awarding $175,000, which was one-third of a settlement of $525,000 inclusive of Pick Up Stix settlements); *Gutierrez*, No. 37-2017-00040850, Dkts. 75-7 ¶ 12; 75-8 at 9 (awarding $637,500, which was one-third of a settlement of $1,912,500 inclusive of individual settlements).

Accordingly, and in light of the absence of any objections by members of the Class, an attorney's fee award based on the entire GFV is appropriate. As discussed above and in the Preliminary Approval Order, a 25% contingency fee is the "benchmark," and has been approved in similar actions. Pursuant to *Vizcaino*, 290 F.3d at 1050, this figure is subject to a cross-check through the lodestar process.

(1)     <u>Time Spent by Class Counsel</u>

Counsel submitted evidence, which included time records, to support the proposed fee award. *See* Ex. 3 to the Barnes Decl., Dkt. 71-5. These records reflect that three attorneys -- Kevin Barnes ("Barnes"), Gregg Lander ("Lander"), and Sahag Majarian ("Majarian") – together worked 448 hours litigating the action. *Id.*; *see also* Barnes Decl. ¶ 17. The evidence also reflects that the respective hourly rates of Barnes, Lander, and Majarian at the relevant time were $750, $650, and $700, respectively. This resulted in a lodestar of $317,000. *See* Ex. 3 to Barnes Decl, Dkt. 71-5.

(2)     <u>Hourly Rates</u>

In determining a reasonable hourly rate, "[t]he fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Jordan v. Multnomah Cty.*, 815 F.2d 1258, 1263 (9th Cir. 1987).

The attorneys who worked on this matter have substantial experience in complex employment litigation. *See* Barnes Decl., Dkt. 71-2 ¶ 7 (citing more than 20 prior wage-and-hour class actions in which Barnes served as lead or class counsel); *id.* ¶ 16 ( Lander has worked "almost exclusively" on wage-and-hour actions since 2001); *see also* Declaration of Sahag Majarian II ("Majarian Decl."), Dkt. 71-8 ¶¶ 2-3 (citing "no less than 50 wage and hour class actions" in which Majarian has served as co-class counsel). Class Counsel also identify other California wage-and-hour class actions from in which hourly rates of $650 or more were approved for lawyers with about 20 years of experience. Barnes Decl., Dkt. 71-2 ¶ 20; Declaration of Richard M. Pearl ("Pearl Decl."), Dkt. 71-7 ¶ 9. Class Counsel declare that each has been practicing in this field for approximately 20 years. Barnes Decl., Dkt. 71-2 ¶¶ 2, 16; Majarian Decl., Dkt. 71-8 ¶ 2. Class Counsel also provide information as to 2002 billing rates for five large California law firms. Ex. 4 to Barnes Decl., Dkt. 71-6. Four of these firms have billing rates for partners of up to $600-850 per hour. *Id.*

Finally, Plaintiffs have submitted evidence that supports the hourly rate ($750) charged by Barnes. *See*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-08187 JAK (JEMx) | Date | March 22, 2019 |
|---|---|---|---|
| Title | Sergio Gutierrez v. Stericycle, Inc. | | |

Barnes Decl, Dkt. 71-2 ¶ 4. Barnes has been highly rated as a lawyer in wage and hour matters by the *Daily Journal*, and has been selected by peers as in the top 5% of counsel in this field. *Id.*

Based on the evidence that has been presented, as well as the Court's familiarity with hourly rates that are charged within this District, the proposed rates are reasonable.

(3)     Hours Billed

The billing records that have been submitted describe tasks performed by each attorney. They include the corresponding amount of time spent on each task, and the resulting charge based on the number of hours worked multiplied by the applicable hourly rate. *See* Ex. 3 to Barnes Decl., 71-5. The records are summarized in the following table:

**Table B: Attorney Billing**

| Attorney | Hours | Billing Rate | Total |
|---|---|---|---|
| Kevin Barnes | 240.9 | $750 | $180,675 |
| Gregg Lander | 172.9 | $650 | $112,385 |
| Sahag Majarian II | 34.2 | $700 | $23,940 |
| **Total** | **448** | **$707.59** | **$317,000** |

The requested award of $500,000 represents a performance multiplier of approximately 1.58 over the $317,000 Lodestar amount ($500,000 / $317,000 = 1.58).

As noted in the Preliminary Approval Order:

> Whether an award greater than the lodestar is warranted in this action turns on several factors. They include that counsel have substantial experience in wage and hour litigation and represented the Class on a contingency basis thereby taking the risk that they might not receive any payment for their services of the $26,000 in cost[s] that were incurred. They also achieved a substantial benefit for members of the Class, both with respect to immediate monetary relief and policy changes. Finally, a 25% contingency fee has been approved in similar actions.

Dkt. 70 at 25.

These factors support an award of $500,000. A lodestar multiplier of three to four has been applied in prior cases. See, e.g., *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal.1995) ("Multipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action litigation."). *Martin v. FedEx Ground Package Sys., Inc.*, 2008 WL 5478576, at *8 (N.D. Cal. Dec. 31, 2008), approved a multiplier of 1.48, and described it as "reasonable, indeed on the low side." For these reasons, the requested multiplier is appropriate.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV15-08187 JAK (JEMx) | Date | March 22, 2019 |
| Title | Sergio Gutierrez v. Stericycle, Inc. | | |

\*                    \*                    \*

For the foregoing reasons, the Motion is **GRANTED** as to a fee award of $500,000.

        b)     Costs

The Final Settlement also provides for an award of costs of $23,935, which were incurred by Class Counsel. Barnes Decl. ¶ 14. To support this award, Class Counsel submitted evidence as to this amount. Ex. 2 to Barnes Decl., Dkt. 71-4. These costs are summarized in the following table:

**Table C: Costs**

| Item | Cost |
|---|---:|
| Court Costs | $119.00 |
| Filing Fees | $3,075.08 |
| Parking | $54.00 |
| JAMS Arbitration/Mediation Fees | $4,200.99 |
| Data Search | $8,293.00 |
| Expert Fees | $5,750.00 |
| Court Reporter Fees | $427.13 |
| Federal Express | $286.59 |
| Travel (Mediation) | $929.58 |
| Scanning, Copying, and Postage | $246.82 |
| **Total** | **$23,380.40** |

The requested costs are reasonable and were necessary. Accordingly, the Motion is **GRANTED** as to an award of costs of $23,380.40.

        F.     Class Representatives and Class Counsel

The Preliminary Approval Order included a detailed analysis of the suitability of Moniz and Henshaw as representatives of the Class. It also discussed the qualifications of the Barnes Firm and Majarian to serve as Class Counsel. Dkt. 70 at 25. There have been no material changes that would affect that analysis. Therefore, and for the reasons stated in the Preliminary Approval Order, the Motion is **GRANTED** as to the designation of the Class Representatives and Class Counsel.

        G.     Class Notice

            1.     <u>Legal Standards</u>

Rule 23(e) requires that a court "direct notice in a reasonable manner to all class members who would

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-08187 JAK (JEMx) | Date | March 22, 2019 |
|---|---|---|---|
| Title | Sergio Gutierrez v. Stericycle, Inc. | | |

be bound by" a proposed class settlement. Fed. R. Civ. P. 23(e). Notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)).

       2.   <u>Application</u>

The proposed notice to class members was submitted with the Settlement. *See* Ex. A to Settlement, Dkt. 67-3 at 25-28. The Preliminary Approval Order included a detailed analysis of why the proposed notice was sufficient. Dkt. 70 at 25-26. Notice was then formatted by a third party, approved by counsel, and mailed to class members. Schwartz Decl. ¶ 6. A copy of this Notice was filed as required by a prior Order (Dkt. 72) on February 27, 2019. Dkt. 73.

There have been no material changes that would affect the prior analysis. Therefore, and for the reasons stated in the Preliminary Approval Order, the Motion is **GRANTED** as to approval of the notice to the Class.


**IV.**   <u>Conclusion</u>

For the foregoing reasons, the Motion is **GRANTED**. Judgment shall be entered dismissing the action with prejudice; provided, however, that the Court shall retain jurisdiction with respect to any issues that arise as to the disbursement of unclaimed settlement funds and related matters. Counsel shall lodge a proposed final judgment in Word format on or before April 1, 2019. On or before May 1, 2019, the parties shall submit a joint report setting forth their collective and/or respective views as to whether any issues relating to the disbursement of settlement funds remain, and, if so, a proposed method and schedule for their resolution.

**IT IS SO ORDERED.**

                                                 _____ : _____

Initials of Preparer   ak