Joshua H. Haffner, SBN 188652
(jhh@haffnerlawyers.com)
Trevor Weinberg, SBN 330778
(tw@haffnerlawyers.com)
**HAFFNER LAW PC**
445 South Figueroa St., Suite 2625
Los Angeles, California 90071
Telephone: (213) 514-5681
Facsimile: (213) 514-5682

Paul D. Stevens, SBN 207107
(pstevens@stevenslc.com)
Lauren A. Bochurberg, SBN 333629
lbochurberg@stevenslc.com
**STEVENS, LC**
1855 Industrial Street, Suite 518
Los Angeles, California 90021
Telephone: (213) 270-1211
Facsimile: (213) 270-1223

*Attorneys for Plaintiffs*

*Additional Counsel on following page*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| JAMES C. KANG, an individual, MICHAEL MOSES, an individual, on behalf of themselves and all others similarly situated,<br><br>                                   Plaintiffs,<br><br>                    v.<br><br>WELLS FARGO BANK, N.A.; and DOES 1 through 10, inclusive,<br><br>                         Defendant.<br>_____<br>PATRICIA BARRERAS, an individual, JACQUELINE F. IBARRA, an individual, on behalf of themselves and all others similarly situated,<br><br>                                   Plaintiffs,<br><br>                    v.<br><br>WELLS FARGO BANK, N.A.; and DOES 1 through 10, inclusive,<br><br>Defendant. | Case No. 5:17-cv-06220-BLF<br>Case No. 5:21-cv-00071-BLF<br><br>Complaint filed: October 27, 2017<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS & AUTHORITIES**<br><br>Date: September 15, 2021<br>Time: 9:00 a.m.<br>Location: Courtroom 3 |

1   (continued from previous page)

2   Michael Rubin, SBN 80618
    mrubin@altber.com
3   Eileen B. Goldsmith, SBN 218029
    egoldsmith@altber.com
4   ALTSHULER BERZON LLP
    177 Post Street, Suite 300
5   San Francisco, CA 94108
    Telephone: (415) 421-7151
6   Facsimile: (415) 362-8064

7
8   *Attorneys for Plaintiffs James C. Kang and*

    *Michael Moses*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ................................................................................ 1

MEMORANDUM OF POINTS & AUTHORITIES ........................................................ 3

I.      INTRODUCTION ................................................................................................ 3

II.     BACKGROUND ................................................................................................. 4

     A.  History of the Litigation .................................................................................... 4

     B.  Key Provisions of the Settlement ..................................................................... 8

     C.  Settlement Administration .............................................................................. 10

III.    DISCUSSION ................................................................................................... 12

     A.  Final Certification of the Settlement Class and Subclass is Appropriate .............. 12

     B.  The Proposed Settlement is Fair, Reasonable, and Adequate and Merits Final
        Approval ........................................................................................................ 12

           1.  The settlement is entitled to a strong presumption of fairness ................. 13

           2.  The stage of the proceedings, extent of discovery and investigation, and
               prior litigation ......................................................................................... 13

           3.  The settlement amount, the strength of plaintiffs' case, and the risk,
               expense, complexity, and likely duration of further litigation ................. 13

           4.  Experience and views of counsel ............................................................ 16

           5.  Class members' reactions to the proposed settlement ............................... 17

     C.  The PAGA Component of the Settlement Should Be Approved ......................... 17

     D.  The $10,000 Class Representative Service Awards Merit Final Approval .......... 18

CONCLUSION ................................................................................................................ 20

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Armenta v. Osmose, Inc.*,
   135 Cal.App.4th 314 (2005) ................................................................................ 16

4

5

*Bellinghausen v. Tractor Supply Co.*,
   306 F.R.D. 245 (N.D. Cal. 2015) ........................................................................ 19

6

*Boring v. Bed Bath & Beyond*,
   2014 WL 2967474 (N.D. Cal. June 20, 2013) .................................................... 19

7

8

*Bradescu v. Hillstone Rest. Group*,
   2014 WL 5312546 (C.D. Cal. Sep. 18, 2014) .................................................... 15

9

*Brum v. Market Source, Inc.*,
   2017 WL 2633414 (E.D. Cal. June 19, 2017) .................................................... 15

10

11

*Dyer v. Wells Fargo Bank, N.A.*,
   303 F.R.D. 326 (N.D. Cal. 2014) .................................................................. 14, 18

12

13

*Dynabursky v. Alliedbarton Sec. Servs., LP*,
   2016 WL 8921915 (C.D. Cal. Aug. 15, 2016) .................................................... 14

14

*Ferra v. Loews Hollywood Hotel*,
   40 Cal.App.5th 1239 (2019), *review granted*, Cal. Supreme Court Case No.
   S259172.......................................................................................... 3, 5, 6, 15

15

16

*Flanagan v. Bank of America*,
   Case No. 613647/2018 (Supreme Court of New York, County of Suffolk) .......... 15

17

18

*Frausto v. Bank of America, N.A.*,
   2018 WL 3659251 (N.D. Cal. Aug. 2, 2018) ...................................................... 15

19

*Gutierrez v. Stericycle*,
   No. CV15-08187-JAK, Order Granting Final Approval of Settlement (Dkt. 76;
   C.D. Cal. Mar. 22, 2019) ...................................................................................... 14

20

21

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ............................................................................. 12

22

23

*In re Syncor Erisa Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ............................................................................. 12

24

25

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ............................................................................... 19

26

*In re On-Line DVD Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ............................................................................... 19

27

28

*Lewis v. Green Dot Corp.*,
   No. CV16-3557-FMO, 2017 WL 4785978 (C.D. Cal. June 12, 2017)...................................14

*Loud v. U.S. Bank, N.A.*,
   C.D. Cal. Case No. 8:18-CV-01235-DOC-DFM ...............................................................15

*Monterrubio v. Best Buy Stores, L.P.*,
   291 F.R.D. 443 (E.D. Cal. 2013).......................................................................................18

*Naranjo v. Spectrum Sec. Servs.*,
   Cal. Supreme Court Case No. S258966 ..........................................................................16

*Nguyen v. Wells Fargo Bank, N.A.*,
   2016 WL 5390245 (N.D. Cal. Sept. 26, 2016)..................................................................16

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982)..............................................................................................12

*Oman v. Delta Air Lines, Inc.*,
   9 Cal.5th 762 (2020)...........................................................................................................16

*Quiruz v. Specialty Commodities, Inc.*,
   No. 17-cv-03300-BLF, 2020 WL 6562334 (N.D. Cal. Nov. 9, 2020)...........................17, 18

*Richards v. Chime Financial*,
   No. 19-cv-06864-HSG, 2020 WL 6318713 (N.D. Cal. Oct. 28, 2020) ..............................14

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009)..............................................................................................18

*Smith v. Kaiser Foundation Hosps.*,
   2020 WL 5064282 (S.D. Cal. Aug. 26, 2020) ...................................................................19

*Spann v. J.C. Penney Corp.*,
   211 F.Supp.3d 1244 (C.D. Cal. 2016)................................................................................18

*Studley v. Alliance Healthcare Servs.*,
   2012 WL 12286522 (C.D. Cal. July 26, 2012) ..................................................................15

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993)................................................................................................13

*Valdez v. Fairway Indep. Mortgage Corp.*,
   2019 WL 3406912 (S.D. Cal. July 26, 2019)......................................................................15

*Vaquero v. Ashley Furniture Indus., Inc.*,
   824 F.3d 1150 (9th Cir. 2016)............................................................................................16

*Vaquero v. Stoneledge Furniture, LLC*,
   9 Cal.App.5th 98 (2017)........................................................................................................4

*Vasquez v. Packaging Corp. of Am.,*
    2020 WL 2559490 (C.D. Cal. Mar. 27, 2020) ....................................................... 14

*Viceral v. Mistras Grp., Inc.,*
    2016 WL 5907869 (N.D. Cal. Oct. 11, 2016) ........................................................ 17

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
    396 F.3d 96 (2d Cir. 2005) ................................................................................... 13

*Wert v. U.S. Bancorp.,*
    2014 WL 7330891 (C.D. Cal. Dec. 18, 2014) ...................................................... 15

*Wren v. RGIS Inventory Specialists,*
    2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ........................................................ 19

*Z.B., N.A. v. Superior Court,*
    8 Cal.5th 175 (2019) ............................................................................................ 18

**Statutes**

Cal. Bus. & Prof. Code §17200 (Unfair Competition Law) ......................................... 5

Cal. Civil Code §1542 ................................................................................................. 10

Cal. Lab. Code §203 ............................................................................................... 7, 16

Cal. Lab. Code §226.7 .......................................................................................*passim*

Cal. Lab. Code §226.7(c) ............................................................................................. 4

Cal. Lab. Code §558 ................................................................................................... 17

Cal. Lab. Code §2699(i) .............................................................................................. 18

Cal. Lab. Code §2699(l) .............................................................................................. 17

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 23 ................................................................................................. 12, 17

Fed. R. Civ. P. 23(a) ................................................................................................... 12

Fed. R. Civ. P. 23(b)(3) .............................................................................................. 12

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on September 15, 2021 at 9:00 a.m., or as soon thereafter as the parties may be heard, in Courtroom 3 of the U.S. District Court for the Northern District of California, 280 South 1st St., San Jose, CA, 95113, plaintiffs James Kang, Michael Moses, and Jacqueline F. Ibarra, individually and on behalf of all similarly situated employees, will and hereby do move the Court pursuant to Fed. R. Civ. P. 23(e) for an order:

1. Confirming as final the certification of the Settlement Class, Rest Period Subclass, and Non-Rest Period Subclass as defined in the Settlement, pursuant to Rule 23;

2. Confirming as final the appointment of plaintiffs James Kang, Michael Moses, and Jacqueline F. Ibarra as the class representatives of the Settlement Class and Subclasses pursuant to Rule 23;

3. Confirming as final the appointment of plaintiffs' attorneys as Class Counsel for the class pursuant to Rule 23(g);

4. Granting final approval of the proposed $95,696,122.35 non-reversionary global settlement of *Kang v. Wells Fargo Bank, N.A.*, N.D. Cal. Case No. 5:17-cv-06220-BLF, and *Ibarra v. Wells Fargo Bank, N.A.*, N.D. Cal. Case No. 5:21-cv-00071-BLF, as set forth in the Joint Stipulation of Class Settlement, as amended ("Settlement" or "Agreement") (Dkt. 109, Exh. 1) as fair, reasonable, and adequate, and binding on all Settlement Class Members;

5. Directing the Parties and the Settlement Administrator to implement the terms of the Settlement pertaining to the distribution of the settlement fund;

6. Making findings of fact and stating conclusions of law in support of the foregoing; and

7. Directing the entry of judgment.

This Motion is based upon Stipulation of Settlement of Class Action and Release of Claims, as amended (Dkt. 109, Exh. 1), the accompanying Memorandum of Points & Authorities, the Settlement Agreement, the Declarations of Paul D. Stevens, Joshua H. Haffner, Michael Rubin, James Kang, Michael Moses, and Chris Pikus filed herewith, all papers and pleadings on file in this action, and such oral argument as may be considered by the Court at the time of the hearing.

1    DATED:  May 28, 2021                    Respectfully submitted,

2                                            **HAFFNER LAW PC**

3                                            **STEVENS, L.C.**
                                             **ALTSHULER BERZON LLP**

4

5                                    By:     /s/ Paul D. Stevens

6                                            Paul D. Stevens
                                             Attorneys for Plaintiffs James C. Kang,

7                                            Michael Moses, Jacqueline Ibarra, and the
                                             Class

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS & AUTHORITIES

### I. INTRODUCTION

Plaintiffs James Kang, Michael Moses, and Jacqueline F. Ibarra seek final approval of a proposed global class action settlement in the consolidated cases of *Kang v. Wells Fargo Bank, N.A.*, N.D. Cal. Case No. 5:17-cv-06220-BLF, and *Patricia Barreras and Jacqueline F. Ibarra v. Wells Fargo Bank, N.A.* ("*Ibarra*"), N.D. Cal. Case No. 3:21-cv-00071-BLF. The settlement resolves all claims brought by a class comprised of home mortgage consultants ("HMCs") employed by Wells Fargo Bank in California between 2013 and 2019, who allege that Wells Fargo violated California rest period law and certain other California wage-and-hour laws during that period.

The $95,696,122.35 aggregate settlement value, which is entirely non-reversionary, is an extraordinary result for the approximately 4,939 class members covered by the proposed Settlement Agreement, as amended (attached as Exh. 1 to the Declaration of Paul D. Stevens; hereafter "Settlement" or "Agreement"). The individual recoveries from the net settlement fund *on average* will be $12,762.69. In addition, Wells Fargo discontinued its challenged pay practices during the pendency of this litigation, meaning that class members and future HMCs will be receiving additional workplace benefits as a result of this action for many years to come.

The Settlement is particularly remarkable given the enormous ongoing litigation risk faced by the class on the central issue in dispute, namely, the proper statutory interpretation of California Labor Code §226.7's premium pay language. Throughout the four years of this litigation, the majority of court decisions construing Section 226.7 accepted Wells Fargo's position that the premium pay for a non-compliant rest period is an hour of pay at the employee's base hourly rate, not an hour of pay calculated at the employee's "regular rate" as that term is used in wage-and-hour law, i.e., as including all forms of remuneration. While the *Ibarra* case was pending on appeal in the Ninth Circuit, a California Court of Appeal panel issued the first California appellate decision on this issue, in which it adopted that majority construction (over a powerful dissent from Presiding Justice Lee Smalley Edmon). That California case, *Ferra v. Loews Hollywood Hotel*, 40 Cal.App.5th 1239 (2019), now awaits decision by the California Supreme Court, which held oral

argument on May 18, 2021. If the Court of Appeal majority's statutory interpretation prevails, and if *Ibarra* and *Kang* had *not* settled, the class members' recoveries for rest period claims would be just a small fraction of the amounts provided by the proposed $95.6 million settlement.

By this motion, plaintiffs seek final approval of the settlement, including the class representative service awards of $10,000 each to plaintiffs Kang and Moses. (Plaintiff Ibarra has already received a $10,000 service award, which was approved by Judge Percy Anderson and paid before the *Ibarra* case was transferred to this Court.) The settlement, including the class representative service awards, should be approved because it is fair and reasonable.

By separate motion filed today, plaintiffs seek approval of Class Counsel's request for attorneys' fees and litigation expenses, to be paid from the common fund.

## II. BACKGROUND

**A.     History of the Litigation**

The proposed settlement will resolve all claims asserted in these consolidated class actions. In *Ibarra*, the plaintiff asserted class claims for California rest period violations, relying on *Vaquero v. Stoneledge Furniture, LLC*, 9 Cal.App.5th 98 (2017), and Labor Code §226.7, and alleging that Wells Fargo's HMC commission-based compensation structure unlawfully failed to properly compensate class members for their non-working rest period time. In *Kang* and *Moses*, which were follow-on cases to *Ibarra* (later consolidated in this Court), the plaintiffs asserted those same claims on behalf of additional class members and alleged additional wage-and-hour and Labor Code Private Attorneys General ("PAGA") claims on behalf of California HMCs, including the *Ibarra* class members.

The principal dispute between the parties in these actions concerns the proper construction of the premium pay language in Labor Code §226.7(c). When these cases were filed, that question of California statutory interpretation had not been decided by any California appellate court. Plaintiffs contended that calculation of Section 226.7 premium pay, defined as "one hour of additional pay at the employee's regular rate of compensation," must include all nondiscretionary remuneration to the employee (much as the term "regular rate of pay" is construed in wage-and-hour law, including under California overtime law). Wells Fargo, by contrast, contended that the

premium pay calculation must be based solely on the $12-per-hour advances against commissions that it provided to its California HMCs. Stevens Decl., ¶12 (*Ibarra* Dkt. 50).

*Ibarra* was filed on March 17, 2017 in the Los Angeles Superior Court and was thereafter removed to the U.S. District Court for the Central District of California. Stevens Decl., ¶8 (*Ibarra* Dkt. 1-1). In the amended complaint, the *Ibarra* plaintiffs alleged a single claim of rest period violations under Labor Code §226.7 and a related claim under California's Unfair Competition Law. *Ibarra* Dkt. 1-1.

The parties stipulated to the certification of a class comprised of all HMCs employed by Wells Fargo in California at any time between March 13, 2013 and August 1, 2017. Stevens Decl., ¶9 (*Ibarra* Dkt. 18). Following discovery, the parties brought cross-motions for summary judgment based on stipulated facts. On January 19, 2018, the district court granted plaintiff's motion and denied defendant's, finding Wells Fargo liable for failing to provide legally compliant rest periods. Stevens Decl., ¶10 (*Ibarra* Dkt. 35). The parties also conducted discovery regarding the damages calculations and retained damages experts with whom the parties worked extensively in preparing damages calculations, culminating in a stipulation as to the amount of damages that would be awarded depending on which side's legal theories prevailed. Stevens Decl., ¶11.

The parties stipulated that the classwide damages were $24,472,114.36 if Wells Fargo's interpretation of Section 226.7 were correct, and $97,284,817.91 – nearly four times as much – if plaintiff's interpretation were correct. Judge Anderson eventually ruled that plaintiff's interpretation was correct, and entered judgment in favor of the class in the amount of $97,284,817.91. Stevens Decl., ¶13 (*Ibarra* Dkt. 50).

Wells Fargo appealed, arguing that it was not liable to the class at all, and that even if liability could be established, Wells Fargo's construction of the premium pay language should have prevailed. Stevens Decl., ¶14. After the appeal was fully briefed and awaiting oral argument, the California Court of Appeal decided *Ferra*, 40 Cal.App.5th 1239, which addressed the statutory interpretation of Section 226.7's premium pay language as a matter of first impression in the California appellate courts. Stevens Decl., ¶16. The panel majority ruled that premium pay calculations under Section 226.7 must be based solely on the employee's base hourly rate of pay,

not all forms of nondiscretionary remuneration. *Ferra*, 40 Cal.App.5th at 1246-52. In dissent, Presiding Justice Edmon rebutted the majority's analysis and concluded that the Legislature and Industrial Welfare Commission had intended premium pay under Section 226.7 and its Wage Order counterpart to be calculated based on all forms of nondiscretionary remuneration, just like overtime pay. *Id.* at 1255-68.

On April 15, 2020, the Ninth Circuit entered a memorandum decision in *Ibarra* that affirmed the district court's liability finding; instructed the district court to order a distribution to the class of the $24,472,114.36 that the parties had stipulated would be owed if Wells Fargo's statutory interpretation were correct; and further instructed the district court to hold the case pending the outcome of *Ferra* in the California Supreme Court (which could either resolve the parties' dispute over the intended meaning of Section 226.7 or require further litigation in *Ibarra*, given the factual differences between Wells Fargo's HMC compensation scheme and the *Ferra* defendant's). Stevens Decl., ¶20 (*Ibarra* Dkt. 80 at 7-9). (*Ferra* was argued on May 18, 2021, will be decided before mid-August. Rubin Decl. ¶15.)

On remand, Judge Anderson ordered Wells Fargo to pay $24,472,114.36 plus post-judgment interest. Stevens Decl., ¶21 (*Ibarra* Dkt. 90). On July 30, 2020, Wells Fargo paid $25,696,122.35 toward satisfaction of the *Ibarra* judgment. *Id.* Of that amount, $10,000 was paid to plaintiff Jacqueline Ibarra as a court-approved class representative service award, $30,000 was distributed for administration of payments to *Ibarra* class members, and $6,424,030.59 was held back in an account managed by the administrator pending further fees-related proceedings. *Id.* The remaining $19,232,091.76 was distributed to *Ibarra* class members on November 13, 2020. *Id.*

After staying further merits proceedings in *Ibarra* pending the resolution of *Ferra* in the California Supreme Court, Stevens Decl., ¶22 (*Ibarra* Dkt. 90), Judge Anderson transferred *Ibarra* to this Court pursuant to the parties' post-settlement stipulation, *id.* (*Ibarra* Dkt. 94, 96).

While *Ibarra* was still pending in the Central District, class counsel filed the *Kang* and *Moses* class actions in this Court. The original *Kang* complaint was filed October 17, 2017, prior to briefing and judgment decisions on the parties' cross motions for summary judgment in *Ibarra*, and alleged that Wells Fargo's HMC pay structure gave rise to minimum wage and vacation pay

1   violations. That case also included a claim for waiting time penalties under Labor Code §203 on

2   behalf of a class of HMCs who had worked for Wells Fargo in California on or after October 23,

3   2013. *Kang* Dkt. 1. *Moses* added a rest period claim on the same legal theory that had been

4   asserted in *Ibarra*, on behalf of HMCs who had worked for Wells Fargo in California at any time

5   between August 2, 2017 (the day after the *Ibarra* class period closed) and March 31, 2018 (the day

6   Wells Fargo discontinued its pay practice that was alleged to have violated California rest period

7   law). *Moses* also asserted a claim for PAGA penalties based on the underlying Labor Code

8   violations alleged in *Moses* and *Kang*. These additional claims all arose from the same

9   commission-based HMC pay structure that gave rise to the rest period claims in *Ibarra* and *Kang*.

10         This Court subsequently consolidated *Kang* and *Moses* and certified a rest period subclass

11   consisting of HMCs who worked for Wells Fargo in California at any time between August 2,

12   2017 and March 31, 2018. With respect to the other claims asserted in *Kang*, the Court granted

13   plaintiffs' motion to certify a class of HMCs who worked for Wells Fargo in California from

14   October 23, 2013 through the date class notice was mailed. *Kang* Dkt. 63 at 11, *Kang* Dkt. 62; *see*

15   *also Kang* Dkt. 76 (notice mailed on April 15, 2019).

16         The Court also stayed *Kang* pending the Ninth Circuit's ruling in *Ibarra. Kang* Dkt. 77.

17   After the parties informed this Court of the Ninth Circuit's decision in *Ibarra*, the Court stayed

18   *Kang* again through October 31, 2020, pending a planned global mediation of both cases. *Kang*

19   Dkt. 85.

20         Although an earlier mediation in *Ibarra* had been unsuccessful, the parties successfully

21   reached a proposed global settlement in principle of all of the claims in *Ibarra* and *Kang* following

22   a day-long mediation with the assistance of mediator David Rotman on October 21, 2020. Stevens

23   Decl., ¶¶28-29. The parties then continued negotiating over specific terms for three more months

24   before reaching agreement on all terms set forth in their long-form settlement agreement. *Id.* ¶30.

25         The parties agreed in that Settlement to seek preliminary and final approval before a single

26   court in order to minimize class member confusion and limit the expenditure of the courts' and

27   parties' time and resources on settlement approval. Settlement ¶9; Stevens Decl., ¶31. After Judge

28   Anderson approved the transfer of *Ibarra* to the Northern District of California, Stevens Decl.,

¶32 (*Ibarra* Dkt. 94, 96), that case was consolidated with *Kang*. *Kang* Dkt. 92, 103. After the parties made small amendments to the Settlement in response to this Court's instructions, this Court granted preliminary approval of the proposed global settlement on April 1, 2021. *Kang* Dkt. 109, 110.

**B.      Key Provisions of the Settlement**

Overview. The overall settlement value includes the $25,696,122.35 that Wells Fargo has already paid to the *Ibarra* class, plus an additional $70 million in new money, for a gross settlement fund of $95,696,122.35. Settlement ¶35. The fully non-reversionary global settlement amount will resolve all claims in *Ibarra* and *Kang*. *Id.* ¶33.

Settlement Class Definition. The overall settlement class encompasses all HMCs who worked for Wells Fargo in California at any time from March 17, 2013 through December 31, 2019, subject to narrow exclusions. The settlement class includes all members of the previously certified *Ibarra* and *Kang* classes, as well as HMCs who had previously been excluded from the *Kang* classes on the basis that they had signed individual arbitration agreements in connection with their employment. Settlement ¶32; Dkt. 96-1, ¶¶34-36.

The Settlement Class includes two subclasses. The Rest Period Subclass includes all HMCs who worked for Wells Fargo in California between March 17, 2013 and March 31, 2018, when Wells Fargo changed the pay practice that was the basis of the rest period claims in *Ibarra* and *Kang*. The Non-Rest Period Subclass includes all HMCs who worked for Wells Fargo in California from October 27, 2013 through December 31, 2019, when Wells Fargo changed its HMC compensation structure from the structure challenged in *Kang*. Settlement ¶32.

PAGA Payment. The settlement allocates $750,000 to civil penalties under PAGA, of which 75% ($562,500) will be paid to the California Labor & Workforce Development Agency ("LWDA"). The remainder will be included in the net settlement fund for individual class member settlement payments. Settlement ¶39.

Plan of Distribution and Settlement Payments to Class Members. The net settlement proceeds available for distribution to class members (after deducting attorneys' fees, litigation expenses, administrative costs capped at $80,000, *see* Dkt. 109, ¶7, the LWDA payment, and class

representative service awards) is approximately $63,034,915.35 for a class of 4,939 individuals. Class members who do not opt out will be mailed a settlement payment automatically, without having to file a claim. Settlement ¶34. Those checks will be negotiable for 180 days after mailing. Any residual will be redistributed to class members who cashed their initial settlement checks. Settlement ¶49.

The parties have allocated 90% of the net settlement fund – including the $19.2 million that was distributed to *Ibarra* class members in November 2020 and the amount previously held back for attorneys' fees from the amount already paid by Wells Fargo – to the rest period claims asserted in *Ibarra* and *Kang* (the "Rest Period Allocation"). This amount will be distributed to Rest Period Subclass Members pro rata based on eligible workdays and will be offset by payments received in the November 2020 *Ibarra* distribution. Settlement ¶42(a).

The remaining 10% of the net settlement fund is allocated to the minimum wage, vacation pay, and waiting time penalty claims asserted in *Kang* (the "Non-Rest Period Allocation"). Settlement ¶42(b). That amount will be distributed pro rata to members of the Non-Rest Period Subclass. *Id*. Fifty percent of any payment from the Non-Rest Period Allocation will be treated as taxable wages subject to payroll tax withholding. Settlement ¶50. Wells Fargo will separately pay the employer's share of payroll taxes. Settlement ¶36.

The Settlement Administrator has estimated class members' individual settlement payments based on Wells Fargo's payroll data. Settlement ¶42(a), (b). The payments already made to class members in the November 2020 *Ibarra* distribution were *on average* $3,893.92, and ranged as high as $22,749.93, even with the set-aside for attorney's fees. Stevens Decl., ¶45 (discussing Pikus Decl., Exh. B). The Settlement Administrator has estimated *additional* recoveries for class members from the $70 million in new money added to the settlement fund) will average $14,172 and will reach as high as $65,568.19. *Id.* (discussing Pikus Decl., Exh. B). The highest gross settlement share (reflecting the first *Ibarra* payment and the additional settlement money) is $80,149.13. Individual shares of the gross fund exceed $50,000 for 595 class members. *Id.* (discussing Pikus Decl., Exh. B). Individual recoveries from the *net* settlement fund, assuming the Court awards one-third of the fund as attorneys' fees, are equally impressive. The

*total* estimated individual settlement payments to class members from the *net* settlement fund will range as high as $53,122.41. *Id.* ¶46 (discussing Pikus Decl., Exh. C). The estimated *average total net* payment from the settlement fund is $12,762.69. *Id.* (discussing Pikus Decl., Exh. C).

<u>Releases</u>. Settlement Class Members will release only those claims that were or could have been brought arising from the factual allegations or legal claims asserted in the operative *Kang* and *Ibarra* complaints. Settlement ¶59. Plaintiffs Kang, Moses, and Ibarra will additionally provide a general release of claims including a Cal. Civil Code §1542 waiver. Settlement ¶¶60-62.

<u>Class Representative Service Awards and Class Counsel Attorneys' Fees and Expenses.</u> The Settlement provides for class representative service awards of up to $10,000 each for plaintiffs James Kang and Michael Moses to be deducted from the gross settlement fund. Settlement ¶38. Class Counsel will also seek up to one-third of the gross settlement fund ($31,898,707) as attorneys' fees, in addition to litigation expenses actually incurred in the amount of $99,568.96, to be deducted from the gross settlement fund. Settlement ¶37; Stevens Decl., ¶83. Plaintiff's Motion for Approval of Attorneys' Fees and Litigation Expenses, which accompanies this filing, addresses the fee request. If any appeal is taken (by plaintiffs, their counsel, or an objector) with respect to these requested amounts, such appeal(s) will not delay the distribution of any individual class member settlement payments. Settlement ¶¶37-38, 44. Any amounts not approved by the Court will be added to the net settlement fund for distribution to class members, Settlement ¶¶37-38, although those additional funds will not be distributed to the class if a timely appeal is taken from the Court's fees award (including by an objector), until after that appeal is resolved. Settlement ¶46. All undisputed net settlement funds will be distributed to the class members within 42 days after the Effective Date (which will be the date the Court's order granting final approval becomes final, including the resolution of any appeals not related solely to attorneys' fees or class representative service awards). Settlement ¶¶44-46.

**C.    Settlement Administration**

Pursuant to the Order Granting Motion for Preliminary Approval, on April 29, 2021, the Settlement Administrator mailed the approved class notice to the 4,939 class members identified

in the data Wells Fargo provided to the Settlement Administrator. Pikus Decl., ¶¶8, 10.[1]

Consistent with the Settlement and the Order Granting Preliminary Approval, the Settlement Administrator searched for more recent addresses, took all reasonable steps to obtain correct addresses for class members whose notices were returned undeliverable, and re-mailed notices to 254 class members for whom new addresses were located. *Id.*, ¶11. The Settlement Administrator also established a website and toll-free phone number to respond to class members' questions regarding the settlement. *Id.*, ¶¶5-6.

Class members who wished to opt out of the Settlement were required to submit a written request for exclusion by the response deadline of June 14, 2021. *Id.*, ¶10; Settlement ¶54. As of the date of this motion, the Settlement Administrator had received no requests for exclusion. Pikus Decl., ¶16.

Class members who did not opt out and who wished to object to the Settlement were required to do so by submitting written objections to the Court by the response deadline of June 14, 2021. As of the date of this motion, class counsel are not aware of any objections filed with the Court, Stevens Decl., ¶43, and none have been submitted to the Settlement Administrator, Pikus Decl., ¶17. Class Counsel will file a supplemental brief addressing any timely objections after the response deadline has passed. Dkt. 110 ¶20.

Class members were given the opportunity to dispute the information used to estimate their individual settlement payments by submitting documentation to the Settlement Administrator postmarked by the response deadline. Settlement ¶54; Notice ¶10(D). As of the date of this motion, no disputes had been received. Pikus Decl., ¶15. Class counsel will report on any disputes and their resolution in their supplemental brief following the response deadline.

---

[1] This number is somewhat smaller than overall class size assumed at the time the settlement was reached, *see* Dkt. 96-1, ¶34, apparently due to overlap between the *Ibarra* and *Kang* classes. The smaller-than-anticipated class size results in larger individual settlement payments than plaintiffs had estimated at the time of preliminary approval.

### III. DISCUSSION

**A.     Final Certification of the Settlement Class and Subclasses is Appropriate.**

The Court should make final the provisional class certification granted at the preliminary approval hearing. *Kang* Dkt. 110, ¶7. This Court and the court in *Ibarra* previously ruled that the proposed classes (including rest period and non-rest period subclasses) satisfied all requirements of Rule 23(a) and 23(b)(3). As set forth in plaintiffs' Motion for Preliminary Approval, *Kang* Dkt. 96 at 12, the proposed settlement modestly expands the number of class members by adding HMCs who had been excluded from the *Ibarra* and *Kang* classes because they had individual arbitration agreements and by extending the class period from its original end date (in *Kang*) of April 15, 2019 through December 31, 2019, the date that the Wells Fargo discontinued the pay structure challenged in *Kang*. However, the classes continue to assert the identical claims, based on the same Wells Fargo pay structure, that the courts previously certified. *Id.* Class certification for purposes of settlement continues to satisfy Rule 23 requirements, and the Settlement Class and Subclasses should be finally certified.

**B.     The Proposed Settlement is Fair, Reasonable, and Adequate and Merits Final Approval.**

"[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor Erisa Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). The "universal standard" in evaluating the fairness of a settlement is whether the settlement is "fundamentally fair, adequate and reasonable." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) (citations omitted). The Ninth Circuit has recognized that "the very essence of a settlement is compromise." *Id.* at 624.

In evaluating the fairness of a settlement, the district court may weigh a variety of factors, including "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026

(9th Cir. 1998) (citations omitted). The relative degree of importance to be attached to any particular factor depends upon the circumstances of each case. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). The pertinent factors strongly support approval of this settlement.

### 1. The settlement is entitled to a strong presumption of fairness

A proposed settlement is presumptively fair when: (1) it is reached through arm's-length negotiations; (2) the putative class is represented by experienced counsel; and (3) the parties have conducted sufficient discovery. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (citation omitted). Those factors are readily satisfied in this case. The settlement is the product of arm's-length, non-collusive negotiations, with the assistance of highly respected mediator David Rotman; the class is represented by experienced counsel; and the cases were litigated through class certification, summary judgment, a damages trial, and appeals.

### 2. The stage of the proceedings, extent of discovery and investigation, and prior litigation

As discussed above, *Ibarra* was litigated through final judgment and appeal. Class counsel conducted the substantial discovery and investigation necessary to establish class certification, Wells Fargo's liability, and the calculation of damages under the parties' competing theories of the statutory interpretation of Section 226.7. The parties then litigated the Ninth Circuit appeal, resulting in that Court's affirmance of the liability finding. *Kang* was litigated through a contested class certification motion. *Kang* Dkt. 63. And for purposes of the global mediation, class counsel analyzed class member pay data for the entire proposed class. Stevens Decl., ¶42.

### 3. The settlement amount, the strength of plaintiffs' case, and the risk, expense, complexity, and likely duration of further litigation

The proposed $95.6 million settlement is an outstanding result by any measure. The aggregate fund includes the $25,696,122.35 that has already been paid toward the class judgment

1  in *Ibarra* plus an additional $70 million in *new* money from Wells Fargo.[2]

2  As discussed in plaintiffs' Motion for Preliminary Approval, the overall settlement value is

3  equal to **47%** of Wells Fargo's maximum potential exposure, when calculated based on plaintiffs'

4  construction of Labor Code §226.7. Courts routinely approve settlements reflecting far lower

5  recoveries than this. *See, e.g.*, *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 331 (N.D. Cal.

6  2014) (approving settlement equivalent to one-third of the defendant's maximum potential liability

7  in wage payment case); *Dynabursky v. Alliedbarton Sec. Servs., LP*, 2016 WL 8921915, at *5

8  (C.D. Cal. Aug. 15, 2016) (approving settlement equivalent to 27.5% of defendants' maximum

9  potential liability in wage and hour action); *Vasquez v. Packaging Corp. of Am.*, 2020 WL

10  2559490, at *8 (C.D. Cal. Mar. 27, 2020) (collecting cases approving settlements for 25-35% of

11  total potential liability in wage and hour cases). Moreover, when calculated based on *Wells*

12  *Fargo's* construction of Section 226.7, the gross settlement fund represents fully **78%** of Wells

13  Fargo's maximum potential exposure – *and nearly 3.6 times more than Wells Fargo's **total**

14  potential Section 226.7 exposure*. Stevens Decl., ¶¶49-50.

15  The proposed *net* settlement fund (e.g., deducting the requested attorney's fees, costs and

16  incentive awards) for class member payments equals $63,034,915.26. Stevens Decl., ¶44. And

17  individual settlement payments from that *net* fund range as high as $53,122.41, with an *average*

18  estimated payment from the net fund of $12,762.69. Stevens Decl., ¶46. Such individual

19  recoveries are nearly unheard-of in wage-and-hour litigation, *see, e.g.*, Dkt. 96-1 (Stevens

20  Declaration in Support of Motion for Preliminary Approval), Exh. 2, and far outstrip recoveries

21  even in similar rest period settlements on behalf of classes of bank loan officers compensated on

22

23  [2] Where a defendant has already paid some benefits to class members during the course of

24  the litigation, the value of those benefits is often considered in evaluating the settlement as a

25  whole. *See, e.g.*, *Richards v. Chime Financial*, No. 19-cv-06864-HSG, 2020 WL 6318713, at *2-3
    (N.D. Cal. Oct. 28, 2020); *Lewis v. Green Dot Corp.*, No. CV16-3557-FMO, 2017 WL 4785978,

26  at *3 (C.D. Cal. June 12, 2017); *Gutierrez v. Stericycle*, No. CV15-08187-JAK, Order Granting

27  Final Approval of Settlement (Dkt. 76; C.D. Cal. Mar. 22, 2019) (Dkt. 96-1, Exh. 3).

28

commission. For example, in *Boswell/Fernandez v. Bank of America*, settled with *Flanagan v. Bank of America*, Case No. 613647/2018 (Supreme Court of New York, County of Suffolk), the average individual share based on the *gross* settlement fund was $7,061.29, while in *Loud v. U.S. Bank, N.A.*, C.D. Cal. Case No. 8:18-CV-01235-DOC-DFM, the average share based on the *gross* settlement fund was $7,728.89. Dkt. 96-1, ¶44.

The settlement is particularly extraordinary in light of the risks, expense, and delay of litigating these cases to a final judgment. The settlement was reached against the backdrop of adverse authorities and enormous litigation risk on the central rest period claim in *Ibarra* and *Kang*. Throughout the time that *Ibarra* was being litigated in the Central District of California, no California appellate authority had construed Section 226.7(c)'s "regular rate of compensation" language, and all but one of the available district court decisions addressing the issue had ruled that "regular rate of compensation" referred to an employee's base hourly pay rate only, consistent with Wells Fargo's statutory interpretation.[3] Shortly before the Ninth Circuit oral argument in *Ibarra*, the Court of Appeal panel majority ruled in *Ferra* that "regular rate of compensation" referred to an employee's base hourly pay rate, as the defendant in that case had argued. Although class counsel worked diligently to support the *Ferra* plaintiff's efforts to obtain a reversal of that appellate ruling in the California Supreme Court, by settling *Ibarra* and *Kang* now, before the Supreme Court rules, class counsel was able to eliminate the risk of an unfavorable ruling in *Ferra*, which could dramatically slash the potential recovery in these consolidated cases – while at

---

[3] *Compare Bradescu v. Hillstone Rest. Group*, 2014 WL 5312546 (C.D. Cal. Sep. 18, 2014) ("regular rate of compensation" includes only the employee's base hourly rate); *Wert v. U.S. Bancorp.*, 2014 WL 7330891 (C.D. Cal. Dec. 18, 2014) (same); *Brum v. Market Source, Inc.*, 2017 WL 2633414 (E.D. Cal. June 19, 2017) (same); *Frausto v. Bank of America, N.A.*, 2018 WL 3659251 at *5 (N.D. Cal. Aug. 2, 2018) (same); *Valdez v. Fairway Indep. Mortgage Corp.*, 2019 WL 3406912 (S.D. Cal. July 26, 2019) (same); *with Studley v. Alliance Healthcare Servs.*, 2012 WL 12286522 (C.D. Cal. July 26, 2012) ("regular rate of compensation" includes all forms of regular remuneration to the employee).

the same time ensuring the expeditious payment of those settlement funds to all eligible class members.

The non-rest period claims resolved by this settlement carried even greater litigation risks. In opposing class certification in *Kang*, Wells Fargo pointed out that another district court had rejected a vacation pay claim similar to that asserted in *Kang*. *See Kang* Dkt. 54 at 7 (citing *Nguyen v. Wells Fargo Bank, N.A.*, 2016 WL 5390245 (N.D. Cal. Sept. 26, 2016)). The minimum wage claim in *Kang* was based on California authorities holding that employers must compensate employees with at least the minimum wage for each hour worked, without "averaging" an employee's compensation across all hours worked. *See, e.g.*, *Armenta v. Osmose, Inc.*, 135 Cal.App.4th 314 (2005); *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150 (9th Cir. 2016) (applying no-averaging principle to commissioned salespeople). The California Supreme Court recently restated the principle of the *Armenta* line of cases as a prohibition on "borrowing" compensation contractually promised for certain work time to pay employees for other work time, potentially creating new uncertainty as to the viability of plaintiffs' minimum wage claim. *See Oman v. Delta Air Lines, Inc.*, 9 Cal.5th 762, 781-82 (2020). Similarly, the future viability of plaintiffs' derivative claim for waiting time penalties under California Labor Code §203 could be determined by the California Supreme Court's pending decision in *Naranjo v. Spectrum Sec. Servs.*, Case No. S258966. And Wells Fargo has also suggested that the non-rest period claims asserted in *Kang* are barred by the *Ibarra* judgment with respect to time periods covered by that judgment. In short, if the proposed settlement were not approved, there would surely be substantial further litigation in *Kang*, including summary judgment, perhaps trial, and further appeals, to establish Wells Fargo's liability and class damages. The settlement saves the class members from these substantial risks and further delay.

**4.      Experience and views of counsel**

Class counsel have extensive experience and success litigating, trying, and settling wage and hour class actions. Stevens Decl., ¶¶56-67; Haffner Decl., ¶¶3-7. Class counsel are extremely knowledgeable about the strengths, weaknesses and potential value of the claims asserted in this case. Stevens Decl., ¶55; Haffner Decl., ¶16. Class counsel believe that the amount of the

settlement is "fair, reasonable, and adequate," and that, considering the risks of continued litigation, this settlement is within the range of reasonableness and fair to the class and subclasses. Stevens Decl., ¶55; Haffner Decl., ¶16.

### 5.    Class members' reactions to the proposed settlement

As of the date of this motion, no class members have requested exclusion from the Settlement or submitted objections, indicating strong support for the Settlement. *See supra* at 10-11. Class counsel will further address the response of class members to the proposed Settlement in their supplemental brief following the response deadline.

### C.    The PAGA Component of the Settlement Should Be Approved

Under Labor Code §2699(l), the Court must also "review and approve any penalties sought as part of a proposed settlement agreement" of PAGA claims. The PAGA component of a settlement should be approved "where the settlement terms (1) meet the statutory requirements set forth by PAGA, and (2) are fundamentally fair, reasonable, and adequate in view of PAGA's public policy goals." *Quiruz v. Specialty Commodities, Inc.*, No. 17-cv-03300-BLF, 2020 WL 6562334, at *3 (N.D. Cal. Nov. 9, 2020) (quotation omitted). "[W]here a settlement for a Rule 23 class is robust, the statutory purposes of PAGA may be fulfilled even with a relatively small award on the PAGA claim itself, because such a settlement not only vindicates the rights of the class members as employees, but may have a deterrent effect upon the defendant employer and other employers, an objective of PAGA." *Viceral v. Mistras Grp., Inc.*, 2016 WL 5907869, at *9 (N.D. Cal. Oct. 11, 2016).

The PAGA component of this Settlement readily satisfies these standards. Plaintiffs estimated the value of the PAGA claims asserted in *Kang* at approximately $13 million, and the parties allocated $750,000 of the gross settlement value to PAGA penalties. Stevens Decl., ¶51.[4]

---

[4] The potential PAGA recovery decreased significantly during the course of the *Kang* litigation. Stevens Decl., ¶51. Plaintiffs originally sought to recover unpaid wages as well as civil penalties through the PAGA claim, pursuant to Labor Code §558. *Kang* Dkt. 64, ¶54. In 2019, the

1   The settlement properly allocates 75% of the PAGA component to the LWDA, and 25% to the

2   employees. *See* Labor Code §2699(i). As discussed above, the settlement as a whole is

3   extraordinarily robust and will provide individual recoveries in the tens of thousands of dollars,

4   thereby vindicating the rights of Wells Fargo's employees and sending a powerful deterrent

5   message to other California employers. Here, even the modest allocation from the gross settlement

6   fund to PAGA penalties effectuates PAGA's policy goals, and warrants approval. *See Quiruz*,

7   2020 WL 6562334, at *9.

8   **D.    The $10,000 Class Representative Service Awards Merit Final Approval**

9          Thanks to the named plaintiffs' willingness to prosecute these actions, class members will

10  reap substantial individual recoveries through this settlement without the risk and delay of further

11  litigation. Their efforts should be compensated with reasonable service awards.

12         Courts routinely approve service awards to compensate named plaintiffs for the work

13  undertaken on behalf of the class, the risks they incurred during the class action litigation, and

14  sometimes, to recognize their willingness to act as a private attorney general. *See, e.g.*, *Rodriguez*

15  *v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). In evaluating proposed class

16  representative service awards, courts in the Ninth Circuit consider the number of named plaintiffs

17  receiving awards, "the proportion of the payments relative to the settlement amount, and the size

18  of each payment." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 462 (E.D. Cal. 2013).

19         The Settlement provides for Class Representative Service Awards of $10,000 each to

20  plaintiffs Kang and Moses. Settlement ¶38. These proposed awards are consistent with the

21  $10,000 service award already approved by Judge Anderson for plaintiff Ibarra, *see* Stevens Decl.,

22  ¶80, and with amounts commonly awarded in district courts in the Ninth Circuit. *See, e.g.*, *Quiruz*,

23  2020 WL 6562334, at *11 (approving $10,000 class representative service award); *Spann v. J.C.*

24  *Penney Corp.*, 211 F.Supp.3d 1244, 1265-66 (C.D. Cal. 2016) (same); *Dyer*, 303 F.R.D. at 335

25

26  _____

27  California Supreme Court held that unpaid wages may not be recovered through a PAGA penalties

28  claim. *See Z.B., N.A. v. Superior Court*, 8 Cal.5th 175 (2019).

1   (same); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) ("Incentive

2   awards typically range from $2,000 to $10,000.").

3       The proposed service awards compensate the named plaintiffs for their time and effort in

4   this litigation, including by participating actively in discovery, helping to identify important

5   documents that helped establish Wells Fargo's liability, and identifying additional class members

6   to assist in counsel's investigation. In addition, the named plaintiffs undertook the risks of

7   retaliation or reputational harm in the banking industry, and of the payment of costs in the event

8   the litigation had been unsuccessful. The named plaintiffs are also providing a general release that

9   encompasses all potential individual claims. *See* Dkt. 96-1, ¶¶77-80; Kang Decl., ¶¶4-8; Moses

10  Decl., ¶¶4-9; *see, e.g.*, *Bellinghausen*, 306 F.R.D. at 267-68 (approving service award based on

11  plaintiff's participation in the litigation, risks undertaken, and agreement to general release);

12  *Boring v. Bed Bath & Beyond*, 2014 WL 2967474, at *3 (N.D. Cal. June 20, 2013) (same); *Smith*

13  *v. Kaiser Foundation Hosps.*, 2020 WL 5064282, at *21 (S.D. Cal. Aug. 26, 2020) (preliminarily

14  approving service awards where named plaintiffs participated in the litigation and signed a

15  "broader release").

16      The total value of the proposed service awards represents a tiny fraction – three one-

17  hundredths of 1% -- of the gross settlement value, another factor establishing the reasonableness

18  of the proposed service awards. *See, e.g.*, *In re On-Line DVD Rental Antitrust Litig.*, 779 F.3d 934,

19  947-48 (9th Cir. 2015) (approving service awards comprising in the aggregate less than 1% of the

20  gross settlement value); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000)

21  (approving service awards comprising 0.56% of total settlement fund).

22      Finally, the relationship between the proposed service awards to the range of individual

23  settlement payments also supports the proposed awards. Individual class member recoveries from

24  the net settlement fund will be *on average* approximately $12,762.69, *exceeding* the proposed

25  $10,000 service awards. This is further evidence that the proposed service awards are reasonable,

26  as Judge Anderson already found with respect to plaintiff Ibarra. *See, e.g.*, *Wren v. RGIS Inventory*

27  *Specialists*, 2011 WL 1230826, at *37 (N.D. Cal. Apr. 1, 2011) (approving service awards that

28  exceeded the average settlement payment but were less than the largest settlement payments).

**CONCLUSION**

For the foregoing reasons, the Court should grant final approval of the Settlement. The Court should also approve the class representative service awards of $10,000 each to plaintiffs James Kang and Michael Moses.

DATED:  May 28, 2021                     Respectfully submitted,

**HAFFNER LAW PC**
**STEVENS, L.C.**
**ALTSHULER BERZON LLP**

By:     /s/ Paul D. Stevens
        Paul D. Stevens
        Attorneys for Plaintiffs James C.
        Kang, Michael Moses, Jacqueline Ibarra, and
        the Class