1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| JAMES KANG and MICHAEL MOSES, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | Case No. 17-cv-06220-BLF |
| PATRICIA BARRERAS and JACQUELINE F. IBARRA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | Case No. 21-cv-00071-BLF<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES; AND ADDRESSING OBJECTION OF CLASS MEMBER KIRK E. FYSON** |

This order addresses Plaintiffs' motion for final approval of the parties' class action settlement, Plaintiffs' motion for attorneys' fees and expenses, and class member Kirk E. Fyson's objection to the class action settlement and to the amount of attorneys' fees requested.

For the reasons discussed below, Plaintiffs' motion for final approval of the class action settlement is GRANTED. Plaintiffs' motion for attorneys' fees and expenses is GRANTED IN PART AND DENIED IN PART. Mr. Fyson's objection is OVERRULED.

In recognition of Mr. Fyson's contribution to the Court's evaluation of Plaintiffs' motions, the Court finds that a modest award of attorneys' fees and expenses to Mr. Fyson may be appropriate.  Mr. Fyson MAY file a motion for attorneys' fees and expenses within fourteen days after the date of this order.

## I.    BACKGROUND

In this consolidated class action, Plaintiffs claim that Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), violated California wage and hour laws with respect to its California-based mortgage sales force, referred to as home mortgage consultants ("HMCs").  Prior to being consolidated in this Court, three separate class actions were filed against Wells Fargo on behalf of California HMCs.  That procedural history is set forth in detail, as it is relevant to the Court's determination whether the proposed settlement is fair, reasonable, and adequate.

*Ibarra*

The first action, *Ibarra*, was filed by Jacqueline Ibarra and Patricia Barreras in the Los Angeles County Superior Court and later removed to the United States District Court for the Central District of California ("Central District").[1]  *See Barreras v. Wells Fargo Bank, N.A.*, No. CV 17-4344 PA (ASX), 2018 WL 5276294, at *1 (C.D. Cal. Jan. 19, 2018).  The plaintiffs initially asserted multiple state law claims against Wells Fargo on behalf of California HMCs, but only two claims survived:  a claim for failure to provide rest periods under California Labor Code § 226.7, and a derivative claim for violation of California's Unfair Competition Law ("UCL"). *See id.*  District Judge Percy Anderson certified a class on those claims for the period March 17, 2013 through August 1, 2017, and he granted summary judgment for the plaintiffs on liability. *See id.* at *1, 8.

Several months later, Judge Anderson issued findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a), awarding damages to the *Ibarra* class.  *See Ibarra v. Wells Fargo Bank, N.A.*, No. CV 17-4344 PA (ASX), 2018 WL 2146380, at *7 (C.D. Cal. May 8, 2018).  Section 226.7 provides in relevant part that "[i]f an employer fails to provide

---

[1] The first action has been referred to as both "*Ibarra*" and "*Barreras*" over the course of the litigation.  This Court refers to the action as "*Ibarra*."

United States District Court
Northern District of California

an employee a meal or rest or recovery period in accordance with a state law . . . the employer

shall pay the employee one additional hour of pay at the employee's *regular rate of compensation*

for each workday that the meal or rest or recovery period is not provided." Cal. Lab. Code §

226.7(c) (emphasis added). The *Ibarra* plaintiffs argued that the "regular rate of compensation"

includes all forms of qualifying compensation, including commissions and other non-discretionary

pay. *See Ibarra*, 2018 WL 2146380, at *2. *See id.* Wells Fargo argued that the "regular rate of

compensation" includes only the employee's base hourly rate. *See id.* The parties stipulated that

under the plaintiffs' construction damages would total $97,284,817.91, and under Wells Fargo's

construction damages would total $24,472,114.36. *See id.* Judge Anderson adopted the plaintiffs'

construction of § 226.7 and awarded damages to the *Ibarra* class in the amount of $97,284,817.91.

*See id.* at *6-7.

The *Ibarra* plaintiffs filed a motion for attorneys' fees and costs, seeking attorneys' fees in

the amount of $24,321,204 (25% of the common fund judgment), costs in the amount of

$62,214.50, and a service award for Plaintiff Jacqueline Ibarra in the amount of $100,000. *See*

*Ibarra v. Wells Fargo Bank, N.A.*, No. CV 17-4344 PA (ASX), 2018 WL 5276295, at *2 (C.D.

Cal. Sept. 28, 2018). Judge Anderson granted the motion in part, but he cut the proposed

attorneys' fees and service award substantially. *See id.* at *7. Judge Anderson granted attorneys'

fees in the amount of $1,967,253.76, costs in the amount of $61,498.50, and a service award in the

amount of $10,000. *See id.* at *7.

Wells Fargo appealed the judgment and the *Ibarra* plaintiffs appealed the attorneys' fees

award. Those appeals are discussed further below.

*Kang* and *Moses*

While *Ibarra* was being litigated in the Central District, James Kang and Michael Moses

filed separate actions in the United States District Court for the Northern District of California

("Northern District"), asserting wage and hour claims against Wells Fargo on behalf of California

HMCs. *See Kang v. Wells Fargo Bank, N.A.*, No. 17-cv-06220-BLF; *Moses v. Wells Fargo Bank,*

*N.A.*, No. 18-cv-06679-BLF. This Court granted an opposed class certification motion in *Kang*.

*See* Class Cert. Order, ECF 54. Subsequently, *Kang* and *Moses* were consolidated under the *Kang*

United States District Court
Northern District of California

case number, and the Court granted the parties' stipulated request to modify the *Kang* class certification to include a § 226.7 rest period claim that had been asserted in *Moses*.  *See* Order, ECF 63.  That claim was identical to the § 226.7 rest period claim certified in *Ibarra*, but for a later class period, August 2, 2017 through March 31, 2018.  The operative first amended complaint ("FAC") filed by Kang and Moses includes the § 226.7 rest period claim, a claim for penalties under the Private Attorneys General Act ("PAGA"), Cal. Lab. Code § 2698 *et seq*., and related claims.  *See id*.  At the parties' request, the Court stayed *Kang* pending disposition of Wells Fargo's appeal of the *Ibarra* judgment.

> *Disposition of the Ibarra Appeals*

On April 15, 2020, the United States Court of Appeals for the Ninth Circuit ("Ninth Circuit") issued its decision on Wells Fargo's appeal in *Ibarra*, affirming liability but concluding that the damages calculation should be stayed pending the California Supreme Court's anticipated clarification of § 226.7, and remanding with instructions for further proceedings on damages.  *See Ibarra v. Wells Fargo Bank, N.A.*, 809 F. App'x 361, 365 (9th Cir. 2020).  At that time, the only California Court of Appeal decision interpreting "regular rate of compensation" under § 226.7 was *Ferra v. Loews Hollywood Hotel, LLC*, 40 Cal. App. 5th 1239 (2019).  *See Ibarra*, 809 F. App'x at 364-65.  That decision favored Wells Fargo's position, as it construed "regular rate of compensation" to include only the employee's "base hourly wage."  *See id*.  However, the California Supreme Court had granted review in *Ferra*.  Under those circumstances, the Ninth Circuit concluded that "the better course of action is not to decide this important question of state law ourselves, but to leave that question in the hands of the California Supreme Court."  *Id*. at 365.

The Ninth Circuit remanded *Ibarra* to the Central District with instructions to order Wells Fargo to make immediate payment of $24,472,114.36, as the plaintiffs were entitled to at least that amount pursuant to the parties' stipulations regarding damages.  *See Ibarra*, 809 F. App'x at 365.  The Ninth Circuit "[left] it to the district court to decide the amount of any additional payment owed due to post-judgment interest, any implications of the pending attorney's fees appeal for payment of the damages to Plaintiffs, and any other questions of allocation to Plaintiffs."  *Id*.  The Ninth Circuit stayed distribution of the remaining $72,812,703.55 of the damages award pending

4

United States District Court
Northern District of California

the California Supreme Court's decision in *Ferra*, explaining that "[a]lthough some judicial economy might be lost by remanding to the district court, the fact that the parties have stipulated to alternative damages amounts – leaving only the question of which legal approach to calculating damages is correct – significantly narrows the scope of what remains to be resolved in any further proceedings." *Id*. at 366.  The Ninth Circuit's mandate issued on June 1, 2020.  *See Ibarra v. Wells Fargo Bank, NA*, Case No.21-cv-00071-BLF, ECF 82.

On June 3, 2020, the Ninth Circuit administratively closed the *Ibarra* plaintiffs' appeal of the attorneys' fees award, pending the California Supreme Court's decision in *Ferra* and anticipated further proceedings in the Central District.  *See Ibarra v. Wells Fargo Bank, N.A.*, No. 18-56425, Dkt. Entry 20.  The Ninth Circuit's order made clear that the administrative closure did not constitute a decision on the merits of the plaintiffs' appeal, and that either party could move to reopen the appeal of the attorneys' fees award.  *See id.*

*Remand of Ibarra and Transfer of Ibarra to the Northern District*

Following remand, Judge Anderson approved the parties' stipulated request that Wells Fargo be ordered to make an immediate payment of $25,696,122.35, comprising the $24,472,114.36 ordered by the Ninth Circuit plus post-judgment interest in the amount of $1,224,007.99.  *See Ibarra v. Wells Fargo Bank, NA*, Case No.21-cv-00071-BLF, ECF 90.  Judge Anderson directed that 25% of that amount, or $6,424,030.59, be held back to pay potential attorneys' fees, as the *Ibarra* plaintiffs intended to pursue their appeal to increase the attorneys' fees award to 25% of the common fund judgment.  *See id.*  He also directed that $30,000 be held back to pay potential administrative fees and that the $10,000 service award be paid to class representative Jacqueline Ibarra.  *See id.*  Judge Anderson ordered that the remainder of the deposited funds be distributed to the class.  *See id.*

On October 29, 2020, the *Ibarra* plaintiffs filed a notice of settlement, advising that a global settlement had been reached with respect to *Ibarra* and *Kang* (as consolidated with *Moses*). *See Ibarra v. Wells Fargo Bank, NA*, Case No.21-cv-00071-BLF, ECF 91.  On December 14, 2020, Judge Anderson granted the parties' stipulated request to transfer *Ibarra* to the Northern District in order to facilitate settlement of *Ibarra* and *Kang*.  *See Ibarra v. Wells Fargo Bank, NA*,

5

1    Case No.21-cv-00071-BLF, ECF 91.  Judge Anderson clearly did not feel that the Ninth Circuit's

2    mandate constrained his authority to transfer *Ibarra* to this Court to facilitate a global settlement.

3                    *Consolidation of Ibarra and Kang and Preliminary Approval of Class Action Settlement*

4            After being transferred to the Northern District, *Ibarra* was related to and ultimately

5    consolidated with *Kang*.  Plaintiffs Jacqueline Ibarra, James Kang, and Michael Moses are the

6    representatives of the resulting consolidated class action.  Plaintiffs have entered into a settlement

7    with Wells Fargo on behalf of a Settlement Class that includes all members of the previously

8    certified *Ibarra* and *Kang* classes, as well as 844 HMCs previously excluded from the certified

9    classes on the ground that they had signed individual arbitration agreements.[2]  *See* Stevens Decl. ¶

10   42, ECF 115-2.  There are approximately 4,939 class members.  *See id.* ¶ 43.  The current

11   consolidated class thus has 475 more individuals than the *Ibarra* class of 4464 members.  *See*

12   *Ibarra*, 2018 WL 5276295, at *2 (noting that *Ibarra* class had 4464 members).

13          The settlement resolves all claims previously asserted in *Ibarra* and *Kang*.  The primary

14   claim asserted in the consolidated class action is the § 226.7 rest period claim, which was asserted

15   in *Ibarra* for the period March 17, 2013 through August 1, 2017, and in *Kang* for the period

16   August 2, 2017 through March 31, 2018.  Other claims include minimum wage, vacation pay, and

17   waiting time claims, and a claim for penalties under PAGA.

18          The Settlement Class and two Subclasses are defined in as follows:

19          Settlement Class
20          [A]ll individuals who worked for Wells Fargo in the State of California in the job
             title of Home Mortgage Consultant, Home Mortgage Consultant Jr., Private
21          Mortgage Banker, or Private Mortgage Banker, Jr. at any time between March 17,
             2013 and December 31, 2019.

22          Rest Period Subclass
23          All individuals who worked for Wells Fargo in the State of California in the job
             title of Home Mortgage Consultant, Home Mortgage Consultant Jr., Private
24          Mortgage Banker, or Private Mortgage Banker, Jr. at any time between March 17,
             2013 and March 31, 2018.

25

26   _____

27   [2] The Settlement Class excludes certain individuals who are pursuing their own actions against
     Wells Fargo or who have entered into general release agreements with Wells Fargo.

28

United States District Court
Northern District of California

6

1

Non-Rest Period Subclass
All individuals who worked for Wells Fargo in the State of California in the job title of Home Mortgage Consultant, Home Mortgage Consultant Jr., Private Mortgage Banker, or Private Mortgage Banker, Jr. at any time between October 27, 2013 and December 31, 2019.

Settlement ¶ 32, Stevens Decl. Exh. 1, ECF 115-2.

Wells Fargo has agreed to settle this consolidated class action for a non-reversionary total of $95,696,122.35 ("Settlement Fund"), comprising the $25,696,122.35 already paid by Wells Fargo in *Ibarra*, plus an additional $70,000,000. *See* Settlement ¶ 35. The settlement allocates 90% of the net settlement proceeds to the Rest Period Subclass, and 10% of the net settlement proceeds to the Non-Rest Period Subclass. *See id*. ¶ 42.

The settlement provides for payment of $750,000 in civil penalties under PAGA, a maximum of $80,000 for administrative costs, and service awards of $10,000 each to James Kang and Michael Moses.[3] *See id.* ¶¶ 38-40. Additionally, class counsel may seek up to one-third of the Settlement Fund, or $31,898,707, in attorneys' fees and up to $100,000 in litigation expenses. *See id.* ¶ 37.

If the Court were to award the maximum amount of attorneys' fees authorized under the settlement – which it will not do for the reasons discussed below – the net settlement proceeds would total approximately $63,000,0000 for distribution to a Settlement Class of approximately 4,939 individuals. *See* Stevens Decl. ¶¶ 43-44, ECF 115-2. The average net settlement payment per class member would be $12,762,69, and more than a quarter of the Settlement Class would receive net payments between $20,000 and $53,000. *See id.* ¶ 46. Any attorneys' fees not approved by the Court would be added to the net settlement proceeds for distribution to the Settlement Class, rather than reverting to Wells Fargo. *See* Settlement ¶ 37. In response to this Court's comments at the preliminary approval hearing and the arguments asserted by Mr. Fyson, Plaintiffs have reduced their request for attorneys' fees to 25% of the Settlement Fund, or $23,924,030.58, plus actual litigation expenses of $99,568.96. Accordingly, if the Court were to approve the settlement, class members' recoveries would be substantially more than the already

---

[3] Plaintiff previously was granted a $10,000 service award by Judge Anderson in *Ibarra*, which was paid before *Ibarra* was transferred to the Northern District.

1   impressive recovery amounts estimated by Plaintiffs.

2         This Court granted Plaintiffs' motion for preliminary approval of the class action

3   settlement on April 1, 2021, and at that time it conditionally certified the Settlement Class, the

4   Rest Period Subclass, and the Non-Rest Period Subclass.  *See* Prelim. Appr. Order, ECF 110.  The

5   settlement administrator, Rust Consulting, Inc. ("Rust") mailed the class notice to the 4,939 class

6   members identified by Wells Fargo.  *See* Pikus Decl. ¶ 10, ECF 115-4.

7         *Current Motions*

8         Plaintiffs now seek final approval of the class action settlement and an award of attorneys'

9   fees and expenses.  No requests for exclusion from the settlement have been received by Rust.

10  Pikus Suppl. Decl. ¶ 16, ECF 132.  One class member, Mr. Fyson, objects to the proposed

11  settlement.

12        The Court conducted two hearings via Zoom on September 15, 2021 and September 23,

13  2021.  Mr. Fyson's counsel participated fully in those hearings, along with counsel for Plaintiffs

14  and counsel for Wells Fargo.  All counsel were exceptionally well-prepared and the oral argument

15  was of great assistance to the Court in its consideration of the issues presented by Plaintiffs'

16  motions.

17  **II.    MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

18        Plaintiffs seek approval of the parties' class action settlement, which is a global resolution

19  of all claims asserted in the now-consolidated *Ibarra*, *Kang*, and *Moses* actions.  The consolidated

20  action includes class claims under Rule 23 and a PAGA claim.

21        Mr. Fyson objects to the settlement on numerous grounds.  First, he asserts that approval of

22  the settlement would violate the Ninth Circuit's mandate in *Ibarra*.  Second, he challenges the

23  settlement's fee provision as an attempt to end run Judge Anderson's fees award in *Ibarra*.  Third,

24  Mr. Fyson contends that the settlement is collusive and strips the *Ibarra* class of vested rights in

25  the *Ibarra* judgment.  Fourth, he argues that Plaintiff Ibarra's general release is further evidence of

26  collusion. Fifth, Mr. Fyson contends that Plaintiffs have not provided sufficient evidence of the

27  value of the claims released by the Settlement Class, and therefore that the Court cannot properly

28  evaluate the fairness of the settlement.  Sixth, Mr. Fyson argues that the allocation of funds

United States District Court
Northern District of California

8

1    between class members is inequitable.  Seventh, he asserts that class counsel have not provided a

2    sufficient accounting of their hours.  Eighth, Mr. Fyson argues that he and other *Ibarra* class

3    members cannot meaningfully opt out of the settlement.

4         Plaintiffs contend that Mr. Fyson's arguments should not be considered because they were

5    not timely presented.  Plaintiffs filed their current motions on May 28, 2021.  *See* Mot. for Final

6    Appr., ECF 115; Mot. for Attys' Fees, ECF 114.  Objections to the settlement were due by June

7    14, 2021.  On June 14, 2021, Mr. Fyson filed a notice of objection, indicating that the reasons for

8    the objection would be provided in an accompanying memorandum.  *See* Fyson Notice of Obj.,

9    ECF 116.  However, the memorandum containing Mr. Fyson's substantive arguments was not

10   filed until the next day, June 15, 2021.  *See* Fyson Mem., ECF 117.  Because Mr. Fyson's

11   substantive arguments were filed after the deadline for objection, Plaintiffs argue that the Court

12   should decline to consider the objection as untimely.  Plaintiffs also assert that Mr. Fyson's

13   objection does not fairly raise the argument that the settlement violates the mandate rule, and that

14   as a result the mandate argument has been waived.  Finally, Plaintiffs contend that all of Mr.

15   Fyson's asserted grounds for objection are without merit.

16        While the Court agrees that Mr. Fyson's objection is untimely because his substantive

17   arguments were filed after the deadline for objection, the Court exercises its discretion to excuse

18   the untimely filing and consider Mr. Fyson's objection on the merits.  Mr. Fyson raises serious

19   concerns regarding the settlement.  Given the size of the settlement, the unusual procedural

20   posture of the case, and the Court's obligation to protect the interests of absent class members, the

21   Court finds it appropriate to consider Mr. Fyson's objection when evaluating the fairness of the

22   settlement.  With respect to Plaintiffs' waiver argument, the mandate rule is jurisdictional.  *See*

23   *United States v. Thrasher*, 483 F.3d 977, 982 (9th Cir. 2007) ("[I]n this circuit, if a district court

24   errs by violating the rule of mandate, the error is a jurisdictional one.").  Accordingly, the Court

25   will consider Mr. Fyson's contention that approval of the proposed settlement would violate the

26   mandate rule.

27        Because Mr. Fyson asserts that the mandate rule raises an absolute bar to approval of the

28   proposed settlement, the Court addresses that issue first.  The Court discusses the remainder of

United States District Court
Northern District of California

Mr. Fyson's grounds for objection in the context of evaluating the proposed settlement of Plaintiffs' class claims under Rule 23.  Finally, the Court addresses the proposed settlement of Plaintiffs' PAGA claim.

### A.   Mandate Rule

The mandate rule provides that when a case has been decided on appeal and remanded to the district court, "whatever was before [the appellate] court, and disposed of by its decree, is considered as finally settled." *Thrasher*, 483 F.3d at 981 (citation omitted).  "The [district court] is bound by the decree as the law of the case, and must carry it into execution according to the mandate." *Id*. (citation omitted).  "But the [district court] may consider and decide any matters left open by the mandate." *Id*. (citation omitted).  The Ninth Circuit has described the mandate "as limiting the district court's 'authority' on remand." *Id*. at 982.  "On remand, a trial court can only consider any issue not expressly or impliedly disposed of on appeal." *Vizcaino v. U.S. Dist. Ct. for W. Dist. of Washington*, 173 F.3d 713, 719 (9th Cir. 1999) (internal quotation marks and citation omitted), *opinion amended on denial of reh'g sub nom. In re Vizcaino*, 184 F.3d 1070 (9th Cir. 1999).

Mr. Fyson contends that the Ninth Circuit's remand in *Ibarra* limits the district court's authority to do anything but follow its instructions "to order payment of $24,472,114.36 by Wells Fargo" and "to stay the remaining $72,812,703.55 in potential stipulated damages pending a decision in *Ferra*." *Ibarra*, 809 F. App'x at 365-66.  Mr. Fyson points to the Ninth Circuit's statement that "the fact that the parties have stipulated to alternative damages amounts – leaving only the question of which legal approach to calculating damages is correct – significantly narrows the scope of what remains to be resolved in any further proceedings." *Id*. at 366.  Mr. Fyson contends that under the mandate rule this Court is without authority to do anything other than order distribution of the appropriate damages consistent with the California Supreme Court's decision in *Ferra*.

The California Supreme Court issued its decision in *Ferra* on July 15, 2021, after the parties settled the present action.  *See Ferra v. Loews Hollywood Hotel, LLC*, 11 Cal. 5th 858 (2021).  The California Supreme Court reversed the appellate court's narrow construction of the

United States District Court
Northern District of California

term "regular rate of compensation" in § 226.7, holding that the term "encompasses not only hourly wages but all nondiscretionary payments for work performed by the employee." *Id*. at 878. Mr. Fyson argues that pursuant to the Ninth Circuit's remand in *Ibarra*, this Court can do nothing other than order distribution of the remaining $72,812,703.55 awarded by Judge Anderson to the *Ibarra* class.

In support of his position, Mr. Fyson relies on *Vizcaino*, in which the district court had certified a class of persons employed by the defendant, Microsoft Corporation, and then granted judgment for Microsoft. *See Vizcaino*, 173 F.3d at 716. The Ninth Circuit reversed the district court's judgment for Microsoft and "remanded for the determination of any questions of individual eligibility for benefits that may remain following issuance of this opinion and for calculation of the damages or benefits due the various class members." *Id*. at 717 (internal quotation marks and citation omitted). On remand, in the context of a contested motion, the district court revised its prior class definition, with the result that the class was "drastically reduced." *Vizcaino*, 173 F.3d at 718. The Ninth Circuit held that its mandate "left the district court no room to revise the class definition, but it charged the court with the determination of any questions of individual eligibility for benefits." *Id*. at 722 (internal quotation marks and citation omitted). The Ninth Circuit also found that the district court's revision of the class was prohibited by Rule 23(c), which at that time permitted a certification order to be altered or amended ''before the decision on the merits,' not afterward." *Id*. at 721 (quoting Rule 23(c)(1)).

*Vizcaino* is factually distinguishable from the present case. Unlike the district court in *Vizcaino*, this Court has not unilaterally revised the definition of a certified class following remand. Here, the parties request modification of the definitions of classes previously certified in *Ibarra* and *Kang* as part of a global settlement. Plaintiffs correctly observe that nothing in *Vizcaino*, or in the other authorities cited by Mr. Fyson, suggests that the mandate rule bars parties from settling an action after remand. Plaintiffs also point out that Rule 23(c) has been amended to permit a certification order to be altered or amended at any time "before final judgment." Fed. R. Civ. P. 23(c)(3). Final judgment has not been entered in *Ibarra*, so there is no statutory bar to modification of the class definition pursuant to the global settlement.

United States District Court
Northern District of California

1    One of the decisions cited by Mr. Fyson recognizes that parties may settle after remand to

2  the district court.  *See Litman v. Massachusetts Mut. Life Ins. Co.*, 825 F.2d 1506 (11th Cir. 1987).

3  In *Litman*, a jury trial resulted in a verdict for the plaintiff.  *See id*. at 1512.  On appeal, the

4  Eleventh Circuit affirmed in part, reversed in part and remanded for a new trial on the issue of

5  punitive damages.  *See id.* at 1513.  Following remand, the defendant stipulated that it waived a

6  new trial and agreed to the jury's original award of punitive damages.  *See id*.  The district court

7  accepted that stipulation and entered judgment, which was affirmed on appeal.  *See id*.

8    On petition for rehearing, the Eleventh Circuit held that the judgment was contrary to the

9  mandate.  *See Litman*, 825 F.2d at 1514.  The litigants had been sent back to the district court for a

10  new determination of punitive damages as if the first trial never occurred.  *See id.*  "[T]he original

11  judgment as to the amount of punitive damages was null and void.  It no longer existed."  *Id*.

12  Thus, *both* parties had a right for a jury to set the amount of punitive damages.  *See id.*  Under

13  those circumstances the Eleventh Circuit concluded that a jury trial was the only proper outcome

14  "*unless a settlement was negotiated between the parties* or the mandate modified by the court of

15  appeals."  *Id*. (emphasis added).  Thus, *Litman* supports Plaintiffs' position that the mandate does

16  not bar them from settling after the *Ibarra* remand.

17    Plaintiffs' position also is supported by *Metro. Hous. Dev. Corp. v. Vill. of Arlington

18  Heights*, 469 F. Supp. 836 (N.D. Ill. 1979), *aff'd*, 616 F.2d 1006 (7th Cir. 1980).  In *Metro.*, the

19  Seventh Circuit remanded the action with explicit instructions regarding a three-step procedure the

20  district court was to follow.  *See id*. at 849.  The district court thereafter approved a consent

21  decree, rejecting an argument by intervenors that the mandate deprived the district court of

22  authority to enter a consent decree.  *See id*. at 849-50.

23    Having reviewed the relevant authorities, this Court concludes that parties to litigation

24  remain free to settle their disputes after remand, and that such settlement is not barred by the

25  mandate rule.  Mr. Fyson's objection to the class action settlement based on the mandate rule is

26  OVERRULED.

27

28

United States District Court
Northern District of California

### B.      Rule 23

#### 1.      Legal Standard

Court approval is required for settlement of a class action.  *See* Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class – or a class proposed to be certified for purposes of settlement – may be settled, voluntarily dismissed, or compromised only with the court's approval.").  Before granting such approval, the district court must determine that the class meets the requirements for certification under Federal Rule of Civil Procedure 23(a) and (b).  *See Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).  Finally, under Rule 23(e)(2) the district court has "an independent obligation to ensure that any class settlement is 'fair, reasonable, and adequate,' accounting for the interests of absent class members."  *Briseño v. Henderson*, 998 F.3d 1014, 1022 (9th Cir. 2021) (quoting Fed. R. Civ. P. 23(e)(2)).  In particular, the district court must scrutinize the settlement for signs of collusion as required by *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2011). *See Briseño*, 998 F.3d at 1023.

#### 2.      Notice to the Class was Adequate

Prior to granting preliminary approval of the class action settlement in this case, the Court carefully reviewed Plaintiffs' notice plan and requested that Plaintiffs make certain changes to the proposed class notice, which Plaintiffs did.  *See* Haffner Decl. ¶¶ 2-7 & Exhs. 2-3, ECF 109. After the changes requested by the Court were made, the Court granted preliminary approval of the class action settlement.  *See* Order Granting Prelim. Appr., ECF 110.

Plaintiffs have submitted evidence of their implementation of the approved notice plan, including the declaration and supplemental declaration of Chris Pikus on behalf of the settlement administrator, Rust.  *See* Pikus Decl., ECF 115-4; Pikus Suppl. Decl., ECF 132; Pikus Decl. Re CAFA Notice, ECF 137.  On April 15, 2021, pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b), Rust served a notice of settlement via U.S. Mail on the Attorney General of the United States and the Attorneys General of the twenty-nine states in which class members

1   reside.  *See* Pikus Decl. Re CAFA Notice, ECF 137.  More than ninety days have passed since

2   service of those notices.  *See* 28 U.S.C. § 1715(d).

3        Rust also provided direct notice to class members via U.S. Mail.  Wells Fargo provided

4   Rust with a mailing list containing class member's names, last known addresses, Social Security

5   Numbers, and employment information.  *See* Pikus Decl. ¶ 8.  Wells Fargo identified 4,939 class

6   members.  *See id.*  On April 29, 2021, Rust mailed the class notice to the 4,939 class members via

7   First Class Mail.  *See* Pikus Decl. ¶ 10.  Rust performed 329 address traces on class notices

8   returned as undeliverable.  *See id.* ¶ 11.  Rust was able to obtain current addresses for most of

9   those individuals.  *See id.*  As of August 31, 2021, only 29 class notices were undeliverable.  *See*

10  *id.*  The class notice advised class members that they could submit an exclusion, objection, and/or

11  dispute postmarked by June 14, 2021.  Rust received zero requests for exclusion from the

12  settlement, and one objection to the settlement.  *See* Pikus Suppl. Decl. ¶¶ 16-17.

13       The Court finds that the class members were provided with the best notice practicable, and

14  that such notice was adequate.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985)

15  ("[T]he procedure followed by Kansas, where a fully descriptive notice is sent first-class mail to

16  each class member, with an explanation of the right to 'opt out,' satisfies due process.");

17  *Tumampos v. Cathay Pac. Airways LTD.*, No. 16-CV-06208, 2018 WL 5603702, at *10 (N.D.

18  Cal. Sept. 21, 2018) (notice was adequate where "the Settlement Administrator mailed the class

19  notice by first-class mail to all 445 members of the settlement class at their last known address as

20  reflected in Defendant's business records.").

21            **3.      The Class Satisfies the Requirements for Class Certification**

22       A class action is maintainable only if it meets the four requirements for certification set

23  forth in Rule 23(a): (1) "the class is so numerous that joinder of all members is impracticable";

24  (2) "there are questions of law or fact common to the class"; (3) "the claims or defenses of the

25  representative parties are typical of the claims or defenses of the class"; and (4) "the representative

26  parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).

27       In addition to satisfying the Rule 23(a) requirements, "parties seeking class certification

28  must show that the action is maintainable under Rule 23(b)(1), (2), or (3)."  *Amchem Prods., Inc.*

United States District Court
Northern District of California

1  *v. Windsor*, 521 U.S. 591, 614 (1997).   Plaintiffs seek certification under Rule 23(b)(3), which

2  requires that "questions of law or fact common to class members predominate over any questions

3  affecting only individual members" and that "a class action is superior to other available methods

4  for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

5        The Court has no difficulty concluding that the first three requirements of Rule 23(a) are

6  met, and that the action is maintainable under Rule 23(b)(3).  "[N]umerosity is presumed where

7  the plaintiff class contains forty or more members," *In re Cooper Companies Inc. Sec. Litig.*, 254

8  F.R.D. 628, 634 (C.D. Cal. 2009), and here there are 4,939 class members, *see* Pikus Decl. ¶ 10.

9  The commonality requirement is met because the key issues in the case are the same for the

10  members of each subclass:  whether Wells Fargo failed to provide rest periods under California

11  Labor Code § 226.7, and whether Wells Fargo violated other wage-and-hour requirements.  "All

12  questions of fact and law need not be common to satisfy the commonality requirement.  The

13  existence of shared legal issues with divergent factual predicates is sufficient." *Gonzalez v. United*

14  *States Immigration & Customs Enf't*, 975 F.3d 788, 807 (9th Cir. 2020) (quotation marks, citation,

15  and brackets omitted).  Plaintiff's claims are "reasonably coextensive with those of absent class

16  members," which is all that is required to meet the typicality requirement.  *Id.* at 809.  With

17  respect to Rule 23(b)(3), the "predominance inquiry tests whether proposed classes are sufficiently

18  cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.  In the present

19  case, common questions regarding Wells Fargo's alleged violations of the relevant wage-and-hour

20  statutes predominate.  Given that commonality, and the number of class members, the Court

21  concludes that a class action is a superior mechanism for adjudicating the claims at issue.

22        The fourth requirement of Rule 23(a), adequacy of representation, is implicated by Mr.

23  Fyson's objection.  "To determine whether named plaintiffs will adequately represent a class,

24  courts must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts

25  of interest with other class members and (2) will the named plaintiffs and their counsel prosecute

26  the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985

27  (9th Cir. 2011) (internal quotation marks and citation omitted).  The record clearly demonstrates

28  that the named plaintiffs and class counsel have prosecuted this action vigorously, and that class

United States District Court
Northern District of California

counsel are extremely capable.  Mr. Fyson contends, however, that class counsel are acting in their own interests and to the detriment of *Ibarra* class members by seeking approval of this settlement.  Specifically, Mr. Fyson argues that class counsel are attempting to end run Judge Anderson's modest attorneys' fees award.  Mr. Fyson also argues that the settlement strips the *Ibarra* class of benefits awarded in the *Ibarra* case.

These and the other grounds for Mr. Fyson's objection are discussed below in the context of the Court's Rule 23(e) inquiry as to whether the settlement is fair, reasonable, and adequate.  As is explained in that section of the order, the Court concludes that Mr. Fyson's assertions of self-dealing on the part of class counsel are not supported by this record, and that class counsel are acting in the interests of the consolidated class as a whole.  Accordingly, the fourth requirement of Rule 23(a), adequacy of representation, is satisfied.

The Court concludes that the proposed class satisfies the requirements for certification under Rule 23(a) and (b)(3).

### 4.    The Settlement is Fair, Reasonable, and Adequate

"Federal Rule of Civil Procedure 23(e) requires court approval of all class action settlements, which may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate."  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015) (quotation marks and citation omitted).  As discussed above, the Court held two fairness hearings in this case to give the parties and Mr. Fyson sufficient time to present their arguments.

Rule 23(e)(2) sets forth several factors to be considered by the Court in determining whether a class action settlement is fair, reasonable, and adequate:

> (A)   the class representatives and class counsel have adequately represented the class;
>
> (B)   the proposal was negotiated at arm's length;
>
> (C)   the relief provided for the class is adequate, taking into account:
>
> > (i)    the costs, risks, and delay of trial and appeal;
> >
> > (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3);

(D)    The proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). As part of its evaluation of these factors, the district court must scrutinize the settlement for signs of collusion pursuant to the guidance in *Bluetooth*. *See Briseño*, 998 F.3d at 1023.

### a.    Rule 23(e)(2)(A) – Adequate Representation

The Court must determine whether Plaintiffs and class counsel have adequately represented the class. Plaintiffs Kang and Moses submit declarations describing the time and effort they have devoted to litigating this case. *See* Kang Decl. ¶¶ 3-8, ECF 115-5; Moses Decl. ¶¶ 3-8; ECF 115-6. Plaintiffs' counsel are experienced attorneys who have handled many wage-related class actions. *See* Haffner Decl. ¶¶ 4-7, ECF 115-1; Stevens Decl. ¶¶ 56-66, ECF 115-2. Counsel have devoted significant time and resources to litigating *Ibarra* and *Kang* over a period of more than four years. *See* Haffner Decl. ¶¶ 8-10, ; Stevens Decl. 5-34, ECF 115-2. Wells Fargo litigated the class claims on summary judgment in *Ibarra* and appealed the judgment when the *Ibarra* plaintiffs prevailed. In *Kang*, Wells Fargo contested class certification. The Court finds that Plaintiffs and class counsel have zealously and capably represented the class.

Mr. Fyson argues that class counsel have not provided adequate representation. In Mr. Fyson's view, class counsel have put their own interests before those of the class by consolidating *Ibarra* and *Kang* and seeking approval of a global settlement, in that manner avoiding Judge Anderson's attorneys' fees award in *Ibarra*. Mr. Fyson ignores the fact that class counsel's efforts resulted in Wells Fargo's agreement to pay an additional $70,000,000 beyond what Wells Fargo already has paid in *Ibarra* to settle the consolidated action. The settlement was reached when it was entirely uncertain whether the *Ibarra* class members would be entitled to any monies beyond those already paid by Wells Fargo. In fact, at the time this settlement was reached, California law precluded any greater recovery. Under the proposed settlement, the *Ibarra* class members will receive substantial additional distributions. This is not a situation in which class counsel are

United States District Court
Northern District of California

simply seeking to undo Judge Anderson's order.  Having obtained excellent results for the consolidated class, class counsel seek compensation for their efforts as they have a right to do under relevant case law.  Moreover, the *Ibarra* class had no settled right to the attorneys' fees in question because that issue was subject to a separate appeal that was administratively closed without prejudice.  *See Ibarra v. Wells Fargo Bank, N.A.*, No. 18-56425, Dkt. Entry 20.

Mr. Fyson also asserts that the settlement strips the *Ibarra* class of benefits awarded in *Ibarra*, and effectively forces the *Ibarra* class to fund the settlement for other class members.  To the extent Mr. Fyson objects to the prior *Ibarra* distribution being incorporated into the final settlement, Plaintiffs cite cases in which district courts included payments already made in the calculation of the final settlement amount.  *See, e.g., Potter v. Big Tex Trailer Mfg., Inc.*, No. EDCV 18-1678 PSG (KKx), 2019 WL 8512459, at *5 & n.1 (C.D. Cal. Sept. 26, 2019).  It is difficult to see how a global settlement could be reached without crediting more than $25,000,000 that Wells Fargo already has paid to the consolidated class.  The Court finds unpersuasive Mr. Fyson's argument that class counsel have not provided adequate representation.

### b.    Rule 23(e)(2)(B) – Arms' Length Negotiation

The settlement of the class claims was negotiated at arms' length following a day-long mediation with mediator David Rotman on October 21, 2020.  *See* Stevens Decl., ¶¶ 28-29, ECF 115-2.  Negotiations continued for three months before the parties agreed on all terms.  *Id.* ¶ 30.

### c.    Rule 23(e)(2)(C) – Adequate Relief

Class counsel obtained relief for the class that goes beyond merely adequate.  The non-reversionary settlement in the amount of $95,696,122.35, to be distributed among 4,939 class members, is exceptional.

### i.    Costs, Risks, and Delay of Trial and Appeal

With respect to the costs, risks, and delay of trial and appeal, *see* Fed. R. Civ. P. 23(e)(2)(C)(i), both the *Ibarra* class and the *Kang* class faced significant risk that the *Ferra* decision could have gone the other way.  In that event, the *Ibarra* class would not have been entitled to any additional payout from Wells Fargo, and the *Kang* class would have been in a far less favorable litigation position.

United States District Court
Northern District of California

Mr. Fyson contends that Plaintiffs have not provided sufficient evidence of the value of the claims released by the Settlement Class, and therefore that the Court cannot properly evaluate the fairness of the settlement.  In response, Plaintiffs concede that their preliminary approval papers contained a typographical error which resulted in valuation of the Non-Rest Break claims at approximately $94 million when they should have been valued at approximately $74 million.  *See* Goldsmith Decl. ¶¶ 3-6, ECF 118-1.  With Plaintiffs' clarification, the Court finds that Plaintiffs have provided sufficient evidence of the value of the claims released by the Settlement Class, and specifically that the overall settlement fund of $95.6 million represents 52% of Wells Fargo's overall exposure in this litigation.  *See* Stevens Decl. ¶¶ 48-51; Goldsmith Decl. ¶¶ 3-6, ECF 118-1.

The Court finds the appointment of Rust as the settlement administrator, with a cap of $80,000 on administrative expenses, to be reasonable.  During oral argument, Plaintiffs' counsel indicated that administrative expenses may exceed $80,000 in the event that a redistribution of funds is required.  If actual administrative expenses exceed $80,000 due to a redistribution, Plaintiffs may file an application for approval of those additional expenses.  Rust certainly is entitled to be paid a reasonable fee for its services.  However, at this stage of the proceedings, administrative expenses are capped at $80,000.

The Court also finds reasonable Plaintiffs' request to grant service awards of $10,000 each to Plaintiff Kang and Plaintiff Moses.  Incentive awards, "are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (citation omitted).  "Incentive awards typically range from $2,000 to $10,000."  *Bellinghausen v. Tractor Supply Co*., 306 F.R.D. 245, 267 (N.D. Cal. 2015).

The participation of Plaintiffs Kang and Moses extended through the pendency of the case, up to and through settlement.  Plaintiffs Kang and Moses have submitted declarations describing their participation in the litigation.  *See* Kang Decl. ¶¶ 3-8; Moses Decl. ¶¶ 3-8.  Judge Anderson previously granted Plaintiff Ibarra a $10,000 service award.  Based on Plaintiffs' efforts on behalf

United States District Court
Northern District of California

1    of the class, and in light of the award previously granted to Plaintiff Ibarra, the Court finds that

2    granting service awards of $10,000 each to Plaintiff Kang and Plaintiff Moses is appropriate.

3                    ii.        **Proposed Method of Distributing Relief to the Class**

4           With respect to the proposed method of distribution, *see* Fed. R. Civ. P. 23(e)(2)(C)(ii),

5    each class member will be mailed a settlement payment without having to file a claim.  *See*

6    Settlement ¶34.  Those checks will be negotiable for 180 days after mailing, and any residual

7    amounts will be redistributed to class members who cashed their initial settlement checks.  *See*

8    Settlement ¶49.

9                   iii.        **Proposed Award of Attorney's Fees**

10          As to the terms of any proposed award of attorneys' fees, *see* Fed. R. Civ. P.

11   23(e)(2)(C)(iii), class counsel initially requested attorneys' fees in the amount of one-third of the

12   Settlement Fund, or $31,898,707, but after Mr. Fyson filed his objection, class counsel reduced

13   their request for attorneys' fees to 25% of the Settlement Fund, or $23,924,030.58.  Class counsel

14   also seek actual litigation expenses of $99,568.96.  The Court "must balance the proposed award

15   of attorney's fees vis-à-vis the relief provided for the class in determining whether the settlement

16   is adequate for class members."  *Briseño*, 998 F.3d at 1024 (internal quotation marks and citation

17   omitted).  As part of that analysis, the Court must apply the three indicia of collusion articulated in

18   *Bluetooth* "to determine if collusion may have led to class members being shortchanged."  *Id*. at

19   1026.  Those indicia are:  (1) "when counsel receive a disproportionate distribution of the

20   settlement, or when the class receives no monetary distribution but class counsel are amply

21   rewarded"; (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment

22   of attorneys' fees separate and apart from class funds, which carries the potential of enabling a

23   defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an

24   unfair settlement on behalf of the class"; and (3) "when the parties arrange for fees not awarded to

25   revert to defendants rather than be added to the class fund."  *Bluetooth*, 654 F.3d at 947.

26          None of the *Bluetooth* indicia are present here.  Even if the Court were to grant Plaintiffs'

27   initial request for an attorneys' fees award totaling one-third of the Settlement Fund – which it will

28   not – approximately $63,000,0000 in net settlement proceeds would remain for distribution to the

United States District Court
Northern District of California

Settlement Class of approximately 4,939 individuals.  *See* Stevens Decl. ¶¶ 43-44, ECF 115-2. The average net settlement payment per class member would be $12,762,69, and more than a quarter of the Settlement Class would receive net payments between $20,000 and $53,000.  *See id.* ¶ 46.   The settlement does not contain a clear sailing provision; all attorneys' fees will be paid from the Settlement Fund.  Finally, any attorneys' fees not approved by the Court will be added to the net settlement proceeds for distribution to the Settlement Class, rather than reverting to Wells Fargo.  *See* Settlement ¶ 37.

Mr. Fyson contends that collusion is evidenced by the fact that the settlement provision contains a full general release of Plaintiff Ibarra's claims in exchange for her $10,000 service award.  *See* Settlement ¶ 60.  Mr. Fyson argues that because Plaintiff Ibarra already received the $10,000 service award prior to settlement, she is being required to give Wells Fargo a full general release without receiving any compensation in return.  Plaintiff Ibarra has not objected to her full general release, and it is unclear how that general release harms Mr. Fyson or the class.  In the Court's view, this provision is not indicative of collusion.

### iv.     Agreements Required to be Identified

Finally, with respect to any agreements that must be identified under Rule 23(e)(3), *see* Fed. R. Civ. P. 23(e)(2)(C)(iv), there are none.  Mr. Fyson contends that Plaintiffs were required to identify a $2,000,000 settlement in *Hallman v. Wells Fargo*, 2:18-cv-01190-JLR (W.D. Wash.), another action claiming rest period violations filed by class counsel against Wells Fargo on behalf of Washington State Home Mortgage Consultants (HMCs).  The *Hallman* court has approved the $2,000,000 settlement, and it has granted class counsel's request for attorneys' fees in the amount of one-third the settlement amount, or $666,666.  This Court fails to perceive the relevance of the *Hallman* action, asserted on behalf of Washington HMCs under Washington law, to the present action on behalf of California HMCs asserted under California law.  The key aspect of the present settlement is that it was negotiated during the pendency of the *Ferra* appeal in the California Supreme Court, with all parties understanding that a decision on that appeal could substantially change the legal landscape with respect to Plaintiffs' § 226.7 claims.  *Ferra* is inapplicable to the claims asserted in *Hallman* under Washington law.  In short, the Court is not persuaded that Wells

United States District Court
Northern District of California

Fargo's settlement of *Hallman* bears on the proposed settlement in the present case, even if the same class counsel was involved in both cases.

<blockquote>

**d.      Rule 23(e)(2)(D) – Equitable Treatment**

</blockquote>

Mr. Fyson contends that the allocation of funds between class members is inequitable.  The settlement provides for individual settlement payments calculated pro rata based on eligible workweeks.  In Mr. Fyson's view, the settlement should have provided higher payments for class members who earned a substantial proportion of their compensation through commissions.  It is unclear whether Mr. Fyson has standing to raise this argument, as he himself does not appear to be such a class member.  In any event, the fact that Mr. Fyson would structure the settlement differently does not render it unfair.  *See In re High-Tech Employee Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5159441, at *6 (N.D. Cal. Sept. 2, 2015) (rejecting objection that settlement allocation was tied to base salary and did not take adequate account of other compensation such as bonuses).  "It is an inherent feature of the class-action device that individual class members will often claim differing amounts of damages – that is why due process requires that individual members of a class certified under Rule 23(b)(3) be given an opportunity to opt out of the settlement class to pursue their claims separately."  *Lane v. Facebook, Inc.*, 696 F.3d 811, 824 (9th Cir. 2012).  In present case, none of the nearly 5,000 class members opted out.  On this record, the Court finds that the settlement treats class members equitably relative to each other.

Mr. Fyson argues that he and other *Ibarra* class members cannot meaningfully opt out of the settlement.  According to Mr. Fyson, the "*Ibarra* class members currently have a protectable interest in the *Ibarra* judgment, consisting of more than $25,696.122.35 which has already been paid," including "$6,424,030 held in a court-created Attorney Fee Trust pending the resolution of Class Counsel's attorney fee appeal."  Fyson Mem. at 20, ECF 117.  As discussed above, Judge Anderson directed that 25% of that amount, or $6,424,030.59, be held back to pay potential attorneys' fees, as at that time the *Ibarra* plaintiffs intended to pursue their appeal to increase the attorneys' fees award to 25% of the common fund judgment.  Mr. Fyson contends that because the proposed settlement sweeps the $6,424,030.59 attorneys' fees holdback into the Settlement Fund, the *Ibarra* class members could not have opted out of the settlement without waiving their right to

1    share in that $6,424,030.59.

2         Absent an enforceable judgment in *Ibarra*, it is not clear that the *Ibarra* class has an

3    enforceable interest in the $6,424,030.59 attorneys' fees holdback.  The Ninth Circuit "[left] it to

4    the district court to decide the amount of any additional payment owed due to post-judgment

5    interest, any implications of the pending attorney's fees appeal for payment of the damages to

6    Plaintiffs, and any other questions of allocation to Plaintiffs."  *Ibarra*, 809 F. App'x at 365.  Judge

7    Anderson could have awarded additional attorneys' fees to class counsel on remand, or class

8    counsel could have resurrected and prevailed on their appeal of Judge Anderson's attorneys' fees

9    award.  The Court finds unpersuasive Mr. Fyson's argument that *Ibarra* class members had no

10   meaningful opportunity to opt out of the proposed settlement in the consolidated action.

### e.    Balancing of Rule 23(e)(2) Factors

12        After balancing the Rule 23(e)(2) factors, with particular attention to any indicia of

13   collusion, the Court finds that the proposed settlement is fair, reasonable, and adequate.

### f.    *Churchill* Factors

15        Prior to the 2018 amendment in which the current version of Rule 23(e) was adopted, the

16   Ninth Circuit had developed a list of eight factors, referred to as the "*Churchill* factors," for use in

17   evaluating class action settlements.  *See Bluetooth*, 654 F.3d at 946.  Those factors are:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely
> duration of further litigation; (3) the risk of maintaining class action status
> throughout the trial; (4) the amount offered in settlement; (5) the extent of
> discovery completed and the stage of the proceedings; (6) the experience and views
> of counsel; (7) the presence of a governmental participant; and (8) the reaction of
> the class members of the proposed settlement.

22   *Bluetooth*, 654 F.3d at 946 (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th

23   Cir. 2004)).

24        Because Rule 23 has been amended to list the factors most central to approval of a class

25   action settlement, the Court began its analysis with the Rule 23(e) factors, above.  *See Walters v.*

26   *Target Corp.*, No. 3:16-CV-1678-L-MDD, 2020 WL 6277436, at *5 (S.D. Cal. Oct. 26, 2020)

27   (evaluating class action settlement under Rule 23(e)(2) factors).  "Several of the *Churchill* factors

28   were incorporated into Rule 23(e)(2) as amended."  *Id.*  The Court considers the remaining

United States District Court
Northern District of California

*Churchill* factors, as relevant.  *See Churchill*, 361 F.3d at 576 n.7 ("Because the settlement evaluation factors are non-exclusive, discussion of those factors not relevant to this case has been omitted.").  Consideration of *Churchill* factors is not precluded by the 2018 amendment to Rule 23.  The Advisory Committee Notes make clear that the goal of the 2018 amendment was "not to displace any factor" developed by the courts, but rather to focus the courts and counsel on the "core concerns" enumerated in Subsection (e)(2).  Fed. R. Civ. Proc. 23, Advisory Comm. Notes.

The Court finds that final approval is supported by the *Churchill* factors that are not encompassed in Rule 23(e)(2).  The sixth *Churchill* factor, the experience and views of counsel, is particularly relevant here.  "[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight." *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980).  Class counsel in this case, who are extremely experienced and capable, unequivocally endorse the proposed settlement.

Mr. Fyson seems to suggest that class counsel should have gambled on the California Supreme Court reversing the lower court's ruling in *Ferra* rather than negotiating a significant recovery without risk before the *Ferra* decision was handed down.  The Court finds that class counsel's bird-in-the-hand approach was a reasonable and prudent means of protecting class members' rights given the uncertainty surrounding the outcome of *Ferra*.

The eighth *Churchill* factor, the reaction of the class, also weighs strongly in favor of approving the settlement.  The settlement administrator, Rust, received zero requests for exclusion and only one objection.  Opt-out percentages of nearly 5% have been deemed so "overwhelming[ly] positive" as to support approval of the class action settlement. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (approving settlement where 4.86% of the class opted out).  Accordingly, the Court concludes that the positive response of the class members provides an additional ground for approving the Settlement.

## C.    PAGA

### 1.    Legal Standard

Court approval is required for settlement of a PAGA claim. *See Hudson v. Libre Tech. Inc.*, No. 3:18-CV-1371-GPC-KSC, 2020 WL 2467060, at *8 (S.D. Cal. May 13, 2020).  "While

24

PAGA requires a trial court to approve a PAGA settlement, district courts have noted there is no governing standard to review PAGA settlements." *Id.* Some district courts have looked to the factors governing Rule 23 class action settlements for guidance in evaluating PAGA settlements. *See, e.g., Wanderer v. Kiewit Infrastructure W. Co.*, No. 2:18-CV-02898 WBS-DB, 2020 WL 5107618, at *2 (E.D. Cal. Aug. 31, 2020). This Court does not find that approach to be appropriate given the Ninth Circuit's emphasis on the differences between representative actions under PAGA and class actions under Rule 23. *See Canela v. Costco Wholesale Corp.*, 971 F.3d 845, 851 (9th Cir. 2020). ("[I]n a PAGA suit, the court does not inquire into the named plaintiff's and class counsel's ability to fairly and adequately represent unnamed employees – critical requirements in federal class actions." (quotation marks and citation omitted)).

Other district courts have found it appropriate to approve a PAGA settlement where "the settlement terms (1) meet the statutory requirements set forth by PAGA, and (2) are fundamentally fair, reasonable, and adequate in view of PAGA's public policy goals." *Chamberlain v. Baker Hughes, a GE Co., LLC*, No. 1:19-cv-00831-DAD-JLT, 2020 WL 4350207, at *4 (E.D. Cal. July 29, 2020). The statute requires that 75% of civil penalties recovered be allocated to the LWDA and 25% be allocated to aggrieved employees. *See id.* PAGA's goals include "augmenting the state's enforcement capabilities, encouraging compliance with Labor Code provisions, and deterring noncompliance." *Id.* (quotation marks and citation omitted). The Court finds this standard to be a sensible means for evaluating a PAGA settlement and applies it in this case.

### 2.   Discussion

Plaintiffs argue that the PAGA component of the proposed settlement satisfies these standards. Plaintiffs estimated the value of the PAGA claims asserted in *Kang* at approximately $13 million, and the parties allocated $750,000 of the gross settlement value to PAGA penalties. *See* Stevens Decl. ¶51. The settlement properly allocates 75% of the PAGA component to the LWDA, and 25% to the employees. *See* Labor Code §2699(i). The settlement as a whole provides for individual recoveries in the tens of thousands of dollars, vindicating the rights of the class members and acting as a deterrent to other California employers. Under these circumstances, the Court finds that even the relatively modest allocation of the Settlement Fund to PAGA

penalties effectuates PAGA's policy goals and warrants approval.

## III.   MOTION FOR ATTORNEYS' FEES

### A.   Legal Standard

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941. "An attorney also is entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quotation marks and citation omitted).

Plaintiffs' motion for attorneys' fees is governed by California law because Plaintiffs' claims are asserted under California law based on diversity jurisdiction. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Under California law, there are two primary methods of determining a reasonable attorney fee in class action litigation. *See Laffitte v. Robert Half Internat. Inc.*, 1 Cal. 5th 480, 489 (2016). "The percentage method calculates the fee as a percentage share of a recovered common fund or the monetary value of plaintiffs' recovery." *Id*. "The lodestar method, or more accurately the lodestar-multiplier method, calculates the fee by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate." *Id*. (internal quotation marks and citation omitted). "Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative 'multiplier' to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Id*. (internal quotation marks and citation omitted).

In common fund cases, it is appropriate to use a percentage calculation with a lodestar cross-check to determine an attorneys' fees award. *See id*. at 503. "The recognized advantages of the percentage method – including relative ease of calculation, alignment of incentives between counsel and the class, a better approximation of market conditions in a contingency case, and the encouragement it provides counsel to seek an early settlement and avoid unnecessarily prolonging

the litigation," render the percentage method "a valuable tool." *Id.* "If the multiplier calculated by means of a lodestar cross-check is extraordinarily high or low, the trial court should consider whether the percentage used should be adjusted so as to bring the imputed multiplier within a justifiable range, but the court is not necessarily required to make such an adjustment." *Id.* at 505.

### B.    Discussion

Addressing expenses first, the Court has no hesitation in approving an award of actual litigation expenses in the requested amount of $99,568.96. Class counsel have submitted declarations showing that the requested expenses were reasonably incurred. *See* Stevens Decl. ¶¶ 83-84, ECF 114-2; Haffner Decl. ¶ 15, ECF 114-1; Rubin Decl., ¶ 25, ECF 114-3. The principal expenses include plaintiffs' expert damages consultants in Ibarra, plaintiffs' share of the mediator's fees for two mediations, and the class notices in *Ibarra* and *Kang*. *See* Stevens Decl. ¶¶ 83-84, ECF 114-2; Haffner Decl. ¶ 15, ECF 114-1; Rubin Decl., ¶ 25, ECF 114-3. The expenses were necessary to this litigation, benefitted the class, and are the type of expenses normally billed to paying clients. Based on class counsel's declarations, the Court finds an award of expenses in the amount of $99,568.96, which is less than the amount of expenses permitted by the settlement agreement, to be reasonable and necessary.

Turning to attorneys' fees, the Court observes at the outset that it is not bound by Judge Anderson's award of attorneys' fees in *Ibarra*. Because of the procedural posture created by the Ninth Circuit's remand in *Ibarra* and termination of the *Ibarra* plaintiffs' appeal of that fees award, there is no enforceable judgment in *Ibarra* that could constrain this Court's exercise of its discretion on attorneys' fees. The record before this Court is significantly different from the record that was before Judge Anderson when he entered his attorneys' fees order in 2018. Class counsel have achieved a global settlement of three class actions. The Settlement Fund of $95,696,122.35 confers an extraordinary benefit on the consolidated class. At the time settlement was reached, California law was unfavorable to Plaintiffs' position on their primary claim under § 226.7. Class counsel in the present case funded amicus counsel who pursued the appeal of that unfavorable law in *Ferra*, with no guarantee that those appellate expenses would be reimbursed. Because the factual and legal landscape has changed so drastically since Judge Anderson issued

his attorneys' fees ruling, this Court finds that the only reasonable approach is to consider

Plaintiffs' motion for attorneys' fees based on the current record.

While Plaintiffs' Motion for Attorneys' Fees and Litigation Expenses requests an award of

attorneys' fees totaling 33% of the Settlement Fund, or $31,898,707, Plaintiffs reduced their

request in their Response to Objector Fyson.  *See* Mot. for Attorneys' Fees, ECF 114; Response to

Objector Fyson, ECF 118.  Plaintiffs stated that they had given further thought to the serious

reservations the Court had expressed at the preliminary approval hearing as to the reasonableness

of Plaintiffs' initial fee request, and that they would be amenable to an award of attorneys' fees

equal to 25% of the Settlement Fund, or $23,924,030.58.  An award of 25% is well within the "the

20 to 40 percent range of contingency fee contracts found in the marketplace."  *Chavez v. Netflix,*

*Inc.*, 162 Cal. App. 4th 43, 65 (2008).

"[P]ermitting the amount of the recovery to influence the fee is most justified where the

amount of the recovery is not due primarily to the size of the class."  *Lealao v. Beneficial*

*California, Inc.*, 82 Cal. App. 4th 19, 53 (2000).  Where the size of the individual recoveries is

large, then basing attorneys' fees on the class's recovery may be "a more authentic indication of

the value of counsel's contribution than might otherwise be true."  *Id.*  Under California law,

Plaintiffs' request for an attorneys' fees award totaling 25% of the common fund is "in the range

set by other class action lawsuits."  *Laffitte*, 1 Cal. 5th at 488 (award of one-third of the common

fund within the appropriate range of attorneys' fees awards for class action lawsuits in California).

Because the requested fees are so high, however, the Court concludes that a lodestar cross-check is

appropriate.

Class counsel spent 4,202.75 hours, after the exercise of billing judgment, on these cases

from February 2017 through the date of their attorneys' fees motion.  The resulting lodestar is

$3,832,682.50.  Counsel's hours and fees are adequately documented.  *See* Stevens Decl., ¶¶ 8-34,

73, 81, ECF 114-2; Haffner Decl. ¶¶ 8-10, 12, 14, ECF 114-1; Rubin Decl., ¶¶ 8-17, 23 & Exh. 1,

ECF 114-3.  The Court finds unpersuasive Mr. Fyson's assertion that class counsel have not

provided a sufficient accounting of their hours.  Under California law, "trial courts conducting

lodestar cross-checks have generally not been required to closely scrutinize each claimed attorney-

United States District Court
Northern District of California

United States District Court
Northern District of California

1    hour, but have instead used information on attorney time spent to focus on the general question of

2    whether the fee award appropriately reflects the degree of time and effort expended by the

3    attorneys." *Laffitte*, 1 Cal. 5th at 505.

4            Moreover, the Court has reviewed counsel's billing rates and finds them to be within the

5    range of fees awarded in this district.  Appellate counsel seeks rates of $640-$1,150 for

6    experienced appellate counsel.  *See* Rubin Decl. ¶ 23, ECF 114-3.  Class counsel requests rates of

7    $325-$950, also in line with other fee awards in this district for similarly experienced attorneys.

8    *See* Stevens Decl. ¶ 74, ECF 114-2.

9            The Court also has reviewed the summary of tasks performed and hours expended and

10   finds that 4,202.75 hours is reasonable for the work performed across *Ibarra*, *Kang*, and *Moses*,

11   including appeals and amici filings in *Ferra*.  *See* Stevens Decl. ¶¶ 81-82 & Exh. 3, ECF 114-2;

12   Rubin Decl. ¶ 23 & Exh. 1, ECF 114-3.  Although Mr. Fyson objects to the absence of detailed

13   time descriptions, on a lodestar cross-check this Court is not required to flyspeck the time sheets.

14   The Court finds adequate the charts submitted by counsel, which clearly describe the major tasks

15   performed and detail the number of hours devoted to those tasks.  Based on this Court's ample

16   experience and familiarity with the number of hours generally devoted to such cases, the lodestar

17   calculation is reasonable.

18           Next, the court considers the magnitude of the multiplier required to produce a fee award

19   equal to 25% of the Settlement Fund.  In this case, a 6.24 multiplier would be required.  In

20   comparison with similar cases in the Ninth Circuit, this imputed multiplier appears to be outside

21   the normal range.  The Ninth Circuit has recognized that multipliers generally range from 1 to 4.

22   *See Vizcaino*, 290 F.3d at 1051 n.6.  District courts within the Ninth Circuit commonly apply

23   multipliers in that range in California wage and hour class actions.  *See, e.g., Uschold v. NSMG*

24   *Shared Servs., LLC*, No. 18-CV-01039-JSC, 2020 WL 3035776, at *16 (N.D. Cal. June 5, 2020)

25   (applying multiplier of 4); *De Leon v. Ricoh USA, Inc.*, No. 18-CV-03725-JSC, 2020 WL

26   1531331, at *18 (N.D. Cal. Mar. 31, 2020) (applying multiplier of 1.09); *Ridgeway v. Wal-Mart*

27   *Stores Inc.*, 269 F. Supp. 3d 975, 999 (N.D. Cal. 2017) (applying multiplier of 2.0).

28           Class counsel cite numerous cases in which courts approved multipliers close to the 6.4

multiplier requested here.  *See, e.g., Steiner v. Am. Broadcasting Co.*, 248 Fed. App'x 780, 783 (9th Cir. 2007) (cross-check multiplier of 6.85); *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, No. 4:14-MD-2541-CW, 2017 WL 6040065, at *9 (collecting cases with multipliers of 3.41-9.3); *Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (approving cross-check multiplier of 5.2).  The cited cases are not wage and hour cases decided under California law, and therefore they are both factually and legally distinguishable from the present case.

Based on the lodestar cross-check, the Court finds that a fee award equal to 25% of the Settlement Fund would "reward counsel for their services at an extraordinary rate even accounting for the factors customarily used to enhance a lodestar fee."  *Laffitte*, 1 Cal. 5th at 504.  That said, a significant enhancement is warranted to fairly compensate class counsel for the exceptional results achieved.  As discussed herein, class counsel are experienced and capable, and they have zealously advocated for the *Ibarra* and *Kang* classes over a number of years.  The proper construction of § 226.7 presented a novel issue, and at the time settlement was reached the only available California decision on the issue went against Plaintiffs.  The procedural history of *Ibarra*, *Kang*, and *Moses*, and their ultimate consolidation after the *Ibarra* remand, made settlement far trickier than in the ordinary wage and hour class action.  The settlement resulted in substantial monetary recoveries for individual class members and Wells Fargo has modified its employment practices that led to this litigation.  The contingent risk presented was quite high, as class counsel advanced all expenses and in fact funded amicus counsel in the *Ferra* litigation.

Thus, informed by the lodestar cross-check and in consideration of the exceptional results achieved in this case, the Court determines that a modest downward adjustment of the 25% requested is warranted.  The Court finds that an award equal to 22% of the Settlement Fund, or $21,053,146.92, is fair and reasonable.

Plaintiffs' motion for attorneys' fees and expenses is GRANTED IN PART AND DENIED IN PART.  Class counsel are awarded attorneys' fees in the amount of $21,053,146.92 and litigation expenses in the amount of $99,568.96.

United States District Court
Northern District of California

United States District Court
Northern District of California

IV.   **ORDER**

    (1)    Plaintiffs' motion for final approval of the class action settlement is GRANTED.

    (2)    Rust Consulting, Inc. is appointed as the Settlement Administrator and awarded its fees and expenses not to exceed $80,000.

    (3)    Plaintiffs James Kang and Michael Moses are awarded $10,000 each for their services to the Class and Subclasses and their effort in pursuing this litigation.

    (4)    Plaintiffs' motion for attorneys' fees and expenses is GRANTED IN PART AND DENIED IN PART.  Plaintiffs are awarded attorneys' fees in the amount of $21,053,146.92 and litigation expenses in the amount of $99,568.96.

    (5)    Mr. Fyson's objection to the class action settlement and Plaintiffs' request for attorneys' fees is OVERRULED.

    (6)    In recognition of Mr. Fyson's contribution to the Court's evaluation of Plaintiffs' motions, he may file a motion for an award of attorneys' fees and expenses, supported by appropriate legal authority, within 14 days after the date of this order. Any award of attorneys' fees and expenses will be limited to those incurred in presenting arguments on which Mr. Fyson was successful.  The following page limits are imposed:  5 pages for Mr. Fyson's motion, should he file one; 5 pages total for any opposition, those pages to be shared by Plaintiffs and Defendant; and 3 pages for any reply.

    (7)    Entry of judgment will be deferred pending resolution of Mr. Fyson's motion for attorneys' fees and expenses, if any.

    (8)    No later than 21 days after the void date for individual settlement payments to Settlement Class Members, Plaintiffs shall file a Post-Distribution Accounting in accordance with the United States District Court for the Northern District of California's class action guidelines.

Dated:  December 8, 2021

_____
BETH LABSON FREEMAN
United States District Judge