UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JAMES KANG and MICHAEL MOSES, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>WELLS FARGO BANK, N.A.,<br><br>　　　　Defendant.<br>_____<br><br>PATRICIA BARRERAS and JACQUELINE F. IBARRA, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>WELLS FARGO BANK, N.A.,<br><br>　　　　Defendant. | Case No. 17-cv-06220-BLF<br><br><br><br><br><br><br><br>Case No. 21-cv-00071-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART OBJECTOR KIRK FYSON'S MOTION FOR ATTORNEYS' FEES AND SERVICE PAYMENT**<br><br>[Re: ECF 149] |

The Court has granted final approval of a class action settlement in this suit against Defendant Wells Fargo Bank, N.A. ("Wells Fargo") on behalf of its California-based home mortgage consultants ("HMCs"). *See* Final Approval Order, ECF 145. Plaintiffs claim that Wells Fargo violated California wage and hour laws, including California Labor Code § 226.7, which governs meal and rest breaks. Only one class member, Kirk Fyson, objected to the settlement. The Court overruled Mr. Fyson's objection in its final approval order, but it granted Mr. Fyson leave to file a motion for attorneys' fees. *See* Final Approval Order at 31.

Mr. Fyson has filed a motion seeking (1) an award of $583,636 in attorneys' fees and (2) a service award of $3,500. The motion is opposed by Plaintiffs. The Court finds the motion suitable for decision without oral argument. *See* Civ. L.R. 7-1(b).

As discussed below, the motion is GRANTED IN PART AND DENIED IN PART.

## I. OBJECTOR'S REQUEST FOR ATTORNEYS' FEES

### A. Legal Standard

"Under certain circumstances, attorneys for objectors may be entitled to attorneys' fees from the fund created by class action litigation." *Rodriguez v. Disner ("Rodriguez II")*, 688 F.3d 645, 658 (9th Cir. 2012). Members of a certified class have the right to object to the fairness of a class settlement and to appeal a district court's decision to overrule their objections. *See id*. "If these objections result in an increase to the common fund, the objectors may claim entitlement to fees on the same equitable principles as class counsel." *Id*. at 658-59. However, "where objectors do not add any new legal argument or expertise, and do not participate constructively in the litigation or confer a benefit on the class, they are not entitled to an award premised on equitable principles." *Id*. at 659.

### B. Mr. Fyson's Objection Did Not Result in an Increase to the Settlement Fund

In the present case, Mr. Fyson did his best to derail the extraordinary settlement achieved by Class Counsel, which creates a settlement fund of $95,696,122.35 for the benefit of 4,939 class members. As discussed at length in the final approval order, this case has a complicated procedural history arising from the consolidation of three cases from two districts, each at a different stage of the litigation process. *See* Final Approval Order at 2-7, ECF 145. Prior to consolidation, one of the cases was appealed to and remanded from the Ninth Circuit. *See id.* At the time the settlement was negotiated, the proper construction of California Labor Code § 226.7 – the key issue with respect to Plaintiffs' primary claim – was pending before the California Supreme Court and the only appellate decision on point favored Wells Fargo, not Plaintiffs. *See id*. Against this backdrop, Class Counsel negotiated a settlement that will result in an average net settlement payment of more than $12,000 per class member, and settlement payments in the $20,000 to $50,000 range to more than a quarter of the class members. *See id.* at 7.

2

Mr. Fyson filed an objection challenging the settlement on eight separate grounds. *See* Mem. ISO Objection, ECF 117. First, he asserted that this Court's approval of the settlement would violate the Ninth Circuit's mandate in *Ibarra*, the case that was appealed prior to consolidation. Second, he challenged the settlement's attorneys' fees provision as an attempted end-run around a prior fees award in the *Ibarra* suit. Third, Mr. Fyson contended that the settlement was collusive and stripped class members of rights vested in *Ibarra*. Fourth, he argued that Plaintiff Jacqueline Ibarra's general release was further evidence of collusion. Fifth, Mr. Fyson contended that Plaintiffs had not provided sufficient evidence of the value of the claims released by the settlement. Sixth, Mr. Fyson argued that the allocation of funds between class members was inequitable. Seventh, he asserted that Class Counsel had not provided a sufficient accounting of their hours. Eighth, Mr. Fyson argued that he and other *Ibarra* class members could not meaningfully opt out of the settlement. This Court rejected each and every one of Mr. Fyson's challenges in a lengthy written order. *See* Final Approval Order at 10-24.

Mr. Fyson also filed a motion to intervene so that he could take discovery relevant to his objections, and a motion to enforce the *Ibarra* mandate. *See* Mot. to Intervene, ECF 119; Mot. to Enforce, ECF 127. Both of those motions were denied by the Court. *See* Order Re Pending Motions and Requests, ECF 129. All told, Mr. Fyson filed more than 500 pages of briefing and exhibits (excluding his briefing on the current motion) after Plaintiffs filed their motion for final approval of the class action settlement. *See* ECF 116, 117, 119, 122, 125, 126, 127, 130, 140. Mr. Fyson did not prevail on any issue.

Mr. Fyson nonetheless requests an attorneys' fees award of $583,636 and a service award of $3,500. He asserts that his objection contributed to a significant reduction the amount of attorneys' fees awarded to Class Counsel by the Court, and thereby increased the settlement fund. He also asserts that his objection was a catalyst for Plaintiffs' voluntary reduction of their fees request from 33% to 25% of the settlement fund, or by $7,958,677, and waiver of appeal rights with respect to that $7,958,677. Plaintiffs contend that Mr. Fyson's objection had no effect on the amount of attorneys' fees awarded by the Court or their decision to reduce their fees request. Plaintiffs contend that Mr. Fyson's motion should be denied it its entirety.

1    The settlement agreement contemplated a motion for an award of attorneys' fees totaling
2    33% of the settlement fund, or $31,898,707. At the hearing on Plaintiffs' motion for preliminary
3    approval of the settlement, the Court expressed serious reservations about Plaintiffs' request for
4    such a large amount of fees, stating "I just about jumped out of my chair when I saw 8.9
5    multiplier." Hr. Tr. at 11:18-19, ECF 107. The Court engaged in colloquy with Class Counsel in
6    which the Court made clear that Plaintiffs had not cited legal authorities justifying the amount of
7    fees requested, and that the Court would exercise its "complete discretion" to determine an
8    appropriate fees award in the event the Court were to grant final approval of the class action
9    settlement. *Id*. at 11:17-12:15.
10   When Plaintiffs filed their motion for final approval, they did seek an award of attorneys'
11   fees totaling 33% of the settlement fund, or $31,898,707. *See* Mot. for Attorneys' Fees at 1, ECF
12   114. Mr. Fyson filed his objection approximately two weeks later. *See* Objection, ECF 116;
13   Mem. ISO Objection, ECF 117. For the most part, Mr. Fyson's briefing was addressed to issues
14   unrelated to attorneys' fees. *See id.* He devoted approximately one page of his 23-page
15   memorandum to challenging the documentation submitted by Plaintiffs in support of Class
16   Counsel's lodestar calculation, and he interlarded the remainder of his memorandum with sporadic
17   suggestions that Class Counsel had acted improperly by seeking a greater percentage of the
18   settlement fund than they had sought or been awarded in *Ibarra*. *See id.* at 2 (accusing Class
19   Counsel of being "[b]linded by their crusade to obtain attorneys' fees in an amount they believe is
20   deserved"); 3 ("That increase in the percentage of requested attorneys' fees – before a second
21   court – is enough to support denying the proposed settlement."); 13 (accusing Class Counsel of
22   "add[ing] to Class Counsel's fees by invading the Attorney Fee Trust and *Ibarra* class members'
23   bank accounts"); 19 (accusing Class Counsel of seeking an "over-the-top percentage of the fund").
24   In their Response to Objector Fyson filed a week later, Plaintiffs stated that "class counsel
25   would have no objection if the Court were to award the same 25% common fund fee that counsel
26   initially requested from the trial court in *Ibarra*. . . ." Resp. to Objector at 2, ECF 118. Based on a
27   lodestar cross-check, the Court found that a fees award equal to 25% of the settlement fund would
28   be too high, even considering the factors customarily used to enhance a lodestar fee. *See* Final

4

1    Approval Order at 30, ECF 145.  The Court ultimately awarded Plaintiffs attorneys' fees equal to
2    22% of the settlement fund, or $21,053,146.92.  *See id.* at 30-31.  That award was not based on
3    any argument raised by Mr. Fyson.  The Court expressly rejected Mr. Fyson's challenge to Class
4    Counsel's lodestar, finding that "Counsel's hours and fees are adequately documented," and
5    finding "unpersuasive Mr. Fyson's assertion that class counsel have not provided a sufficient
6    accounting of their hours."  *Id*. at 28.  The Court also rejected Mr. Fyson's suggestions that Class
7    Counsel acted improperly by seeking attorneys' fees greater than those awarded in *Ibarra*,
8    concluding that "it is not bound by Judge Anderson's award of attorneys' fees in *Ibarra*" and that
9    "[t]he record before this Court is significantly different from the record that was before Judge
10   Anderson when he entered his attorneys' fees order in 2018."  *Id*. at 27.

11   Mr. Fyson asserts that his objection was a catalyst for Plaintiffs' reduction of their fees
12   request from 33% to 25% of the settlement fund, or by $7,958,677.  He acknowledges that
13   Plaintiffs themselves attributed their reduced fees request to "having given further thought to the
14   Court's initial observations" at the preliminary approval hearing and a desire "to avoid creating
15   undue controversy where none is warranted."  Resp. to Objector at 2.  However, Mr. Fyson argues
16   that the timing of Plaintiffs' reduction of their fees request, and the fact that Plaintiffs made that
17   reduction in their formal response to his objection, suggests that the objection was at least partly
18   responsible for the reduced fees request.  He asks that his objection be credited with causing one-
19   third of what he characterizes as a "waiver" of fees, that is, that he be credited with causing
20   Plaintiffs to waive $2,652,892 (one-third of $7,958,677) in attorneys' fees.  Mr. Fyson further asks
21   that he be awarded 22% of this $2,652,892 "benefit" to the class, which would result in an award
22   of attorneys' fees to Mr. Fyson in the amount of $583,636.

23   The flaw in Mr. Fyson's argument is that even if his objection were viewed as a partial
24   catalyst for Plaintiffs' reduction in their fees request, Plaintiffs' reduction in their fees request did
25   not translate into a dollar-for-dollar increase to the common fund.  In no universe would the Court
26   have granted Plaintiffs' initial request for attorneys' fees totaling 33% of the settlement fund.  As
27   noted above, that request caused the undersigned to "just about jump[] out of [her] chair."  Hr. Tr.
28   at 11:18-19.  Indeed, the Court found that even the reduced request of 25% of the settlement fund

was too high based on a lodestar cross-check. *See* Final Approval Order at 30. It was for that reason the Court awarded attorneys' fees equaling 22% of the settlement fund. *See id.* Thus, it cannot be said that the Court reduced Plaintiffs' fees award based on the merits of Mr. Fyson's objection.

Consequently, even though the Court agrees with Mr. Fyson that his objection was a catalyst for Plaintiffs' waiver of $7,958,677 in attorneys' fees, the resulting benefit to the class cannot be quantified in the manner he suggests. Mr. Fyson proposes a variation of the percentage method, assuming a $7,958,677 benefit to the class, attributing 1/3 of that benefit – $2,652,892 – to his objection, and seeking 22% of $2,652,892 for a proposed fees award of $583,636. But Plaintiffs' waiver did not benefit the class in the amount of $7,958,677 because the Court had already admonished Class Counsel that the fee award would be substantially lower than requested. And in fact, after considering all the arguments, the Court further reduced the fee award to 22%. Objector's piggyback arguments were not a significant factor in increasing the settlement fund available to class members. *See In re Riverstone Networks, Inc.*, 256 F. App'x 168, 170 (9th Cir. 2007) ("The district court did not err in finding that the hours Chandler claimed were excessive and that Chandler's objection accomplished 'essentially the same thing' as the three-page letter submitted by the first objector.").

Accordingly, while Mr. Fyson correctly states that the percentage method is appropriate where an objector's "efforts resulted in a readily quantifiable benefit to the class," *see In re Optical Disk Drive Prod. Antitrust Litig.*, No. 10-MD-02143-RS, 2021 WL 4124159, at *1 (N.D. Cal. Sept. 9, 2021), this is not such a case. The Court must determine an alternative method for calculating an award of attorneys' fees based on the benefit Mr. Fyson actually conferred on the class.

    **C.    Mr. Fyson's Objection was a Catalyst for Plaintiffs' Waiver of Appeal Rights**

        **1.    Catalyst Theory**

As noted above, Mr. Fyson argues that his objection was a catalyst for Plaintiffs' voluntary reduction of their fees award from 33% to 25% of the settlement fund, or by $7,958,677. By voluntarily agreeing to that reduction, Plaintiffs waived their appeal rights regarding at least

$7,958,677 of the amount by which the Court cut Plaintiffs' initial fees request. Given that waiver, Mr. Fyson argues, Plaintiffs are significantly less likely to appeal the Court's final attorneys' fees award. In fact, Plaintiffs have represented in their opposition to Mr. Fyson's motion that they will not appeal the Courts' fees award of 22%. *See* Opp. at 3, ECF 150. Noting that Plaintiffs expressly reserved their right to appeal the Court's award of attorneys' fees in the settlement agreement, Mr. Fyson contends that the waiver of Plaintiffs' appeal rights as to a portion of the Court's fees order, and the reduction of the likelihood that Plaintiffs will appeal, constitute benefits to the class resulting from his objection.

Under the catalyst theory, attorney fees may be awarded where the litigation was a catalyst to the defendant's changed behavior. See *Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2017 WL 2902898, at *5 (N.D. Cal. July 7, 2017), *aff'd*, 737 F. App'x 341 (9th Cir. 2018) (approving class action settlement and applying catalyst theory to award attorneys' fees based on defendant's change to its product labels). "For claims brought under California law, the Ninth Circuit continues to recognize a catalyst theory for entitlement to fees." *Id.*; *see also Trew v. Volvo Cars of N. Am., LLC*, No. S-05-1379 RRB EFB, 2007 WL 2239210, at *4 (E.D. Cal. July 31, 2007) (awarding attorneys' fees under the catalyst theory in class action settlement of California state law claims).

The Court finds that Mr. Fyson's objection was a catalyst to Plaintiffs waiving their appeal rights as to a portion of the Court's attorneys' fees order. That waiver confers a benefit to the class by offering some certainty to the class regarding the finality of the Court's rulings. That certainty has value, particularly in light of Plaintiffs' express reservation of their right to appeal this Court's attorneys' fees award. In the Court's experience, it is quite unusual to include a reservation of the right to appeal attorneys' fees in a class action settlement agreement. However, the Court is mindful that when the *Ibarra* action was before Judge Anderson prior to consolidation, he awarded Class Counsel attorneys'fees that were significantly lower than those authorized under prevailing case law. Judge Anderson awarded damages to the *Ibarra* class in the amount of $97,284,817.91 and awarded attorneys' fees in the amount of $1,967,253.76, which was just over 2% of the common fund. *See Ibarra v. Wells Fargo Bank, N.A.*, No. CV 17-4344

7

1  PA (ASX), 2018 WL 5276295, at *2 (C.D. Cal. Sept. 28, 2018). Under those circumstances, it
2  perhaps is understandable that Plaintiffs sought an express preservation of their appeal rights. As
3  noted, Plaintiffs have indicated that they do not intend to appeal this Court's fees award in the
4  amount of 22% of the common fund, which is based on a completely different procedural and
5  factual record than that before Judge Anderson.

### 2.  Lodestar

Although the Court has determined that Mr. Fyson's objection conferred a benefit to the class under the catalyst theory, that benefit is not easily quantified. "[I]n situations where the benefit to the class is not easily quantified, the district court has discretion to award fees based on how much time counsel spent and the value of that time." *In re Lithium Ion Batteries Antitrust Litig.*, 2020 WL 7261313, at *2 (internal quotation marks and citation omitted). "The lodestar method is understandably used in those cases." *In re Easysaver Rewards Litig.*, No. 09-CV-02094-BAS-WVG, 2021 WL 230013, at *3 (S.D. Cal. Jan. 22, 2021). For example, district courts in the Ninth Circuit have used the lodestar method to calculate fees awards to objectors whose efforts resulted in a narrowing of the scope of the class members' release, or in reallocation of the settlement fund among class members. *See In re Lithium Ion Batteries Antitrust Litig.*, 2020 WL 7261313, at *2; *Marshall v. Northrop Grumman Corp.*, No. 2:16-CV-06794-AB-JCX, 2020 WL 5668963, at *3 (C.D. Cal. Sept. 18, 2020).

The Court is given some pause in applying the lodestar method to determine an award of attorneys' fees to Mr. Fyson, because Mr. Fyson states unequivocally that "Objector Counsel does not seek payment based on lodestar." Reply at 3, ECF 151. Mr. Fyson's counsel indicate that they have provided evidence of their lodestar only for the purpose of conducting a lodestar cross-check to their requested fees under the percentage method. As discussed above, however, the percentage method does not apply in this case. Accordingly, despite Mr. Fyson's disclaimer that he does not seek a lodestar award, the lodestar method appears to be the only means by which the Court can calculate an appropriate award of attorneys' fees here.

The Court therefore uses the lodestar method to determine an appropriate award of attorneys' fees, applying California law because Plaintiffs' claims are asserted under California

1  law based on diversity jurisdiction. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th
2  Cir. 2002). "The lodestar method, or more accurately the lodestar-multiplier method, calculates
3  the fee by multiplying the number of hours reasonably expended by counsel by a reasonable
4  hourly rate." *Laffitte v. Robert Half Internat. Inc.*, 1 Cal. 5th 480, 489 (2016) (internal quotation
5  marks and citation omitted). "Once the court has fixed the lodestar, it may increase or decrease
6  that amount by applying a positive or negative 'multiplier' to take into account a variety of other
7  factors, including the quality of the representation, the novelty and complexity of the issues, the
8  results obtained, and the contingent risk presented." *Id*. (internal quotation marks and citation
9  omitted).

10  Mr. Fyson submits declarations of the four attorneys who represented him in this case:
11  Justin Swidler, a law firm partner who bills at a rate of $875 per hour; Robert D. Soloff, a law firm
12  partner who bills at a rate of $950 per hour; Marc A. Silverman, a law firm partner who bills at a
13  rate of $900 per hour; and Nancy Gray, a law firm partner who bills at a rate of $950 per hour.
14  *See* Swidler Decl., ECF 149-1; Soloff Decl., ECF 149-4; Silverman Decl., ECF 149-5; and Gray
15  Decl., ECF 149-6. Based on these declarations of counsel, the Court is satisfied that all four
16  attorneys are experienced in the field of employment law and that their billing rates are within the
17  range of those charged by other attorneys in the Bay Area with similar backgrounds and
18  experience. *See PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000) ("The reasonable hourly
19  rate is that prevailing in the community for similar work.").

20  While Mr. Fyson does not submit his counsel's billing records, he does submit a summary
21  chart showing how much time each attorney spent on tasks related to filing Mr. Fyson's objection
22  and attendance at the two final approval hearings. *See* Chart, ECF 149-2. Counsel represent in
23  their declarations that the chart accurately represents the number of hours spent on each task, and
24  they state that they are not seeking fees for tasks related to Mr. Fyson's motion to intervene,
25  motion to enforce the *Ibarra* mandate, supplemental filing, miscellaneous tasks unrelated to Mr.
26  Fyson's objection, or Mr. Fyson's present fees motion. *See* Swidler Decl. ¶¶ 14-15; Soloff Decl.
27  ¶¶ 16-17; Silverman Decl. ¶ 12; Gray Decl. ¶ 10-11. Based on the representations made by
28  counsel in their sworn declarations, the Court accepts the hours reflected in the chart for purposes

United States District Court
Northern District of California

of calculating the lodestar of Mr. Fyson's counsel.

Mr. Fyson contends that his counsel's lodestar derives from all hours spent on the following categories of tasks, numbered by the Court for convenience: (1) Review of Docket, Procedural, Appellate, and Substantive History of Ibarra and Kang; (2) Communications with Client and Co-Counsel; (3) Drafting, Researching, Reviewing of Objection and Opposition; (4) Final Approving Hearing - Preparation for both hearings; and (5) Attendance at Final Approval Hearings. *See* Chart, ECF 149-2. This contention is not well-taken for two reasons. First, only a small portion of that work could reasonably have been devoted to challenging Plaintiffs' request for attorneys' fees. Mr. Fyson is not entitled to fees for his counsel's work on other unsuccessful issues. *See Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115, 1125-27 (9th Cir. 2002) (court has discretion to discount hours that did not benefit the class). Second, the hours expended by Mr. Fyson's counsel were duplicative and excessive. Below, the Court determines the reasonable amount of hours for each category of tasks, and then it calculates the portion of those reasonable hours likely attributable to counsel's work on the attorneys' fees issue.

### a. Review of Docket, Procedural, Appellate, and Substantive History of Ibarra and Kang

Three partners spent a total of 47.9 hours getting up to speed on this case. While this action has a complicated procedural history, the Court was able to walk through the dockets of the three cases that ultimately were consolidated, and become familiar with the relevant events in those cases, in about 8 hours. As is apparent from their declarations, Mr. Fyson's counsel are far more experienced than the Court in the types of employment issues raised in this case, and thus could be expected to perform the same tasks more quickly. Even assuming that each of the three billing attorneys felt obligated to become familiar with the case history, 8 hours per attorney pushes the bounds of the requirement that hours be "reasonably expended." *See Laffitte*, 1 Cal. 5th at 489. The Court finds that a maximum of 8 hours per attorney, for a total of 24 hours, was reasonably expended on these tasks.

### b. Communications with Client and Co-Counsel

Four partners spent a total of 49.2 hours communicating with Mr. Fyson, and with each

other, before starting to research or draft Mr. Fyson's objection. Although each of the attorneys may have wished some interaction with Mr. Fyson, it is entirely unclear why so much time was spent on these communications before any work was done on Mr. Fyson's objection. Even allowing for interviews of Mr. Fyson, transmission of any documents in his possession, and strategy planning, the Court finds that at least half of these hours were not reasonably necessary to mounting an objection to final approval of the class action settlement. Under California law, "the predicate of any attorney fee award, whether based on a percentage-of-the-benefit or a lodestar calculation, is the *necessity and usefulness* of the conduct for which compensation is sought." *Thayer v. Wells Fargo Bank, N.A.*, 92 Cal. App. 4th 819, 846 (2001) (emphasis added). The Court finds that at most counsel reasonably expended 25 hours of attorney time for these tasks.

          **c.**      **Drafting, Researching, Reviewing of Objection and Opposition**

Four partners spent a total of 126.9 hours preparing Mr. Fyson's objection. The memorandum supporting the objection is 23 pages long. *See* Mem. ISO Objection, ECF 117. The first 10 pages set forth the case's factual and procedural background, and the applicable legal standard. *See id.* at 1-10. The substance of Mr. Fyson's objection is laid out in pages 11-22. *See id.* at 11-22. Mr. Fyson and his counsel do not explain why it took four law firm partners 126.9 hours to prepare a brief containing 12 pages of substantive argument. To the extent that any of those hours were devoted to preparing the exhibits submitted in support of the objection, no explanation is provided as to why partners, rather than associates or paralegals, performed those tasks. That said, the Court acknowledges that brief-writing is time intensive.

Based on its substantial experience evaluating requests for attorneys' fees, the Court finds that some of the hours claimed for these tasks are duplicative and excessive. The Court finds that 85 hours reasonably were spent on these tasks.

          **d.**      **Final Approving Hearing - Preparation for both hearings**

Three partners spent a total of 32.5 hours preparing for the final approval hearings in this case. No detail is provided as to what this preparation entailed. The Court presumes that each attorney spent 1-2 hours reviewing the final approval motion and Mr. Fyson's objection, but beyond that the Court is at a loss to guess what counsel may have been doing. The Court finds

11

that the hours spent were excessive and unnecessary and that, at most, 6 hours reasonably were spent preparing for the hearings.

### e. Attendance at Final Approval Hearings

Each of three partners spent 3.2 hours attending the final approval hearings, for a total of 9.6 hours. It is unclear why Mr. Fyson needed three different attorneys to represent his interests at the hearings. While the Court found Mr. Fyson's attorneys to be well-prepared, and their arguments to be cogent, it seems that any one of the highly qualified attorneys on Mr. Fyson's team could have presented those arguments. The Court therefore determines that the attendance of two additional attorneys was duplicative. The Court finds that a total of 3.2 hours reasonably was spent on attendance at the hearings.

### f. Lodestar Calculation

For the reasons set forth above, the Court finds that Mr. Fyson's counsel reasonably expended 24 hours on the first category of tasks, 25 hours on the second category of tasks, 85 hours on the third category of tasks, 6 hours on the fourth category of tasks, and 3.2 hours on the fifth category of tasks, totaling 143.2 hours reasonably expended in preparing, filing, and arguing Mr. Fyson's objection. The Court appreciates Mr. Fyson's efforts to exclude hours expended on motions that were unsuccessful, which totaled 184.8 hours deleted from his fees request. But that does not end the Court's evaluation of the reasonable fees to be awarded. The Court must further evaluate time reasonably expended on the single successful issue in the objection.

While the filing of Mr. Fyson's objection was a catalyst to Plaintiffs' waiver of appellate rights regarding a portion of the Court's attorneys' fees award, only a small portion of the objection related to Plaintiffs' request for attorneys' fees. Viewed generously, approximately 25% of the memorandum in support of Mr. Fyson's objection presented substantive challenges to Plaintiffs' request for attorneys' fees or provided background facts relevant to those challenges. Doing the math, the Court concludes that Mr. Fyson's counsel reasonably spent 35.8 hours on work related to Mr. Fyson's challenge to Plaintiffs' requested attorneys' fees (143.2 hours x .25).

As noted above, the four attorneys who represented Mr. Fyson charged rates ranging between $875 and $950 per hour. Based on the record before it, the Court cannot parse which

attorneys expended which hours allowed by the Court. Under these circumstances, the Court finds that the most practical approach is to select a single hourly rate that may be applied to all of the hours for which Mr. Fyson is entitled to fees. The Court finds that an hourly rate of $925 is consistent with the rates charged by senior attorneys for similar work in this district and is a fair average billing rate. *See, e.g., Philips v. Munchery Inc.*, No. 19-CV-00469-JSC, 2021 WL 326924, at *10 (N.D. Cal. Feb. 1, 2021) (approving hourly rate of $950 for senior attorneys on employment case). The Court will apply a rate of $925 to all hours allowed. Multiplying 35.8 hours reasonably expended by a reasonable rate of $925, the Court determines that the lodestar for Mr. Fyson's counsel is $33,115.

### g. Multiplier

Having determined the lodestar, the Court must consider whether it is appropriate to apply a positive or negative multiplier. *See Laffitte*, 1 Cal. 5th at 489. Mr. Fyson has not requested fees calculated under the lodestar method and so has not proposed a multiplier for use under the lodestar method. His suggested multiplier of 2.41 was offered only to establish a cross-check for his desired percentage award.

In any event, the Court finds that no multiplier is warranted. Under California law, a multiplier may be applied based on "the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Id*. The quality of representation provided by Mr. Fyson's attorneys was excellent. However, the only novel or complex issues they addressed, such as the effect of the mandate rule, were decided against Mr. Fyson. Plaintiffs' request for attorneys' fees presented a run-of-the mill issue that did not require any difficult analysis. With respect to the results obtained, the Court ruled against Mr. Fyson on every argument. The only benefit he conferred on the class flows from Plaintiffs' voluntary partial waiver of appellate rights, not from any ruling by the Court. While the presentation of Mr. Fyson's objection involved some risk, Mr. Fyson's declaration reflects that he himself devoted only 15 hours to the case and his counsel chose to litigate the objection in the hopes of a substantial monetary recovery. *See* Fyson Decl. ¶ 6, ECF 149-7. After considering these factors, the Court in the exercise of its discretion declines to apply a multiplier. *See In re Riverstone*

1  *Networks, Inc.*, 256 F. App'x at 170 ("[T]he district court did not abuse its discretion by denying

2  [objector] a risk multiplier."); *In re Homestore.com, Inc.*, No. CV01-11115 RSWL(CWX), 2004

3  WL 2792185, at *1 (C.D. Cal. Aug. 10, 2004) (denying objector's request for a multiplier).

### h.  Fees to be Paid from Settlement Fund

Finally, the Court must decide whether the award of attorneys' fees to Mr. Fyson should be paid out of the settlement fund or out of the attorneys' fees previously awarded to Class Counsel. Both approaches are used by district courts in the Ninth Circuit.  *See, e.g., In re Optical Disk Drive Prod. Antitrust Litig.*, No. 10-MD-02143-RS, 2021 WL 4124159, at *2 (N.D. Cal. Sept. 9, 2021) (attorneys' fees award to objector paid from fees previously awarded to class counsel); *In re Easysaver Rewards Litig.*, 2021 WL 230013, at *3 (attorneys' fees award to objector paid from settlement fund); *In re Homestore.com, Inc.*, 2004 WL 2792185, at *1 (attorneys' fees and costs award to objector drawn from settlement fund).

As is reflected in the Court's final approval order, the Court carefully considered all relevant factors before deciding on an appropriate award of attorneys' fees to Class Counsel, including the exceptional result achieved for the class, Class Counsel's zealous advocacy over a period of years in the face of then-unfavorable California law regarding California Labor Code § 226.7, and the complicated issues presented by the unique procedural history of this case.  *See* Final Approval Order at 27-30.  In the Court's view, it would be inequitable to reduce the attorneys' fees awarded to Class Counsel in order to pay the attorneys' fees awarded to Mr. Fyson. Because Mr. Fyson's objection conferred a benefit to the class, and the award of attorneys' fees to Mr. Fyson is relatively modest in comparison to the size of the settlement fund to be distributed to the class, the Court finds it equitable that the award to Mr. Fyson be paid from the settlement fund.

Accordingly, Mr. Fyson's motion for attorneys' fees is GRANTED IN PART AND DENIED IN PART.  Mr. Fyson is awarded attorneys' fees in the amount of $33,115, to be paid from the common settlement fund

## II.  OBJECTOR'S REQUEST FOR SERVICE AWARD

Mr. Fyson requests a service award of $3,500.  While that amount is less than the $10,000 the Court approved for class representatives, it is not warranted given that Mr. Fyson spent only

14

15 hours on this case. The Court finds it reasonable to award him $75 per hour, which would result in an award of $1,125. The Court will increase that award to $1,500 because Mr. Fyson made his name public in order to assert his objection, thus giving up his privacy. This award is within the range of service fees commonly awarded to objectors. *See In re Easysaver Rewards Litig.*, 2021 WL 230013, at *3 (approving $2,500 incentive award to objector).

Mr. Fyson's motion for a service award is GRANTED in the amount of $1,500. Mr. Fyson has indicated that he and his attorneys would not object to payment of his service award out of the attorneys' fees awarded to Mr. Fyson's counsel. However, given the relatively modest fees awarded, and the modest amount of the service award, the Court directs that the service award be paid from the common settlement fund.

## III.   ORDER

(1) Mr. Fyson's motion for attorneys' fees and a service award is GRANTED IN PART AND DENIED IN PART. Mr. Fyson is granted attorneys' fees in the amount of $33,115 and a service award in the amount of $1,500. Those amounts shall be paid out of the settlement fund, separate and apart from the attorneys' fees to Class Counsel and the service awards to class representatives.

(2) As soon as is practicable, Plaintiffs SHALL file a proposed judgment consistent with both this order and the final approval order.

(3) This order terminates ECF 149.

Dated: April 15, 2022

BETH LABSON FREEMAN
United States District Judge